NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSHUA SKEEN and LAURIE FREEMAN, on behalf of themselves and all others similarly situated, | **OPINION** |
| *Plaintiffs*, | Civ. No. 2:13-cv-1531-WHW-CLW |
| v. | |
| BMW OF NORTH AMERICA, LLC, a Delaware limited liability company; BMW (U.S.) HOLDING CORP., a Delaware corporation; and BAYERISCHE MOTORENWERK AKTIENGESELLSCHAFT, a foreign corporation, | |
| *Defendants*. | |

**<u>Walls, Senior District Judge</u>**

Defendants BMW NA and BMW AG move for dismissal of Plaintiffs' First Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Plaintiffs oppose. The motion has been decided from the written submissions of the parties under Federal Rule of Civil Procedure 78. The motion to dismiss is granted in part and denied in part.

### FACTUAL AND PROCEDURAL HISTORY

This case arises from claims regarding the MINI Cooper, a line of vehicles produced by Defendants. Plaintiffs are a group of owners or lessees of MINI Coopers who allege that at the time of purchase their vehicles contained a latent defect in a part of the engine known as the "timing chain tensioner" which causes the part to fail prematurely. First Am. Compl. ("FAC") ¶ 7, ECF No. 13. The cars at issue (which the court will refer to as "Class Vehicles," for ease of reference) are "second generation" MINI Coopers with an N12 or N14 engine: the MINI Cooper

1

NOT FOR PUBLICATION

R56 (Cooper Hardtop), 2007-2010 model years; the MINI Cooper R55 (Cooper Clubman), 2008-

2010 model years; and the MINI Cooper R57 (Cooper Convertible), 2009-2010 model years.

FAC at 1; ¶ 29.

 Named Plaintiffs include an individual from Georgia, Joshua Skeen, FAC ¶ 14; an

individual from Illinois, Laurie Freeman, *id.* ¶ 15; and three individuals from New Jersey, Scott

Lamb, Gina Romaggi and Emmanuel Nomikos, *id.* ¶¶ 16-18. All of the plaintiffs purchased their

vehicles in their home states with the exception of Plaintiff Skeen, who purchased his vehicle in

South Carolina. *Id.* ¶ 14. Plaintiffs purchased their vehicles between September 2007 and

February 2009. *Id.* ¶¶ 14-18. Each has alleged a problem with the timing chain tensioner in his or

her vehicle which initially caused a loud noise which they refer to as a "death rattle," eventually

requiring replacement of that part or even the entire engine. *Id.* ¶ 39.

 Plaintiffs bring claims for breach of express warranty, FAC ¶¶ 64-71, breach of implied

warranty, *id.* ¶¶ 72-85, and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et

seq., *id.* ¶¶ 98-104. They bring a nationwide class action under the New Jersey Consumer Fraud

Act ("NJCFA"), N.J.S.A. 56:8-1, et seq. (West 2013), *id.* ¶¶ 86-97, or, in the alternative,

statewide class actions under the NJCFA and the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq., *id.* ¶¶ 117-125, and an action solely on

behalf of Plaintiff Skeen under the Georgia Fair Businesses Practice Act ("GFBPA"), O.C.G.A.

§§ 10-1-390, et seq., *id.* ¶¶105-16.

 The class vehicles came with an express warranty of 48 months or 50,000 miles,

whichever came first. FAC ¶ 8. For each of the named Plaintiffs, the alleged defect manifested

after the term of the warranty expired. *Id.* ¶¶ 14-18. They allege that this is not fatal to their

NOT FOR PUBLICATION

warranty claims because Defendants knew the defects would manifest and manipulated the warranty term to make sure it did not happen until after the warranty term expired. *Id.* ¶ 10.

The claims all hinge on allegations that the Defendants made various misrepresentations and omissions in relation to the sales and marketing of the Class Vehicles. The complaint cites a 2004 "announcement of the Prince engine," which stated that the "timing chain . . . remains maintenance-free throughout the full running life of the engine," FAC ¶ 34;[1] the MINI Maintenance Program, which asserts that the timing chain and timing chain tensioner will never need maintenance, *id.* ¶ 35;[2] as well as the "MINI marketing campaign," which employed "aggressive, unconventional marketing" about what great cars they are, *id.* ¶¶ 26-27. Plaintiffs have not made any specific allegations regarding communications from MINI sales people or other individual employees of Defendants, though presumably such communications played a role as well. For their claim that Defendants knew about the alleged timing chain tensioner defect, Plaintiffs point to a Technical Service Bulletin ("TSB") which Defendants issued January 1, 2008, which addressed consumer complaints about a rattling noise and warned technicians not to install the allegedly defective timing chain tensioner. *Id.* ¶¶ 42-43.

---

[1] As Defendants correctly point out, this announcement refers to the timing chain and not the timing chain tensioner. The announcement referred to here is a document essential to the complaint and should be included for the Court's review with any future submissions.

[2] Curiously, this assertion is not in quotes. It is also not clear if the "MINI Maintenance Program" is its own document or if the "Service & Warranty Information" booklet is the document containing information about the program. As with the engine announcement, this document would also be helpful for the Court to review.

NOT FOR PUBLICATION

On July 12, 2013, Defendants moved to dismiss this action. ECF No. 15-1. Plaintiffs responded.[3] ECF No. 28. On December 6, 2013, the Court consolidated this action with another matter, *Curran v. BMW of North America, LLC*, 2:13-cv-4625, dealing with similar subject matter. Order of Consolidation, ECF No. 36. This opinion and accompanying order deals only with the complaint from case 2:13-cv-1531, *Skeen v. BMW*.

## DISCUSSION

### I.      Motion to Dismiss

Under FRCP 12(b)(6) and the Supreme Court opinions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2010), a complaint should survive a motion to dismiss only if it "state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *See also, Phillips v. County of Allegheny*, 515 F.3d 224, 234–35 (3d Cir.2008) (the complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element") (quoting *Twombly*, 550 U.S. at 556).

As the Third Circuit recently explained, the analysis "unfolds in three steps." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "First, we outline the elements a plaintiff must plead to state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (citing and quoting *Iqbal*, 556 U.S. at 675-79, and *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)). As a general matter, the Court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should

---

[3] Plaintiffs' Brief in Opposition is 40 pages long. If the brief is printed in Times New Roman font size 12, as this submission is, the page limit is 30 pages. L. Civ. R. 7.2(d). Plaintiffs are advised to note this rule for the future.

NOT FOR PUBLICATION

be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002).

In considering Plaintiffs' claims, the Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright & Arthur R. Miller, Fed. Prac. and Proc. § 1357 (West 2013) ("Wright & Miller"). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

If a complaint fails to state a claim upon which relief can be granted, a plaintiff should ordinarily be granted the right to amend its complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)). In the Third Circuit, plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint "unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

## II.    Choice of Law: Overview

Because Plaintiffs have asserted various state law claims, the Court must consider which of the possibly applicable laws should in fact apply.

A federal court with diversity jurisdiction must apply the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In New Jersey, the relevant test is the "most significant relationship" test of the Restatement (Second) of Conflict of Laws, which has two steps: checking for an "actual conflict" and determining the "most significant relationship." *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-44 (2008). Courts must

NOT FOR PUBLICATION

apply this test "issue-by-issue," meaning the Court must determine which forum has the most significant relationship to each cause of action. *Id*. at 143; *see also Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). In the first step, the court decides if an actual conflict exists because "the choice of one forum's law over the other will determine the outcome of the case." 15A C.J.S. Conflict of Laws § 30 (2013). If there is no conflict or only a "false conflict," where "the laws of the two jurisdictions would produce the same result on the particular issue presented," the substantive law of the forum state applies. *Id.* § 31; *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997). If there is an actual conflict, the Court proceeds to the second step and must determine which jurisdiction has the "most significant relationship to the claim." *Camp Jaycee*, 197 N.J. at 143; *see Maniscalco v. Brother Int'l Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) ("*Maniscalco II*"). This analysis relies on factors outlined in the Restatement (Second) of Conflict of Laws and varies depending on the nature of the claim, though always with an eye to the general principles of Restatement § 6, the "cornerstone" of the Restatement. *Camp Jaycee*, 197 N.J. at 140 (quoting Eugene F. Scoles et al., Conflict of Laws § 2.14 (4th Ed. 2004)). For contract claims (including breach of express and implied warranty claims), the relevant Restatement section is § 188. *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 704 (D.N.J. 2011). For claims involving fraud or misrepresentation, including claims under state consumer fraud statutes, the relevant Restatement section is § 148. *Id.* at 708.

Plaintiffs argue that it is premature to conduct the choice of law analysis. They rely primarily on the case of *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486 (D.N.J. 2009) for the concept that courts cannot complete this "fact-intensive" analysis before the facts have been

NOT FOR PUBLICATION

fully developed. Opp'n at 12-14.[4] In *Harper*, the court applied the *Twombly-Iqbal* pleading standard to choice of law issues, explaining that a plaintiff hoping to proceed under New Jersey law need only assert "a set of facts where New Jersey law governs this action." *Harper*, 595 F. Supp. 2d at 491 (citing *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556) (quotations omitted). But even *Harper* recognized that "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss." *Id.* at 491; *see Montich v. Miele*, 849 F. Supp. 2d 439, 445, 448 (D.N.J. 2012) (characterizing *Harper* as requiring only "a threshold inquiry into whether a choice-of-law issue needs a fuller factual record" and going ahead with the choice of law analysis because plaintiff failed even "to indicate what other facts are necessary to decide this issue"); *see also Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 2:12-cv-07849 (WHW), 2013 WL 5574626, at *9 (D.N.J. Oct. 9, 2013) ("Plaintiffs have failed to show how further development of the record would affect the choice of law analysis."). Courts in this circuit and district routinely find that the facts are sufficiently developed to conduct the choice of law analysis at the motion to dismiss stage. *Cooper*, 374 Fed. App'x 250, 255 n.5 (3d Cir. 2010) (rejecting argument that district court erred by addressing choice of law issue at motion to dismiss stage); *Arlandson*, 792 F. Supp. 2d at 705, 709 (finding the record sufficiently developed to conduct the choice of law analysis for fraud claims but not contract claims).

### III.   Fraud Claims: Choice of Law

For its consumer fraud claim, Plaintiffs want this court to apply the NJCFA to all nationwide defendants. Defendants want plaintiffs to be required to apply the relevant statute

---

[4] Note also that *Harper* is inapposite because it was decided under the governmental interest standard, which New Jersey followed before adopting the most significant relationship test in *Camp Jaycee*. 197 N.J. at 142-43.

NOT FOR PUBLICATION

from their "home states." Defs.' Mem. Mot. Dis. at 10, ECF No. 15-1. Plaintiffs similarly plead

in the alternative that, if the Court finds the NJCFA cannot apply to a nationwide class, then the

plaintiffs from states other than New Jersey can plead causes of action under "each state's"

consumer fraud statutes. FAC ¶¶ 106, 118. The parties do not address whether, for plaintiffs like

Skeen who purchased their vehicles outside their home states, the relevant states for this analysis

are the "home states" (i.e., where plaintiffs reside) or the "purchase states" (i.e., where plaintiffs

purchased the vehicles). The Court briefly addresses this later.

The states with potentially applicable laws for those plaintiffs who have so far joined the

case include New Jersey, Georgia, South Carolina and Illinois. *Rolo v. City Investing Co.*

*Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) (citation omitted) ("Until the putative class

is certified, the action is one between the [named plaintiffs] and the defendants. Accordingly, the

First Amended Complaint must be evaluated as to these particular plaintiffs."). The Court will

consider whether the GFBPA, the South Carolina Unfair Trade Practices Act ("SCUTPA") and

the ICFA conflict with the NJCFA.

In New Jersey, a private party seeking to recover under the NJCFA must demonstrate

three things: (1) a defendant's unlawful practice, (2) an ascertainable loss, and (3) a causal

connection between the two. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17, 22, 23 (1994). The

NJCFA "does not require proof of reliance," *Gennari v. Weichert Co. Realtors*, 148 N.J. 582,

607 (1997), or pre-suit notice, *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 561 (2009). A

New Jersey state court has remarked that the NJCFA is one of the strongest in the country and

may "actually conflict" with those of other states for a panoply of reasons, including the fact that

it "encourages private class actions for consumer fraud" while other statutes forbid them; it

allows actions related to commercial purposes while other statutes limit actions to "personal,

8

NOT FOR PUBLICATION

family or household purposes"; and it allows for treble damages, which other statutes do not. *Int'l Union of Oper. Eng'rs Local # 68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J. Super. 275, 294-95 (App. Div. 2006) ("*Vioxx II*") (*rev'd on other grounds*, 192 N.J. 372, 388 n.3 (2007) (specifically declining to address the appellate division's choice of law analysis)).

Georgia's consumer protection statute shares the same basic elements of the New Jersey statute. The violation must involve "the breach of a duty owed to the consuming public in general" and so must have some "impact on the consumer marketplace." *Johnson v. GAPVT Motors, Inc.*, 292 Ga. App. 79, 84 (2008) (quotation and citation omitted). Unlike the NJCFA, the GFBPA requires a showing of reliance. *Tiisman v. Linda Martin Homes Corp.*, 281 Ga. 137, 139 (2006) (quoting *Zeeman v. Black*, 156 Ga. App. 82, 87 (1980)); *Barge v. Bristol-Myers Squibb Co.*, No. 07-cv-783 (FLW), 2009 WL 5206127, at *8 (D.N.J. Dec. 30, 2009). Also, the NJCFA "encourages private class actions," while the GFBPA prohibits them. Ga. Code Ann. § 10-1-399(a) (providing right to bring an action "individually, but not in a representative capacity"); *Honig v. Comcast of Georgia I, LLC*, 537 F. Supp. 2d 1277, 1289 (N.D. Ga. 2008) ("[T]he GFBPA expressly prohibits consumer class actions.").[5] This statute conflicts with the NJCFA.

In South Carolina, a plaintiff asserting a private right of action under the SCUTPA must allege that (1) an unfair or deceptive practice (2) which affects the public interest (3) caused (4)

---

[5] The GFPBA and NJCFA also differ because Georgia's law requires pre-suit notice and New Jersey's does not. But the Georgia statute has an exception for out-of-state defendants, such as the defendant here. GA Code 10-1-399(b); *Barge*, 2009 WL 5206127, at *6. Because the notice provisions do not apply, they cannot determine the outcome of the case, so this cannot be the source of the "actual conflict." *See Avram v. Samsung Elecs. Am., Inc.*, No. 2:11-cv-6973 (KM), No. 2:12-cv-976 (KM), 2013 WL 3654090, at *12 (D.N.J. July 11, 2013) (because there was no dispute that plaintiffs had privity with defendant, fact that statutes differed with regard to a privity requirement was a false conflict).

NOT FOR PUBLICATION

monetary or property loss. *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C.

623, 638 (2013). The law prohibits class actions. *Id.* This statute conflicts with the NJCFA.

*Maniscalco II*, 709 F.3d at 206.

Illinois's consumer protection statute also differs from New Jersey's in several important

ways. Other courts in this district have found the NJCFA and ICFA to have an actual conflict.

*Warma Witter Kreisler Inc. v. Samsung*, No. 08-cv-5380 (JLL), 2010 WL 1424014 at *3 (D.N.J.

April 8, 2010) (explaining that treble damages and a jury trial are available in New Jersey but not

in Illinois). Illinois requires "actual damage," 815 ILCS 505/10a (West 2000),[6] while New Jersey

does not, N.J.S.A. 56:8-2. This statute conflicts with the NJCFA.

Having concluded that the potentially relevant statutes conflict with New Jersey's, the

Court turns to a consideration of which state has the most significant relationship to each action.

There is no dispute about applying the NJCFA to the claims of the New Jersey plaintiffs. As to

the others, the Court will consider Restatement 2d Conflict of Laws § 148. Because Plaintiffs

allege that Defendant made false representations in one state (New Jersey) and plaintiffs received

them in another (e.g., Georgia, South Carolina or Illinois), the Court considers the six "contacts"

listed in Restatement § 148(2). *Maniscalco II*, 709 F.3d at 208. Those contacts are: "(a) the place

. . . where the plaintiff acted in reliance upon the defendant's representations"; "(b) the place

where the plaintiff received the representations"; "(c) the place where the defendant made the

representations"; "(d) the . . . place of incorporation and place of business of the parties . . ."; "(e)

the place where a tangible thing which is the subject of the transaction between the parties was

_____

[6] Note that *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12 (2003) found certain amendments of
this statute to be unconstitutional. The Court struck down the amendments, which made it harder
for consumers to bring consumer fraud claims against car dealers, because they "discriminate in
favor of vehicle dealers." *Id.* at 23. The state legislature has apparently not revised the statute to
elide the language which the Illinois Supreme Court deemed unconstitutional.

NOT FOR PUBLICATION

situated at the time"; and "(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." The Court must consider these contacts in light of the general principles of Restatement § 6 which, "[r]educed to their essence," are "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of [] law; (4) the interests of judicial administration; and (5) the competing interests of the states.' " *Camp Jaycee*, 197 N.J. at 147 (quotation and citation omitted).

### A.      Plaintiff Freeman

For Plaintiff Freeman, § 148 contacts (a), (b), (e) and (f) point to her home state of Illinois. Plaintiff received the representations in Illinois (contact (a)); relied upon those representations in Illinois (contact (b)); her vehicle is in Illinois (contact (e)); and she purchased it according to a contract in Illinois (contact (f)). *See Arlandson*, 792 F. Supp. 2d at 709.

Regarding contact (c), Plaintiffs do not explicitly allege that Defendants made misrepresentations from New Jersey, but do cite a 2004 "announcement of the Prince engine," FAC ¶ 34, and a January 1, 2008 Technical Service Bulletin ("TSB") regarding the alleged timing chain tensioner defect, *id.* ¶ 42, to support their claims. Considering these facts in the light most favorable to the non-moving party, Plaintiff Freeman has sufficiently alleged that these representations emanated from Defendants' corporate headquarters in New Jersey, which points this factor to New Jersey law.

Regarding contact (d), Plaintiffs note that Defendant BMW NA has its North American headquarters in New Jersey and conducts various important parts of its business there. Pls.' Opp'n to Mot. Dis. at 14 (citing FAC ¶ 4). But Defendant BMW AG is headquartered in Germany and Freeman herself is in Illinois, so contact (d) has no effect on the analysis.

NOT FOR PUBLICATION

Considered together, then, the § 148 factors weigh strongly in favor of applying Illinois law to Plaintiff Freeman's fraud claim. *See Arlandson*, 792 F. Supp. 2d. at 709 (finding that the many contacts in the purchase states outweighed the fact that defendants' headquarters were in New Jersey).

The § 6 factors also encourage this Court to apply Illinois law. Factor (1), the interests of interstate comity, favors applying a resident's consumer protection law rather than allowing New Jersey law to trump all others. *Maniscalco II*, 709 F.3d at 209. Factor (2), the interests of the parties, favors the purchase state: because that is where the only contacts between the parties took place, "it is reasonable to assume that they expected that [the purchase state's] law would apply." *Id.* Factor (3), the interests of state consumer fraud law, is a wash because state consumer fraud statutes are intended both to protect a state's consumers (which would favor the purchase states) and deter its corporations from misconduct (which would favor New Jersey). *Id.* Factor (4), judicial administration and efficiency, favors New Jersey law, because applying a single law would allow this Court to efficiently resolve these claims, but this factor "must yield to the interests of the other factors." *Id.* (citing *Fu v. Fu*, 160 N.J. 108, 124 (1999)). Factor (5), the competing interests of the states, favors the purchase states, because courts routinely find that a state's interest in protecting its consumers is greater than its interest in deterring its corporations from misconduct. *Maniscalco II*, 709 F.3d at 210; *see also In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J.1997) ("Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.").

Plaintiffs decline to engage in much choice of law analysis. Instead, their argument for applying New Jersey law relies mostly on their argument that the Court has personal jurisdiction

NOT FOR PUBLICATION

over Defendants. *See* FAC ¶ 4; Pls.' Opp'n at 14. Though the location of Defendant BMW NA's headquarters justifies personal jurisdiction, it does not justify applying the NJCFA to a nationwide class. For Plaintiff Freeman, Illinois is the state with the "most significant relationship" to this action.

### B.    Plaintiff Skeen

For Plaintiff Skeen, New Jersey law does not apply for the same reasons described earlier. But it is not clear to this Court that the state with the "most significant relationship" to his claim is Georgia, his home state, rather than South Carolina, the purchase state. *See, e.g.*, *In re Flonase Antitrust Litigation*, 815 F. Supp. 2d 867, 880 (E.D. Penn. 2011) (finding in an action by indirect purchasers against a pharmaceutical company that the "purchase states" have the most significant relationship, not the "home states").

Yet the Court is reluctant to insist on the application of a law which the parties seem to have not even considered. "The Third Circuit has held that when the parties agree to apply the law of a particular state, and that state has an obvious interest in the litigation, a court need not examine the choice of law sua sponte." *Lamonaco v. CBS, Inc.*, No. 93-cv-1975 (DRD), 1993 WL 556536, at *2 (D.N.J. July 29, 1993) (citing *Schiavone Construction Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)), *aff'd*, 27 F.3d 557 (3d Cir. 1994). This is true even if the parties only "implicitly agree" that a certain law applies. *J.B. Hunt Transp., Inc. v. USF Distrib. Svcs.*, 83 Fed. App'x 476, 478 n.1 (3d Cir. 2003).

Here, Defendants insist that Georgia law applies to Skeen's claim; Plaintiffs assert that New Jersey law applies but, if it does not, then Georgia law applies. Because the Court finds that New Jersey law does not apply to Skeen's claim, the parties "implicitly agree" that Georgia law applies and the Court will proceed on that assumption for purposes of this motion.

NOT FOR PUBLICATION

## IV.      Fraud Claims: Rule 9(b)

The Court now turns to whether the Plaintiffs have adequately plead their claims under the various consumer fraud statutes.

Consumer fraud claims are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007); *Alban v. BMW of N. Am., LLC*, No. 09-cv-5398 (DRD), 2010 WL 3636253, at *9 (D.N.J. Sept. 8, 2010) ("*Alban I*"). Rule 9(b) provides that, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Normally this means that, "at a minimum," a plaintiff's allegations must include "the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citations and quotation marks omitted). But plaintiffs who fail to strictly follow this "newspaper story" approach can still overcome Rule 9(b) as long as they "otherwise inject precision or some measure of substantiation" into the allegation. *Frederico*, 507 F.3d at 200 (citation omitted). "Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Rolo*, 155 F.3d at 658 (citation omitted). The purpose of the heightened pleading standard is to "place the defendant on notice of the precise misconduct with which it is charged." *Frederico*, 507 F.3d at 200.

As several courts have noted, Rule 9(b)'s "heightened standard is somewhat relaxed in a case based on a fraudulent omission," rather than one based on misrepresentation. *Montich*, 849 F. Supp. 2d at 451; *see also Feldman v. Mercedes-Benz USA, LLC*, No. 2:11-cv-00984 (WJM),

NOT FOR PUBLICATION

2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) ("[P]laintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim.").

### A.   New Jersey: NJCFA Claims

A private party seeking to recover under the NJCFA must demonstrate three things: (1) a defendant's unlawful practice, (2) an ascertainable loss, and (3) a causal connection between the two. *Cox*, 138 N.J. at 17. As a general matter, the NJCFA is to be "liberally construed" to protect consumers, *Barry v. Arrow Pontiac, Inc.*, 100 N.J. 57, 69 (1985), and there is no requirement that consumers actually be deceived, N.J.S.A. 56:8-2 (applies "whether or not any person has in fact been misled, deceived or damaged thereby").

An "unlawful practice" may be an affirmative act, a knowing omission or a regulatory violation. *Cox*, 138 N.J. at 17. When the allegation regards an omission, a plaintiff must allege that the defendant intended to commit an unlawful act. *Id.* at 18. The "unlawful practice" prong has specific contours in the context of a latent defect, in which case a plaintiff may survive a motion to dismiss by alleging that the defendant:

> (1) knew of a defect in one of its product's components that created a certainty that part would fail before the rest of the product, (2) limited the warranty coverage so that the products would last longer than the warranty period but that the components would not last as long as the product's expected useful life, and (3) unconscionably marketed the product to uninformed consumers in order to maximize profits.

*Alban I*, 2010 WL 3636253, at *10 (quoting *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 501-02 (D.N.J. 2009) ("*Maniscalco I*")) (internal quotations omitted). The allegation of certainty is key, because a defendant "does not violate the NJCFA by failing to inform its consumers of the *possibility* of failure" of one of a product's component parts. *Alban I*, 2010 WL 3636253, at *10 (emphasis original).

15

NOT FOR PUBLICATION

The requirement to show an ascertainable loss "means that plaintiff must suffer a definite, certain and measurable loss." *Bosland*, 197 N.J. at 558. But the loss "need not yet have been experienced as an out-of-pocket loss to the plaintiff," *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005), and it need not be a monetary loss: "An ascertainable loss occurs when a consumer receives less than what was promised," *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002).

Though causation is similar to reliance, "[c]ausation under the CFA is not the equivalent of reliance." *Lee v. Carter-Reed Co., LLC*, 203 N.J. 496, 522 (2010). *See also Gennari*, 148 N.J. at 607 ("[The NJCFA] does not require proof of reliance"). Rather, "[t]o establish causation, a consumer merely needs to demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." *Carter-Reed*, 203 N.J. at 522 (quoting N.J.S.A. 56:8-19). Still, where the alleged unlawful conduct is an affirmative misstatement, plaintiffs must allege "when the statements were made [and] at what point—if ever—each Plaintiff was exposed to one or more of the statements." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526-27 (D.N.J. 2008).

Plaintiffs have adequately plead unlawful conduct by stating the elements of a latent defect claim: certainty, warranty manipulation and unconscionable marketing. Plaintiffs allege that "The Class Vehicles are uniformly and inherently defective . . . and prematurely fail under ordinary driving conditions and far in advance of their expected useful life," FAC ¶ 7, and that Defendants warned their technicians that the timing chain tensioner "should not be installed with a new timing chain," FAC ¶¶ 42-43. *See also* FAC ¶¶ 24, 30, 38, 40, 79. The Court is unpersuaded by Defendants' arguments regarding the admissibility of the TSB in light of Federal Rule of Evidence 407, Def.'s Mem. Mot. Dis. at 12, because admissibility is simply not yet at issue. "The Court, at this stage, is not making findings as to whether the TSB should be

16

NOT FOR PUBLICATION

considered as evidence or an admission of liability in evaluating the claim on the merits. Rather, the question is whether the TSB . . . support[s] a claim that is 'plausible on its face.'" *Majdipour*, 2013 WL 5574626, at \*18. At this stage, the TSB helps render plausible Plaintiffs' allegations that Defendants knew with certainty the part would fail. Plaintiffs have also sufficiently alleged that Defendants limited the warranty coverage to exploit this fact and that they unconscionably marketed the product to uninformed consumers to maximize profits: "Defendants have purposefully concealed, and continue to conceal, their knowledge of the Timing Chain Tensioner Defect so as to be able to take the position with their customers that the written warranty period 'expired' before the defect manifests itself . . . . Defendants failed to disclose material information regarding the defect in an attempt to avoid the cost of repair. . . ." FAC ¶ 10. *See also* FAC ¶ 49.

Plaintiffs have adequately alleged ascertainable loss as well by claiming that their vehicles dropped in value, FAC ¶¶ 12, 71, and that they incurred repair costs which they should not have had to pay. *See Mickens v. Ford*, 900 F. Supp. 2d 427, 446-47 (D.N.J. 2012) (finding similar allegations sufficient to survive a motion to dismiss).

But with regard to the causation element, different standards apply to Plaintiffs' allegations regarding affirmative misstatements and their allegations regarding omissions. Only the latter are adequate. The First Amended Complaint points to several specific affirmative misstatements, including the 2004 announcement of the Prince engine, FAC ¶ 34, the MINI "Service & Warranty Information" booklet, *id.* ¶ 35, and the 2008 TSB, *id.* ¶ 42-43. It also claims that Defendants made some general affirmative misstatements, e.g., that "the Class Vehicles are safe and reliable," *id.* ¶ 90(a), presumably as part of their marketing campaign, *id.* ¶¶ 26-27, but does not identify where such statements appeared—whether in advertisements or

17

NOT FOR PUBLICATION

sales communications or elsewhere—and when and where Plaintiffs were exposed to them. Because the complaint doesn't identify the general statements or claim exposure to either the general or specific statements, these allegations are insufficient. The bar for omissions is lower. As example, their allegation that "Defendants' express warranty did not include a conspicuous statement about the Defect," *id.* ¶ 50, is alone enough to satisfy the standard. *Dewey*, 558 F. Supp. 2d at 527; *see also Luppino v. Mercedes-Benz USA, LLC*, No. 09-cv-5582 (DMC), 2010 WL 3258259, at *8 (D.N.J. Aug. 16, 2010) (citing *Dewey*). Those allegations survive.

In sum, Defendants motion to dismiss is denied as to the New Jersey Plaintiffs' NJCFA claims regarding omissions, but the claims regarding affirmative misstatements are dismissed without prejudice. Plaintiffs may seek leave to amend within 30 days of this order.

### B.        Georgia: GFBPA Claims

For similar reasons, the motion to dismiss as relates to the claim of Plaintiff Skeen under Georgia law is granted in part. Skeen's claim is dismissed without prejudice.[7]

A private party seeking to recover under the GFBPA must allege three elements: (1) defendant's violation of the Act, (2) an injury and (3) a causal connection between the two. *Tiisman*, 281 Ga. at 139. The violation must have "at least some potential impact on the consumer marketplace." *Johnson*, 292 Ga. App. at 84 (citation and quotations omitted). Normally a plaintiff wishing to sue under the GFBPA must give the defendant a chance to remedy the alleged violation via "pre-suit notice," though this requirement only protects in-state defendants, not out-of-state defendants like Defendants here. O.C.G.A. § 10-1-399(b); *Barge*, 2009 WL 5206127, at *6. Unlike the NJCFA, the GFBPA "was construed 'as incorporating the

---

[7] Plaintiffs have not explicitly asserted a claim under Georgia's Unfair and Deceptive Trade Practices Act.

NOT FOR PUBLICATION

"reliance" element of the common law tort of misrepresentation into the causation element of an individual claim under the [G]FBPA.'" *Tiismann*, 281 Ga. at 138 (quoting *Zeeman*, 156 Ga. App. at 87). The GFBPA prohibits class adjudication, Ga. Code. Ann. 10-1-399(a), so the Court decides this issue only as to Plaintiff Skeen.

Skeen has adequately plead that Defendants violated the act in a way that may impact the consumer marketplace. FAC ¶¶ 109, 13. Skeen's claim that he would not have bought the vehicle or paid less for it is sufficient to allege injury. FAC ¶¶ 114-16.

But for the same reasons described earlier in the discussion of the NJCFA, the causation allegations fall short. Skeen has not alleged that he was exposed to any of Defendants' statements. His pleadings as to the alleged omissions are sufficient.

Defendants motion to dismiss is denied as to Plaintiff Skeen's GFBPA claims regarding omissions, but the claims regarding affirmative misstatements are dismissed without prejudice. Plaintiff may seek leave to amend within 30 days of this order.

## C. Illinois: ICFA Claims

A private party seeking to recover under the ICFA must demonstrate "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 140 (2002) (citing 815 ILCS 505/10a(a)).

The proximate cause allegation must include a specific pleading that the plaintiff actually saw or heard the allegedly deceptive act. *De Bouse v. Bayer*, 235 Ill. 2d 544, 552 (2009) (citing *Oliveira*, 201 Ill.2d at 140). "The basic principle . . . [is that] the Plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither

NOT FOR PUBLICATION

seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause." *De Bouse*, 235 Ill.2d at 554.[8] This rule applies equally to affirmative misstatements as to omissions: "If there has been no communication with the plaintiff, there have been no statements and no omissions." *Id.* at 555.

Plaintiff Freeman has adequately alleged that Defendants committed a deceptive act or practice, FAC ¶ 120-21, they intended plaintiff to rely on that deception, *id.*, that it occurred in the course of trade or commerce, *id.*, and that it caused actual damage to her, *id.* ¶¶ 123-24. But the allegations of proximate causation fall short because Freeman has failed to allege that she saw or heard any communication from Defendants. The Court recognizes that a purchaser of a new car surely engages in some kind of communication with the dealer and manufacturer of that car, either in the form of advertisements, sales communications or otherwise, and the complaint does identify some "marketing materials and product manuals." FAC ¶ 120(c). But Rule 9(b) and *De Bouse* require a plaintiff to allege the circumstances under which she saw or heard or read those communications and identify them with particularity. Unfortunately for Freeman, the rule in Illinois is equally harsh for omissions as it is for affirmative misstatements. *De Bouse*, 235 Ill. 2d at 555.

Plaintiff Freeman's ICFA claims are dismissed without prejudice. Freeman may seek leave to amend within 30 days of this order.

## V.    Express Warranty Claims

Plaintiffs allege that Defendants' breached their express warranties. Though the alleged defects manifested after the warranties expired, Plaintiffs claim the warranty terms were

---

[8] Under *Siegel v. Levy Org. Dev. Co., Inc.*, 153 Ill. 2d 534, 542 (1992), Illinois does not require actual reliance. But the *De Bouse* opinion, though it does not explicitly overturn *Siegel*, does suggest that it is now required under the proximate cause prong.

NOT FOR PUBLICATION

unconscionable because Defendants knew the timing chain tensioners would fail and manipulated the warranty to avoid the costs of repairing it. The Court finds their allegations of unconscionability and breach of express warranty sufficient to survive a motion to dismiss, with the exception of Plaintiff Skeen, as described later.

As a preliminary matter, the Court declines to engage in a choice of law analysis because the parties do not disagree about which law applies. Though Defendants argue that "Plaintiffs Cannot Pursue A Nationwide Breach-of-Warranty Class Action Under New Jersey Law," Defs.' Mem. Mot. Dis. at 7, Plaintiffs do not appear to be arguing this. Instead, they assert breach of warranty claims based on the laws of their home states. The Court will assume as such and analyze the claims under the express warranty laws of New Jersey, Georgia and Illinois.

### A. Express Warranty Claims: Unconscionability

As a general rule, "an express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (citing *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986); *accord Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 511 (2005) (citing *Tokar v. Crestwood Imports, Inc.*, 177 Ill. App. 3d 422, 431-32 (1988)). Where the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state a claim if he alleges that the warranty was unconscionable. *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-cv-4146 (DMC), 2010 WL 2925913, at *7 (D.N.J. July 21, 2010) (citing *In re Samsung DLP TV Class Action Litig.*, No. 07-cv-2141 (GEB), 2009 WL 3584352, at *4-5 (D.N.J. Oct. 27, 2009)); *accord Mullis v. Speight Seed Farms, Inc.*, 234 Ga. App. 27, 31 (1998) (finding a limitation of remedy clause unconscionable where party with greater power was aware of a latent defect and other party was not); *McCabe v. Daimler AG*, 948 F. Supp. 2d.

NOT FOR PUBLICATION

1347, 1358 (N.D. Ga. 2013) ("accepting" the "general proposition" that "courts have used the unconscionability provision of the Georgia Commercial Code, O.C.G.A. § 11–2–302, to strike unconscionable warranty limitations") (citing *Gibbs Patrick Farms, Inc. v. Syngenta Seeds, Inc.*, No. 7:06-cv-48-HL, 2008 WL 822522, at *10-12 (M.D. Ga. Mar. 26, 2008)). *But see Evitts*, 359 Ill. App. 3d at 511 (finding that Plaintiff had failed to sufficiently allege unconscionability and was bound by the terms of the warranty). Under the UCC—as adopted in New Jersey, Georgia and Illinois—the question of whether a contractual provision is unconscionable is a matter of law for the judge. *Collins v. Uniroyal, Inc.*, 64 N.J. 260, 267 (1974) (citing N.J.S.A. § 12A:2-302(1)); *NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 394-95 (1996) (citing O.C.G.A. § 11-2-302(1)); *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 99 (2006) (citing 810 ILCS 5/2-302(1)). But if a court thinks a contractual clause may be unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect." N.J.S.A. 12A:2-302(2); O.C.G.A. § 11-2-302(2); 810 ILCS 5/2-302(2).

Unconscionability may be either "substantive" or "procedural." Definitions of substantive unconscionability are essentially the same in New Jersey, Georgia and Illinois. In New Jersey, courts will find a contract term to be substantively unconscionable if the term is "excessively disproportionate," involving an "exchange of obligations so one-sided as to shock the court's conscience." *Delta Funding Corp. v. Harris*, 189 N.J. 28, 55 (2006) (Zazzali, J., concurring in part and dissenting in part) (citing *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super 555, 565 (Ch. Div. 2002)); *accord Razor*, 222 Ill. 2d at 100 (citation omitted). In Georgia, courts will strike "such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of," or one "abhorrent to good morals and conscience." *NEC Techs.*, 267 Ga. at 391 n.2 (quoting *R.L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 966 (1975), and

NOT FOR PUBLICATION

*F.N. Roberts Pest Control Co. v. McDonald*, 132 Ga. App. 257, 260 (1974)). Factors to consider include "the commercial reasonableness of the terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *NEC Techs.*, 267 Ga. at 392.

Likewise, regardless of the state, procedural unconscionability focuses on the circumstances of the negotiation that produced the contested term, especially the personal qualities of the negotiators. *See, e.g.*, *Delta Funding Corp.*, 189 N.J. at 55 (2006) (Zazzali, J., concurring and dissenting) (citing *Sitogum Holdings*, 352 N.J. Super. at 564) (listing "inadequacies" such as age, literacy and "lack of sophistication"); *NEC Techs. v. Nelson*, 267 Ga. at 392 (listing, inter alia, ". . . age, education, intelligence, business acumen and experience of the parties . . . ."). There are essentially two ways to find procedural unconscionability: "oppression" and "surprise." U.C.C. § 2-302 cmt. 1 (2013). "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Mullis*, 234 Ga. App. at 30 (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)); *see also NEC Techs.*, 267 Ga. at 392; *Razor*, 222 Ill. 2d at 100 (citation omitted) ("a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it . . . ."); *Delta Funding Corp.*, 189 N.J. at 55 (Zazzali, J., concurring and dissenting).

In New Jersey, if the contract at issue is a contract of adhesion, the court should consider four factors: "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motiving the 'adhering' party, and the public interests affected

NOT FOR PUBLICATION

by the contract." *Delta Funding Corp.*, 189 N.J. at 55 (Zazzali, J., concurring and dissenting) (citing *Rudbart v. N.J. Dist. Water Supply Comm'n*, 127 N.J. 344, 356 (1992). A car manufacturer "is under a special obligation in connection with the construction, promotion and sale of his cars" because an automobile is "a common and necessary adjunct of daily life." *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 387 (1960) (invalidating a disclaimer of an implied warranty of merchantability because, among other reasons, the consumer had no choice in the terms of the warranty); *accord Laswell v. Chrysler Corp.*, 181 Ga. App. 219, 222 (1986) (Pope, J., concurring) (quoting *Henningsen*, 32 N.J. at 387). A court applying Illinois law should consider whether the contract was a preprinted contract of adhesion, *Razor*, 222 Ill. 2d at 100, though this fact alone is not a sufficient basis for a finding of unconscionability, *Zerjal v. Daech & Bauer Const., Inc.*, 405 Ill. App. 3d 907, 914 (2010).

Courts differ on what is required to plead unconscionability. The traditional rule, which New Jersey and Georgia appear to follow in the latent defect context, is that a plaintiff must plead both substantive as well as procedural unconscionability. In *Henderson*, the court noted that "a manufacturer's mere knowledge that a part will ultimately fail . . . does not alone make the time/mileage limitation unconscionable," but found the pleading sufficient when combined with claims of procedural unconscionability. 2010 WL 2925913, at *9 n.6. *See McCabe*, 948 F. Supp. 2d at 1358 (distinguishing *Henderson* and dismissing claim where allegation that a manufacturer knew a part was defective at the time of sale was not accompanied by additional claims). The Illinois Supreme Court has made explicit that an allegation of unconscionability may be either substantive or procedural and need not be both, *Razor*, 222 Ill. 2d at 100, but it is not clear how that court would treat a claim regarding a latent defect that manifested outside of a warranty's term.

NOT FOR PUBLICATION

Plaintiffs have adequately alleged substantive unconscionability by claiming that Defendants knew the timing chain tensioners would fail and manipulated the warranty terms to avoid paying for it. A motor vehicle warranty of 4 years and 50,000 miles is not per se unconscionable. But the allegation of manipulation is sufficient. The procedural misconduct alleged is that Defendants unfairly took advantage of their disparate bargaining power, namely that the seller knew about the defect and consumer plaintiffs did not.

The Court recognizes that courts in this district are split on this issue. The courts in *Alban v. BMW of N. Am. LLC*, No. 09-cv-5398 (DRD), 2011 WL 900114, (D.N.J. March 15, 2011) ("*Alban II*") and *Henderson* both noted that it is not sufficient merely to allege that a manufacturer knew a part would fail after the expiration of a warranty period. *Henderson*, 2010 WL 2925913, at *9; *Alban II*, 2011 WL 900114, at *9. The *Henderson* court found that this claim became sufficient when buttressed by "additional claims," namely claims of procedural unconscionability: that plaintiffs had "no meaningful choice" in a warranty negotiation characterized by "a gross disparity in bargaining power." 2010 WL 2925913, at *9 n.6. But the *Alban II* court, dealing with identical "additional claims," found them to be conclusory allegations of procedural unconscionability, and so "not entitled to the assumption of truth." 2011 WL 900114, at *9 (quoting *Iqbal*, 556 U.S. at 679).

This Court finds that *Henderson* has the better argument. It is not conclusory to state that a consumer purchasing a car has less bargaining power than the manufacturer and that he had no meaningful choice in setting the terms of the warranty. To the contrary, in all of the potentially relevant states, courts give extra scrutiny to preprinted contracts or contracts of adhesion. *Delta Funding Corp.*, 189 N.J. at 55 (Zazzali, J., concurring); *Laswell*, 181 Ga. App. at 222 (Pope, J., concurring); *Razor*, 222 Ill.2d at 100.

25

NOT FOR PUBLICATION

Here, Plaintiffs have plead that Defendants knew about a defect in the timing chain tensioner before or shortly after the Plaintiffs purchased their vehicles, FAC ¶ 68; that the warranties they provided to Plaintiffs failed to disclose this fact, *id.* ¶ 50; that plaintiffs who reported engine problems, including a loud rattling noise, were told misleading information by Defendants or their agents, *see, e.g.*, *id.* ¶ 15; and that Defendants provided this misleading information intentionally to buy time until after they were no longer obligated by the warranty to make the necessary repairs, *id.* ¶¶ 10, 67.

It is important to note that the Court is not declaring the warranties unconscionable; it is simply finding that plaintiffs' have sufficiently plead that they are. Though unconscionability is a matter of law for the judge, here the unconscionability is highly fact dependent and so is not appropriate for determination on a motion to dismiss. *See* U.C.C. § 2-302(2). The allegations are plausible and if they are demonstrated to be correct, then the warranties and the negotiations surrounding them were surely unconscionable.

### B.    Express Warranty Claims: Rule 9(b)

Because Plaintiffs have adequately alleged that the warranties on the class vehicles were unconscionable, the Court must next consider whether they have sufficiently plead breach of warranty under the applicable laws.

Under New Jersey law, "to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific LLC*, 945 F. Supp. 2d 543, 568 (D.N.J. 2013). New Jersey Plaintiffs have adequately plead these elements.

NOT FOR PUBLICATION

In Georgia, plaintiffs must plead not only that a warranty exists, that it was breached and that the buyer "sustained recoverable damages as the proximate result," but also that the buyer provided the seller notice of the defect and an opportunity to repair it. *Teledyne Industries, Inc., v. Patron Aviation, Inc.*, 161 Ga. App. 596, 598 (1982). *See also McDonald v. Mazda Motors*, 269 Ga. App. 62, 65 (2004) (citing O.C.G.A. §§ 11-2-508, 11-2-605 and 11-2-607(3)(a)). Plaintiff Skeen has failed to allege pre-suit notice and an opportunity to repair. His warranty claims are dismissed without prejudice. He may seek leave to amend within 30 days of this order.

In Illinois, a plaintiff must allege "the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the warranty's terms, a failure by the defendant to do so, compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty." *Evitts*, 359 Ill. App. 3d at 511 (citations omitted). As in Georgia, these requirements incorporate a duty to provide pre-suit notice and an opportunity for the seller to remedy the alleged problem. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 492 (1996). The pre-suit notice element requires the plaintiff to plead that defendant was aware of a defect in her particular vehicle, not just a defect found in a certain model of vehicle. *Id.* at 493.[9] The named Illinois plaintiff, Plaintiff Freeman, has adequately plead these elements, including pre-suit notice and opportunity to repair. According to the FAC, she repeatedly contacted Defendants or their agents to complain about problems with her vehicle. FAC ¶ 15. She was told that the loud rattling in her engine was "caused by getting gas at 'older' gas stations" or "low oil"

---

[9] Reliance is an element in determining whether or not a warranty exists. *Hrosik v. J. Keim Builders*, 37 Ill. App. 3d 352, 354 (1976). Here, there is no dispute that the warranty exists or is part of the basis of the bargain, so reliance is not required.

NOT FOR PUBLICATION

and her requests for repair were refused until after her warranty had expired, at which point she paid for them herself. *Id.*

### VI.   Implied warranty

As a general rule, the implied warranty of merchantability warrants that a consumer good is "fit for the ordinary purposes for which such goods are used." U.C.C. § 2-314(2)(c). *See* N.J.S.A. § 12A:2-314(2)(c); O.C.G.A. § 11-2-314(2)(c); 810 ILCS 5/2-314(2)(c). In New Jersey, the implied warranty that comes with the purchase of a car "is simply a guarantee that [it] will operate in a safe condition and substantially free of defects and, therefore, where a car can provide safe, reliable transportation, it is generally considered merchantable." *Henderson*, 2010 WL 2925913, at *9 (denying motion to dismiss implied warranty claims) (citation and quotation marks omitted); *accord Oggi Trattoria and Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill. App. 3d 354, 361 (2007) (citation and quotation omitted). If a Georgia plaintiff alleges a breach of implied warranty for a latent defect in a car, "the latent defect must exist at the time that the vehicle was sold"; whether there is a latent defect and whether it amounts to a breach of implied warranty are questions of fact for the jury. *McDonald*, 269 Ga. App. at 68 (2004) (finding an engine rattle to "give rise to the reasonable inference that such conditions existed from the time of purchase") (citations omitted).

A claim for breach of implied warranty must ordinarily arise shortly after purchase—there will typically be no claim for breach of implied warranty "where plaintiffs have driven their cars without problems for years." *Sheris v. Nissan N. Am. Inc.*, No. 07-cv-2516 (WHW), 2008 WL 2354908, at *6 (D.N.J. June 3, 2008); *accord Soto v. CarMax Auto Superstores, Inc.*, 611 S.E.2d 108, 110 (2005); *Alvarez v. Am. Isuzu Motors*, 321 Ill. App. 3d 696, 704 (2001) (requiring a showing that car was used properly to rule out other causes for defect).

28

NOT FOR PUBLICATION

"Merchantability does not mean that the products are exactly as the buyer expected, but rather that the goods satisfy a minimum level of quality." *Sheris*, 2008 WL 2354908, at *6.

Here, the implied warranty at issue is expressly limited to the same term as that of the express warranty. Defs.' Mot. Mem. Dis. at 1. Plaintiffs have alleged that this term should be extended because Defendants manipulated the warranty terms to render them unconscionable. FAC ¶ 79. Though Plaintiffs' likelihood of success on this count may be lower, these pleadings are sufficient. As the *Henderson* court noted, "Plaintiffs will have a very difficult path to hoe to establish their claim for breach of an implied warranty of merchantability . . . . However, this Court cannot hold as a matter of law that Plaintiffs' claim should be dismissed." 2010 WL 2925913, at *10 (quoting *Hornberger v. GMC*, 929 F. Supp. 884, 888 n.3 (E.D. Pa. 1996)). The same reasoning applies here.

### VII.   Magnuson-Moss Claims

The Magnuson-Moss claims, "based on breaches of express and implied warranties under state law, depend upon those state law claims." *Cooper v. Samsung Elecs. Amer., Inc.*, Civ. No. 07-3853 (JLL), 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008); *accord McDonald*, 269 Ga. App. at 64; *Razor*, 222 Ill.2d at 85. To the extent plaintiffs have adequately plead state law warranty claims, the Magnuson-Moss claims survive as well.

### VIII.   Class claims

Defendants also argue that the Court should dismiss Plaintiffs' class action allegations. The Court finds this inquiry inappropriate at the pleading stage.

Defendants are correct that class action treatment may not be appropriate in a case involving individual issues of fact and the application of different state laws. *See, e.g.*, Wright & Miller § 1780.1 ("As a matter of general principle, the predominance requirement of [Fed. R.

NOT FOR PUBLICATION

Civ. P.] 23(b)(3) will not be satisfied if the trial court determines that the class claims must be decided on the basis of the laws of multiple states.").

There are certainly some individual issues of fact and a range of potentially applicable state laws which threaten the manageability of this action. But the Court finds it is not appropriate to dismiss class claims before the parties have fully briefed the elements of a Rule 23 class action. Defendants' motion to dismiss is denied on this basis.

**IX.     Conclusion**

Defendants' motion to dismiss is granted in part and denied in part. An appropriate Order follows.

January 24, 2014

**/s/ William H. Walls**
United States Senior District Judge