NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA SKEEN and LAURIE FREEMAN, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company; BMW (U.S.) HOLDING CORP., a Delaware corporation; and BAYERISCHE MOTORENWERK AKTIENGESELLSCHAFT, a foreign corporation,<br><br>*Defendants*. | **OPINION**<br><br>Civ. No. 2:13-cv-1531-WHW-CLW |

**Walls, Senior District Judge**

This matter arises from Plaintiffs Joshua Skeen and Laurie Freeman's class action complaint against Defendants BMW of North America, LLC, BMW (U.S.) Holding Corp., and Bayerische Motorenwerk Aktiengesellschaft regarding alleged defects in the MINI Cooper, a line of vehicles produced by the Defendants. One class of Plaintiffs and Defendants have agreed to settle this matter. Under Federal Rule of Civil Procedure 23(e), these Plaintiffs now move, with consent from Defendants, for preliminary approval of a settlement agreement, conditional class certification, approval of class notice procedures, and the scheduling of a final fairness hearing. After oral argument on January 5, 2016, Plaintiffs' motion is granted.

1

NOT FOR PUBLICATION

## FACTUAL AND PROCEDURAL HISTORY

### I. The second amended complaint

This case arises from claims regarding the MINI Cooper, a line of vehicles produced by Defendants. Plaintiffs are owners or lessees of MINI Coopers who allege that, at the time of purchase, their vehicles contained a latent defect in a part of the engine known as the "timing chain tensioner" which causes the part to fail prematurely. Second Amended Complaint, ECF No. 53 ¶ 6-7. The cars at issue are "second generation" MINI Coopers with an N12 or N14 engine: the MINI Cooper R56 (Cooper Hardtop), 2007-2010 model years; the MINI Cooper R55 (MINI Clubman), 2008-2010 model years; and the MINI Cooper R57 (MINI Cooper Convertible), 2009-2010 model years. *Id.* at 2, ¶¶ 51-52.

Named Plaintiffs include an individual from Georgia, Joshua Skeen, *id.* ¶ 15; an individual from Illinois, Laurie Freeman, *id.* ¶ 16; five individuals from New Jersey, Scott Lamb, Gina Romaggi, Emmanuel Nomikos, Vicki Blasucci and Julian Mercado, *id.* ¶¶ 17-19, 21, 25; six individuals from California, Gregory Abbott, Kevin Kebabjian, Ginger Roach, James Stoecker, Patricia Curran, and Candi Sossa, *id.* ¶¶ 20, 24, 30, 38, 41; an individual from Minnesota, Scott Bookhout, *id.* ¶ 22; an individual from Arizona, Michelle Colberg, *id.* ¶ 23; an individual from Pennsylvania, Marta Motel, *id.* ¶ 26; an individual from Florida, Heather Swango, *id.* ¶ 32; an individual from New York, Karla Moreno-Vanni, *id.* ¶ 33; an individual from Texas, Lauren Sanders, *id.* ¶ 37; an individual from Tennessee, MaryAnne Howland, *id.* ¶ 39; and an individual from Arkansas, Teresa Welch, *id.* ¶ 40. All of the plaintiffs purchased and/or leased their vehicles in their home states with the exception of Plaintiff Skeen, who purchased his vehicle in South Carolina, *id.* ¶ 15, Plaintiff Colberg, who purchased her vehicle in Texas, *id.* ¶ 23, and Plaintiff Moreno-Vanni, who purchased her vehicle in Florida. *Id.* ¶ 33.

Plaintiffs purchased and/or leased their vehicles between June 2007 and December 2011. *Id.* ¶¶ 15-41. Each has alleged a problem with the timing chain tensioner in his or her vehicle which initially caused a loud noise, referred to as a "death rattle," and eventually required replacement of that part or even the entire engine. *Id.* ¶ 61.

The named Plaintiffs bring claims on behalf of themselves and a nationwide class of individuals who leased or purchased the cars at issue. *Id.* at 1. Alternatively, the Plaintiffs bring claims on behalf of themselves and twelve statewide classes of individuals who leased or purchased the cars at issue in Arizona, Arkansas, California, Florida, Georgia, Illinois, Minnesota, New Jersey, New York, Pennsylvania, Texas, and Tennessee. *Id.* Plaintiffs bring a total of eighteen causes of action, including claims for breach of express warranty, *id.* ¶¶ 98-105, breach of implied warranty, *id.* ¶¶ 106-119, and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., *id.* ¶¶ 132-38, on behalf of themselves and the entire nationwide class. Additionally, Plaintiffs Lamb, Romaggi, Nomikos, Blasucci, and Mercado (collectively, the "New Jersey Plaintiffs") bring a claim on behalf of themselves and New Jersey class members under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, et seq., *id.* ¶¶ 120-31; Plaintiff Skeen brings a claim on behalf of himself under the Georgia Fair Businesses Practice Act ("GFBPA"), O.C.G.A. §§ 10-1-390, et seq., *id.* ¶¶139-53; Plaintiff Freeman brings a claim on behalf of herself and Illinois class members under the 85 Ill. Comp. State. 505/1, et seq., *id.* ¶¶ 154-64; Plaintiffs Abbott, Curran, Kebabjian, Roach, Sossa, and Stoecker (collectively, the "California Plaintiffs") bring claims on behalf of themselves and California class members under California Bus. & Prof. Code § 17200, et seq., *id.* ¶¶ 165-77, and the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq., *id.* ¶¶ 178-93; Plaintiff Bookhout brings claims on behalf of himself and Minnesota class members under the Minnesota Unlawful Trade

Practices Act ("MUTPA"), Minn. Stat. § 325D.13, *id.* ¶¶ 194-211, the Minnesota False Statements in Advertising Act, Minn. Stat. § 325F.67, *id.* ¶¶ 212-27, and the Minnesota Consumer Protection Act, Minn. Stat. § 325F.69, *id.* ¶¶ 228-44; Plaintiff Colberg brings a claim on behalf of herself and Arizona class members under the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521, et seq., *id.* ¶¶ 245-54; Plaintiff Swango brings a claim on behalf of herself and Florida class members under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 et seq., *id.* ¶¶ 255-267; Plaintiff Sanders brings a claim on behalf of herself and Texas class members under the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41 et seq., *id.* ¶¶ 268-81; Plaintiff Motel brings a claim on behalf of herself and Pennsylvania class members under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S.A. §§ 201-1, et seq., *id.* ¶¶ 282-302; Plaintiff Howard brings a claim on behalf of herself and Tennessee class members under the Tennessee Consumer Protection Act, Tenn. Code § 47-18-101, et seq., *id.* ¶¶ 303-316; Plaintiff Welch brings a claim on behalf of herself and Arkansas class members under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, et seq., *id.* ¶¶ 317-326; and Plaintiff Moreno-Vanni brings a claim on behalf of herself and New York State class members under the New York Consumer Protection Act ("NYCPA"), N.Y. Gen. Bus. Law § 349, *id.* ¶¶ 327-337.

According to Plaintiffs, the class vehicles came with an express warranty of 48 months or 50,000 miles, whichever came first. *Id.* ¶ 8. For some of the named Plaintiffs, the alleged defect manifested after the term of the warranty expired. *Id.* ¶¶ 15-41. They allege that this is not fatal to their warranty claims because Defendants knew about the defects and manipulated the warranty term to make sure they did not manifest until after the warranty term expired. *Id.* ¶ 10.

The claims all hinge on allegations that the Defendants made various misrepresentations and omissions in relation to the sales and marketing of the Class Vehicles. The complaint cites a 2004 "announcement of the Prince engine," which stated that the "timing chain . . . remains maintenance-free throughout the full running life of the engine," *Id.* ¶ 66; the MINI Maintenance Program, which asserts that the timing chain and timing chain tensioner will never need maintenance, *id.* ¶ 57; as well as the "MINI marketing campaign," which employed "aggressive, unconventional marketing" about the quality of the vehicles. *Id.* ¶¶ 49-50. Plaintiffs have not made any specific allegations regarding communications from MINI sales people or other individual employees of Defendants, though presumably such communications played a role as well. For their claim that Defendants knew about the alleged timing chain tensioner defect, Plaintiffs point to a Technical Service Bulletin ("TSB") issued by Defendants on January 1, 2008, which addressed consumer complaints about a rattling noise and warned technicians not to install the allegedly defective timing chain tensioner. *Id.* ¶¶ 64-65.

## II.   Procedural history

Named Plaintiffs Skeen and Freeman first filed a complaint in this matter on March 12, 2013. Complaint, ECF No. 1. Plaintiffs filed a first amended complaint on June 14, 2013, adding Plaintiffs Lamb, Romaggi, and Nomikos as Named Plaintiffs. First Amended Complaint, ECF No. 13. On July 12, 2013, Defendants moved to dismiss the first amended complaint. ECF No. 15. On December 6, 2013, the Court consolidated this action with another action brought in this district, *Curran v. BMW of North America, LLC*, 2:13-cv-4625, dealing with similar subject matter. Order of Consolidation, ECF No. 36. On January 24, 2014, addressing only the first amended complaint and not the consolidated claims from *Curran*, the Court granted Defendants' motion to dismiss in part and denied it in part. ECF No. 39. The Court (a) dismissed Plaintiffs'

breach of express warranty claim without prejudice, (b) dismissed Plaintiffs Skeen and Freeman's NJCFA claims with prejudice, (c) dismissed the NJCFA claims of the New Jersey Plaintiffs without prejudice as to all claims regarding affirmative misstatements, (d) dismissed the Magnuson-Moss Warranty Act claim in part, holding that the outcome of that claim was derivative of the express and implied warranty claims, (e) dismissed Plaintiff Skeen's claims under the Georgia Fair Business Practices Act without prejudice as to all claims regarding affirmative misstatements, and (f) dismissed Plaintiff Freeman's claims under the Illinois Consumer Fraud and Deceptive Business Practices Act without prejudice. *Id.* On May 2, 2014, Plaintiffs filed a second amended complaint, specifically incorporating the plaintiffs and claims asserted in *Curran* and asserting the eighteen federal and state law claims discussed, including claims dismissed without prejudice under the Court's January 24, 2014 order. ECF No. 53.

On April 17, 2014, Plaintiff Richard Kahn filed a putative class action against Defendants in the United States District Court for the Eastern District of New York dealing with similar subject matter. *Kahn v. BMW of North America, LLC*, 2:14-cv-02463-ADS-ARL. Plaintiff Kahn's action has not yet been consolidated with this one.

### III. The proposed N14 Class settlement agreement

On November 23, 2015, Plaintiffs announced that they and Defendants had agreed to a settlement with respect to owners and lessees of vehicles with an N14 engine *only*. Under Federal Rule of Civil Procedure 23(e), Plaintiffs now move for preliminary approval of a settlement agreement, conditional class certification, approval of class notice procedures, and the scheduling of a final fairness hearing. Mot. Prelim. Approval Class Action Settlement and Notice Program, ECF No. 70.

### A. The N14 Class

The parties' settlement agreement defines the putative class in this settlement agreement to include:

> [a]ll persons or entities in the United States, the District of Columbia, and Puerto Rico who currently own or lease, or previously owned or leased, a model-year 2007 through 2009 MINI Cooper 'S' Hardtop (R56), a model-year 2008 through 2009 MINI Cooper 'S' Clubman (R55), or a model-year 2009 through 2010 MINI Cooper 'S' Convertible (R57) vehicle, manufactured at any time from start of production in November 2006 through July 2010.

Declaration Raymond P. Boucher, ECF No. 69-3 Ex. 1, Settlement Agreement and Release at 4 (the "N14 Class Vehicles" and the "N14 Class"). "Tens of thousands" of N14 Class Vehicles were sold to potential class members. *Id.* ¶ 30. The settlement agreement appoints Plaintiffs Skeen, Freeman, Lamb, Romaggi, Nomikos, Abbott, Blasucci, Bookhout, Colberg, Kebabjian, Motel, Roach, Stoecker, Swango, Curran, Howland, Sossa, and Richard Kahn of the Eastern District of New York action, 2:14-cv-02463-ADS-ARL, as N14 Class Representatives. *Id.* at 8. Named Plaintiffs Julian Mercado, Karla Moreno-Vanni, Lauren Sanders, and Teresa Welch and other individuals who purchased or leased MINI vehicles containing N12 engines (the "N12 Class") are *not* members of the N14 Class and are not participating in the class settlement. *Id.* at 2 n.1. Also excluded from the N14 Class are:

> Defendants, as well as Defendants' affiliates, employees, officers and directors, attorneys, agents, insurers, their-party providers of extended warranty/service contracts, franchised dealers, independent repair/service facilities, fleet owners and operators, rental companies and vehicles, the attorneys representing Defendants in this case, the Judges and Mediator to whom this case is assigned and their immediate family members, all persons who request exclusion from (opt-out of) the Settlement, vehicles deemed a total loss (other than vehicles whose engines failed or were damaged due to timing-chain tensioner and/or timing chain failure), vehicles whose true mileage is unknown, all persons who previously released any claims encompassed in this Settlement, and vehicles transported outside the United States.

*Id.* at 4-5.

## B. The settlement terms

Assuming that the Court enters preliminary and final approval orders, the Plaintiffs agree to dismiss this action with prejudice, *id.* at 15, 16, and all N14 Class members "will be forever barred and enjoined from pursuing any claims" resolved by the settlement. *Id.* at 16, 31-33.

In consideration, Defendants agree to provide N14 Class members with four primary types of relief. First, N14 Class Vehicles will receive a warranty extension for the timing-chain tensioner and timing chain for seven years or 100,000 miles from the date when the vehicle was first placed into service, whichever comes first, subject to certain exceptions. *Id.* Second, N14 Class members will be entitled to reimbursement for out-of-pocket expenses incurred before the effective settlement date for repair and/or replacement of the timing chain and/or timing-chain tensioner, subject to certain limitations. *Id.* at 17-18. Class members will be entitled to 100% of costs incurred at authorized MINI dealers and up to $120 for timing-chain tensioners and $850 for timing chains repaired or replaced at independent service centers. *Id.* Third, N14 Class members will be entitled to reimbursement for up to $4,500 in out-of-pocket expenses incurred before the effective settlement date for repair and/or replacement of an engine because of timing-chain tensioner and/or timing chain failure, subject to discounts based on mileage and the amount of time since their vehicle was first placed into service, as well as certain other limitations. *Id.* at 19-20. Finally, N14 Class members will be entitled to compensation of up to $2,250 if they had to sell their vehicle at a loss before the effective settlement date due to an unrepaired damaged or failed engine caused by timing-chain tensioner and/or timing chain failure, again subject to discounts based on mileage and the time since their vehicle was first placed into service, as well as certain other limitations. *Id.* at 21-22.

The parties have not specified the total dollar value of the settlement because the total amount paid out by Defendants will depend on the number and nature of claims submitted by N14 Class members, but Plaintiffs' counsel estimated at oral argument on January 6, 2016 that the settlement's total value may be in excess of $30 million dollars.

### C. Notice to N14 Class members

The settlement agreement provides a process by which N14 Class members can submit claims for any of the four types of relief and can appeal the denial of their claims, *id.* at 23-24, and describes a program, paid for by Defendants, to notify N14 Class members of the settlement and allow them to opt out/object to the terms of the settlement if this Court grants preliminary approval. *Id.* at 25-31.

### D. Attorneys' fees and service awards

Under the settlement agreement, Plaintiffs' counsel may apply to the Court for a total award of fees and expenses not more than $2,320,000. Defendants agree not to object to an application for an award of up to $1,820,000. *Id.* at 34. Defendants also agree not to oppose an application for service awards of $4,000 each to the eighteen Class Representatives. *Id.*

## DISCUSSION

### I. Preliminary approval of the proposed settlement

Settlement of a class action requires the district court's approval. The court must find that the settlement is "fundamentally fair, reasonable, and adequate." *Erheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); Fed. R. Civ. P. 23(e). The court reviews proposed class settlements in two stages. The first stage is a "preliminary fairness evaluation." *In re National Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014); Manual for Complex Litigation § 21.632 (4th ed. 2006). If the court grants preliminary approval,

9

which is non-binding, the court then directs that notice be sent to all class members. Manual for Complex Litigation § 21.632.

Preliminary approval is granted unless the proposed settlement is obviously deficient. *Weissman v. Philip C. Gutworth, P.A.*, 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015) (Walls, J.); *cf. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In making its preliminary evaluation, the court generally considers whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). These factors create an "initial presumption of fairness." *Id.* In the second stage, after class notice, the court holds a final fairness hearing. Fed. R. Civ. P. 23(e)(2); *see* Manual for Complex Litigation § 21.632. If the court concludes that the settlement is "fair, reasonable and adequate," it will give final approval. *Id.*

The standards for preliminary approval are met in this case. Plaintiffs represent that the settlement is "the product of arms' length negotiations between counsel who have extensive experience in class actions and those related to automobiles and other allegedly defective consumer products." ECF No. 70 at 17. Settlement negotiations occurred after "extensive investigation by Plaintiffs' Counsel" and "after the exchange of initial disclosures," *id.*, and after Plaintiffs' counsel "consulted extensively with an independent automotive expert who explained the nature of the timing chain issue, and an expert in material sciences who performed analysis on the differences between the original part used in manufacture and the subsequently introduced part." ECF No. 69-3 ¶ 14. The parties reached the settlement after (a) a full-day mediation with the Honorable Theodore Katz (Ret.), (b) another full day of discussions, including a settlement

conference with Magistrate Judge Cathy L. Waldor, and (c) "multiple in-person, telephonic, and written communications between the parties spanning more than one year." *Id.* ¶ 12; ECF No. 70 at 17. The Court does not yet have information regarding any objections to the proposed settlement from putative class members, but this does not preclude preliminary approval because class members have not yet been formally notified of the class action or proposed settlement and will have the opportunity to object. *See Weissman*, 2015 WL 333465 at *2.

The settlement terms also appear to be reasonable. In the second amended complaint, Plaintiffs seek an order requiring Defendants to repair the timing chain tensioner defect "at no charge to Class Members," as well as "compensatory, exemplary, and/or statutory damages," restitution, interest, and attorneys' fees and costs. ECF No. 53 ¶ 338. Under the proposed settlement agreement, N14 Class members will be entitled to an extension of their vehicles' warranties, allowing qualifying members to receive free repairs for prospective damage caused by the defective parts, and reimbursement for expenses and losses already incurred replacing or repairing the defective parts or selling their vehicles at a loss. ECF No. 69-3 Ex. 1 at 16-22. The proposed settlement does not provide merely a "phantom benefit" to N14 Class members, *Zimmerman v. Zwicker & Associates, P.C.*, 2011 WL 65912, at *4 (D.N.J. Jan. 10, 2011), but rather a real benefit pegged to the amount of loss each member has suffered or will suffer.

The Court will grant preliminary approval as the proposed settlement lacks obvious deficiencies and appears reasonable.

## II. Conditional certification of the settlement class

In order to grant preliminary approval of a proposed class settlement, a district court must also determine that the requirements for class certification under Federal Rules of Civil Procedure 23(a) and (b) are met. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011).

Under Rule 23(a), Plaintiffs must demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Weissman*, 2015 WL 333465 at *3; Fed. R. Civ. P. 23(a). Rule 23(b)(3), under which Plaintiffs seek class certification, additionally requires that "questions of law or fact common to class members predominate over any question affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.Civ. P. 23(b)(3).

Plaintiffs bear the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the Court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008).

### A. Numerosity

Rule 23(a)(1) requires that it be impracticable to join all class members, but there is "no minimum number of members needed for a suit to proceed as a class action." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). Though Rule 23(a)(1) "requires examination of the specific facts of each case," the numerosity requirement is generally met "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Id.* (citations omitted). Here, Plaintiffs represent that "tens of thousands" of vehicle owners are potential members of the N14 Class, ECF No. 69-3 ¶ 30; ECF No. 70 at 20, so the Court finds that the numerosity requirement is satisfied.

### B. Commonality

Under Rule 23(a)(2), the Named Plaintiffs must "share at least one question of law or fact with the grievances of the prospective class." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001) (citations omitted). Class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality requirement is met here. Because "[a]ll Class Vehicles had the allegedly defective timing chain tensioner installed," ECF No. 70 at 21, "the claims of the Class Representatives and the Settlement Class are predicated on the core common issue as to whether Defendants are liable for the damages suffered" by Class members as a result of the defective part. *Id.*

### C. Typicality

Under Rule 23(a)(3), the Named Plaintiffs' claims must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typical inquiry is intended to assess . . . whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Meal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994). "This investigation properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597-98 (3d Cir. 2009).

Plaintiffs' claims, "for settlement purposes only," are identical to the N14 Class claims. ECF No. 70 at 22. Plaintiffs represent that "[a]ll Class Members assert that Defendants

knowingly placed Class Vehicles containing the alleged defect into the stream of commerce and refused to honor its warranty obligations" and that "all Class Members assert the same or similar legal theories of liability against Defendants." *Id*. The Court finds that the typicality requirement is satisfied.

### D. Adequacy of representation

The Court must determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court considers whether the Named Plaintiffs have "the ability and the incentive to represent the claims of the class vigorously, that [they have] obtained adequate counsel, and that there is no conflict between the [Named Plaintiffs'] claims and those asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988). In this case, counsel is adequate. Plaintiffs claim that counsel are "exceedingly experienced and competent in complex litigation and have an established track record in litigating complex class action suits." ECF No. 70 at 22. As discussed, Plaintiffs' claims are also representative of those of all N14 Class members, and Plaintiffs "have no interests antagonistic to the class." *Id*. at 23. Though the Named Plaintiffs stand to recover payments of $4,000 each above the other consideration provided in the proposed settlement, thereby out-recovering other Class members, "this amount accords with the effort Plaintiff[s have] taken to purse the class' claims." *Weissman*, 2015 WL 333465 at *4. The Court finds that the adequacy requirement of Rule 23(a)(4) is satisfied.

### E. Rule 23(b)(3)

Rule 23(b)(3) includes two requirements: that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

14

controversy." Fed. R. Civ. P. 23(b)(3). The "predominance" requirement demands that "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem v. Windsor*, 521 U.S. 591, 624 (1997). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011).

As explained, Plaintiffs allege here that Defendants installed the defective timing chain tensioner in *all* N14 Class Vehicles. ECF No. 70 at 21. Because the claims of each N14 Class member – under federal and/or state law – proceed from this common factual nucleus, all of the claims uniformly turn on "(a) whether Defendants knew or should have known that the Class Vehicles contained the alleged defect when it placed them into the stream of commerce; (b) whether Defendants have a duty to honor its warranty on the Class Vehicles; and, (c) whether Defendants, in refusing to honor the Class Vehicles' warranty, violated applicable federal and state consumer protection laws." *Id.* at 24. The Court finds that these common questions of law or fact predominate over any questions affecting only individual class members.

The Rule 23(b)(3) superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004) (citations and quotations omitted). The Court looks at "(1) the interest of individual members of the classes in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149-50 (3d Cir. 2008).

Considering these factors, the Court finds that a class action is the superior method of adjudicating N14 Class members' claims. The class action "offers prompt relief to the class members and averts the undue costs they would incur in prosecuting their claims individually." *Weissman*, 2015 WL 333465 at *5. Named Plaintiffs have asserted claims against Defendants in multiple venues under both federal and state law, and many of those Plaintiffs have already consolidated their actions here. *See* ECF Nos. 13, 53. For the remaining tens of thousands of potential N14 Class members who have not yet brought a claim, Plaintiffs argue that, "[G]iven the relatively small individual claims at issue relating to the alleged defect, there would be little or no interest for each class member to proceed with their own cases." ECF No. 70 at 24. Certifying a class for settlement purposes would allow all N14 Class members to obtain relief through a single, uniform process, rather than requiring Class members and Defendants alike to engage in costly litigation in venues across the country for relatively small individual awards.

Because the Court has found that the proposed class action satisfies the requirements of Rules 23(a) and (b), the Court will certify the class defined in the parties' settlement agreement.

### III. Appointment of lead counsel

Federal Rule of Civil Procedure 23(g)(1)(A) requires the Court to appoint counsel upon class certification. Fed. R. Civ. P. 23(g)(1)(A). The Court considers four factors set forth in Rule 23(g): "(i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g). The Court found that the firms Khorrami Boucher Sumner Sanguinetti, LLP (now Boucher LLP), Cafferty Clobes Meriweather & Sprengel LLP, Markun Zusman Freniere Compton LLP, and Pinilis

Halpern, LLP all satisfied the 23(g) factors when it approved their appointment as interim counsel on April, 29, 2014, ECF No. 48, and it will now appoint them as class counsel for the same reasons. The Court also appoints Kiesel Law LLP, Ahdoot & Wolfson PC, and Morgan & Morgan Complex Litigation Group, all of whom Plaintiffs represent are "exceedingly qualified in class action and complex litigation" and whose resumes and curriculum vitae Plaintiffs have attached to their proposed settlement agreement. ECF No. 69-3 ¶ 35; ECF No. 69-3 Ex. 2.

### IV.   Approval of the notice plan and proposed notice forms

Rule 23(e) requires that notice of a proposed settlement be sent to class members. Fed. R. Civ. P. 23(e). For classes certified under 23(b)(3), members must be provided with "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The parties propose to use BMW's database and data from the automotive information company RL Polk to notify all current and former owners and lessees of Class Vehicles by U.S. mail (first class) and individual email. ECF No. 69-3 ¶ 22. The parties will also create a

dedicated settlement website, maintain a toll-free telephone line "to respond to inquiries regarding the Settlement," and send notice to government agencies as required by the Class Action Fairness Act. *Id.* The Court finds that these methods of notice constitute the best notice practicable.

The Court also finds that the proposed notice form is acceptable. The notice form includes all of the required elements under Rule 23(c)(2)(B) and a claim form for Class members to receive their awards under the settlement. *See* Proposed Notice Form, ECF No. 69-3 Ex. 1 Ex. A, B. The form is written in plain and easily understood language, clearly defines the N14 Class and the nature of the action, and gives Class members instructions on how to submit a claim form to receive payment under the settlement, exclude themselves from the N14 Class, object to the settlement, and attend a fairness hearing to discuss the settlement. *Id.*

The proposed notice form includes several blank spaces that remain to be filled with appropriate time periods and dates. Plaintiffs seek to provide N14 class members 90 days from the entry of this order to complete claim forms, exclusion requests, and objections to the preliminarily approved settlement (the "claims period"). ECF No. 69-3 ¶¶ 8-10. The Court finds that a 120-day claims period is reasonable and directs the parties to reflect this change in the notice form. The Court also directs the parties to include in the notice form the date and time of the final fairness hearing. The hearing will be scheduled for May 9, 2016 at 9:00 am.

NOT FOR PUBLICATION

## CONCLUSION

Plaintiffs' unopposed motion to preliminarily approve the N14 Class settlement, to certify the N14 Class, appoint Plaintiffs' counsel, approve the notice plan and proposed notice form, and schedule a fairness hearing is granted. An appropriate order follows.

DATE: 6 Jnry 2016

William H. Walls
Senior United States District Court Judge