PINILISHALPERN, LLP
William J. Pinilis (ID# 024721992)
160 Morris Street
Morristown, NJ  07960
Tel: (973) 401-1111/Fax: (973) 401-1114
Plaintiffs' Interim Liaison Counsel
File No.:  11619

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA SKEEN and LAURIE FREEMAN, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company; BMW (U.S.) HOLDING CORP., a Delaware corporation; and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, a foreign corporation,<br><br>     Defendants. | Case No. 2:13-cv-01531-WHW-CLW |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND INCENTIVE
AWARDS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL BACKGROUND ................................................. 4

      A.   Class Counsel's Exhaustive Investigation ................. 4

      B.   The Initial Complaint ................................................. 5

      C.   Defendants' Motion to Dismiss, Discovery, and Plaintiffs'
           Continuing Investigation ........................................... 7

      D.   The Repair Letter and Service Bulletin ..................... 8

      E.   The Settlement Negotiations ...................................... 9

III.  THE SETTLEMENT ............................................................ 10

      A.   Reimbursement of Out-of-Pocket Expenses for Repair and/or
           Replacement of Timing-Chain/Timing-Chain Tensioner Before
           Effective Date of Settlement ...................................... 10

                 Timing-Chain Tensioner Repair/Replacement ........... 10

                 Timing-Chain Repair/Replacement ........................... 10

                 Limitation on Reimbursement .................................. 11

      B.   Reimbursement for Out-of-Pocket Expenses to Repair or Replace
           Failed Engine Due to Timing-Chain Tensioner and/or Timing-Chain
           Failure Before Effective Date of Settlement ............. 11

                 Reimbursement Parameters ..................................... 11

      C.   Compensation for Sale of Class Vehicle at a Loss Due to Unrepaired
           Damaged or Failed Engine as a Result of Failed Timing-Chain/Timing-Chain
           Tensioner Before Effective Date of Settlement .......... 12

      D.   Warranty Extension for Covered Parts ....................... 13

      E.   Payment of Plaintiff's Attorneys' Fees and Expenses .... 14

      F.   Payment of Class Representatives' Service Awards ...... 15

IV.    THE AMOUNT OF ATTORNEYS' FEES, REIMBURSABLE EXPENSES AND CLASS REPRESENTATIVES' SERVICE AWARDS REQUESTED BY CLASS COUNSEL IS FAIR AND REASONABLE ................................................16

    A.    The Lodestar Method Is the Appropriate Method for Evaluating the Reasonableness of the Mediated Fee Agreement in this Case .............................16

    B.    The Amount of Attorneys' Fees Sought Is Reasonable .........................................19

    C.    The Expenses Incurred Were Reasonable and Necessary ....................................23

    D.    The Requested Service Awards Are Reasonable .................................................24

V.    CONCLUSION ................................................................................................................26

## TABLE OF AUTHORITIES

**CASES**          **PAGE**

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995).........................................23

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining and Manufacturing Co.)*,
   513 F.Supp.2d 322, 343 (E.D. Pa. 2007).............................................................24

*Brown v. BMW of North America, LLC*, Civil Action No. 3:14-cv-00950-JLS-BLM...................6

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 151 (E.D. Pa. 2000) ....................................23

*Curran v. BMW of North America, LLC*, Civil Action No. 2:13-cv-4625-WHW-CLW ...............6

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199-200 (3d Cir. 2000) .........................19, 22

*Henderson v. Volvo Cars of N. Am., LLC*, No. 09-cv-04146, 2013 U.S. Dist. LEXIS
   46291 at *40-58, 2013 WL 1192479 at *13 (D.N.J. Mar. 22, 2013) ................................22

*In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002)................16, 17, 18, 21, 23

*In re Cendent PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) ....................................22

*In re Computron Software, Inc.*, 6 F.Supp.2d 313, 321 (D.N.J. 1998)..........................................16

*In re GM Trucks Litig.*, 55 F.3d 768, 783, 821 (3d Cir. 1995)................................................16, 17

*In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009) .............................19

*In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 at *50,
   2004 W.L. 1221350 at *16 (E.D. Pa. June 2, 2004).........................................................22

*In re Lucent Technologies, Inc. Sec. Litig.*, 327 F. Supp.2d 426, 431 (D.N.J. 2004)...................23

*In re Merck & Co. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 U.S. Dist. LEXIS
   12344 at *45, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ......................................................21

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d
   Cir. 1998)...................................................................................2, 17, 18, 21

*In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp.2d 72, 102 D.N.J. Sept. 27, 2001) ....21, 23

*In re Schering-Plough/Merck Merger Litig.* 2010 U.S. Dist. LEXIS 29121 at *54, 2010
   WL 1257722 at *17 (D.N.J. Mar. 26, 2010) .......................................................19

*Kahn v. BMW of North America, LLC*, Civil Action No. 2:14-cv-02463-ADS-ARL.....................6

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976) .......................................................................................................................16

*McCoy v. Health Net, Inc.*, 569 F.Supp.2d 448 (D.N.J. 2008).....................................................24

*McGee v. Cont'l Tire N. Am.*, No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199, 2009 WL 539893 (D.N.J. Mar. 4, 2009) .................................................................................23

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 304 (E.D. Pa. 2003) ..............................22

*Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 265 n.5 (3d Cir. 2002)....................................................................................................................................19

*Quinlan v. BMW of North America, LLC*, Civil Action No. 1:14-cv-00485-MRB.......................6

*Yeagley v. Wells Fargo & Co.*, 365 F.App'x. 886, 887 (9th Cir. 2010).........................................17

## STATUTES

15 U.S.C. § 2301 .............................................................................................................2, 5, 7, 17

815 Ill. Comp. Stat. 505/1.............................................................................................................5, 7

Ariz. Rev. Stat. § 44-1521 ................................................................................................................7

Ark. Code Ann. § 4-88-101 ..............................................................................................................7

Cal. Bus. & Prof. Code § 17200 ......................................................................................................7

Cal. Civil Code § 1750 .....................................................................................................................7

Fed. R. Civ. P. 23(h).......................................................................................................................16

Fla. Stat. §§ 501.201 .........................................................................................................................7

Ga. Code Ann. §§ 10-1-390..........................................................................................................5, 7

Minn. Stat. § 325D.13 .......................................................................................................................7

Minn. Stat. § 325F.67 .......................................................................................................................7

Minn. Stat. § 325F.69 .......................................................................................................................7

N.J.S.A. 56:8-1 ..............................................................................................................................5, 7

N.Y. Gen. Bus. Law § 349 ............................................................................................7

Pennsylvania Unfair Trade Practices and Consumer Protection Law ............................................7

Tenn. Code § 47-18-101 ............................................................................................7

Tex. Bus. & Com. Code §§ 17.41 ............................................................................................7

## OTHER AUTHORITIES

3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03, at 14-5 (3d ed.
   1992) ............................................................................................22

*Report of the Third Circuit Task Force on Court Awarded Attorney Fees*, 108 F.R.D.
   237, 250-53 (1985) ............................................................................16, 17, 22

## I.      **INTRODUCTION**

This action alleges that certain MINI Cooper vehicles marketed and sold by Defendants BMW of North America, LLC and Bayerische Motoren Werke Aktiengesellschaft (collectively, "Defendants" or "BMW") contain a defect in a component part, known as the "timing chain tensioner," which causes the engine to malfunction and eventually, if left unrepaired, to fail. After multiple challenges to the pleadings, lengthy negotiations among the parties, a full-day mediation before the Honorable Theodore H. Katz, U.S.M.J. (Ret.), a settlement conference with the Honorable Cathy L. Waldor, the Magistrate presiding over this matter, as well as months of negotiations without the assistance of a mediator, the parties reached a proposed settlement of this action (the "Settlement").  As set forth more fully below, the Settlement directly addresses the issues raised in this action and provides the following benefits to approximately 180,000 Class Members: (1) reimbursement of costs expended by Class Members in repairing and/or replacing the vehicles' timing chain, timing chain tensioner and/or engine; (2) compensation for vehicles sold at a loss due to a failed engine resulting from a failed timing chain or timing chain tensioner; and/or (3) a warranty extension for the timing chain tensioner and related parts.

After the class benefits were negotiated, and with the assistance of the Honorable Cathy L. Waldor, and later with the Honorable Joel A. Pisano (Ret.), the parties discussed the attorneys' fees and expenses to be paid to Class Counsel. While not agreeing to the specific amount of such an award, the parties agreed that Defendants will not object to Class Counsel's application for an award of fees and expenses up to $1,820,000.00, that Class Counsel may apply for an award of fees and expenses not to exceed $2,320,000.00, and that Class Counsel will not seek payment of fees and expenses in excess of $2,320,000.00 if awarded by the Court.  Class Counsel's fees and expenses will be paid separate and apart from any relief provided to the Class pursuant to the Settlement.

1

By this Motion, Plaintiffs seek payment of attorneys' fees and expenses in the total amount of $2,320,000.00.   The lodestar of attorneys' fees incurred by Class Counsel, collectively, is $3,387,328.75 for 5,100.25 hours of time expended.   The lodestar method of analysis is appropriate because, among other things, the Magnuson Moss Warranty Act (15 U.S.C. § 2301, *et seq.*) provides for statutory fee shifting and the Settlement is not based on a common fund.   The attorneys' fees incurred by Class Counsel are reasonable because the amount of time devoted to the matter and Class Counsel's hourly rates are reasonable for this type of complex matter, and the work performed was useful and of the type ordinarily necessary to secure the Settlement, which conferred a substantial benefit on 180,000 Class Members. Without deduction for costs incurred, the amount requested represents a discount of the lodestar in the amount of $1,067,328.75 (or approximately 31.5%).   Based on the substantial benefit that the Settlement inures to Class Members, both monetary and non-monetary, there is no reason for Plaintiffs to accept a discount in any further amount.   Any further reduction in fees would be inconsistent with the policy of encouraging counsel to undertake socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation *See*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998)   As set forth more fully below, the $133,358.30 in expenses incurred by Class Counsel, collectively, in litigating this class action were also reasonable and necessary.

The service awards of $4,000.00 to each of the eighteen (18) Class Representatives in recognition of their work in furtherance of this litigation is also reasonable.  These amounts will be paid separate and apart from the relief provided to the Class.  Defendants do not object to payment of these awards.

In light of the foregoing, Plaintiffs respectfully request that this Motion be granted in its entirety.

## II.    FACTUAL BACKGROUND

### A.    Class Counsel's Exhaustive Investigation

In the summer of 2012, Class Counsel Markun Zusman Freniere & Compton LLP ("MZFC") was contacted by the owner of a BMW MINI Cooper who had experienced problems with the vehicle's timing chain that resulted in engine failure. MZFC then contacted a consultant who owned and managed a MINI Cooper repair shop who suggested that the cause of the problem emanated from a loosening of the timing chain that was possibly due to a faulty timing chain tensioner. Declaration of David S. Markun, Esq. ("Markun Decl."),  ¶ 6; Declaration of Raymond P. Boucher, Esq. ("Boucher Decl."), ¶ 10.

A timing chain has to be properly tensioned and synchronized or it will cause serious damage that ultimately results in catastrophic engine failure. Most automobile engines are designed with a rubber-composite timing belt located outside the engine block (the cast metal block containing the cylinders) but Class Vehicles do not have timing belts, rather, they utilize timing chains. When the timing chain tensioner begins to fail, as it did for each of the named Plaintiffs, the timing chain will stretch out of place which can result in serious damage to the engine. When the timing chain tensioner fails completely, the engine components suffer so much damage that the engine can seize up and all power to the vehicle is lost. This failure of the timing chain tensioner does not occur suddenly, rather, it slowly develops over time due to Class Members' ordinary and intended use of the Class Vehicles, *i.e.*, driving. Markun Decl., ¶ 7; Boucher Decl., ¶ 11.

After meeting with the consultant, MZFC conducted on-line research which appeared to confirm what it had been told by the consultant and learned that dozens, if not hundreds, of other MINI Cooper owners were experiencing the same set of problems. MZFC then reached out to Raymond P. Boucher, Esq. (who, at the time, was affiliated with the law firm of Kiesel, Boucher

& Larson LLP, now Kiesel Law, LLP) because of the firm's experience handling automotive-related product defect class actions. Class Counsel thereafter discovered that Defendants had issued a new timing chain tensioner to replace the one that was installed at the time of manufacture. Thereafter, both law firms conducted an exhaustive investigation of the cause of the engine failures that MINI Cooper owners were experiencing. The investigation included creating a web site and responding to dozens of calls from MINI Cooper owners who had experienced problems with their timing chain and engine and visiting dozens of MINI repair shops in several states. Markun Decl., ¶ 8; Boucher Decl., ¶ 12.

Moreover, Class Counsel took various tensioners, old and new, to a consulting metallurgical expert who confirmed that while the new and old timing chain tensioners were made from the same materials, the internal spring in the revised tensioner was more robust. The redesigned timing chain tensioner spring included significant revisions to the spring diameter, coil diameter, total length, and pitch. Thus after a thorough and lengthy investigation, Class Counsel confirmed that an integral component of the engines in the Class Vehicles was prone to failure and if not replaced early enough, would result in the complete failure of the engine necessitating the replacement of the engine at a significant cost. Early intervention still cost the consumer out of pocket anywhere from a few hundred to almost one thousand dollars depending on the severity of the damage. Markun Decl., ¶ 9; Boucher Decl., ¶ 13.

**B.**      **The Initial Complaint**

On March 12, 2013, Plaintiffs Joshua Skeen and Laurie Freeman filed a Complaint against Defendants for (1) Breach of Express Warranty; (2) Breach of Implied Warranty; (3) Violation of N.J.S.A. 56:8-1, *et seq*.; (4) Violation of 15 U.S.C. § 2301, *et seq.* (5) Violation of Ga. Code Ann. §§ 10-1-390, *et seq*.; and (6) Violation of 815 Ill. Comp. Stat. 505/1, *et seq*. (ECF No. 1). The Complaint set forth in great detail the nature and extent of the timing chain

tensioner defect. Among other allegations, the Complaint set forth the differences in the measurements of the spring and coil diameter and total length and pitch between the original and redesigned timing chain tensioners. Plaintiffs alleged that Defendants knew or should have known of the issues with the timing chain and its components at the time the Class Vehicles were put into the stream of commerce in this jurisdiction and throughout the United States. Compounding the defect, the Class Vehicles were marketed as having sophisticated on-board computers that were constantly monitoring the vehicles to alert the owner when service was required; however, this system failed to alert consumers to the issues with the timing chain. Plaintiffs further alleged that Defendants exacerbated their improper sale of the Class Vehicles to Class Members by refusing to honor their obligation to repair the timing chain and its components after the expiration of the warranty period despite the defect being present in the Class Vehicles on delivery and within the original vehicle warranty period.  Boucher Decl., ¶ 14.

Multiple other similar putative class actions were eventually filed in the United States District Court for the: District of New Jersey (*Curran v. BMW of North America, LLC*, Civil Action No. 2:13-cv-4625-WHW-CLW); Southern District of California (*Brown v. BMW of North America, LLC*, Civil Action No. 3:14-cv-00950-JLS-BLM); Eastern District of New York (*Kahn v. BMW of North America, LLC*, Civil Action No. 2:14-cv-02463-ADS-ARL); and, Southern District of Ohio (*Quinlan v. BMW of North America, LLC*, Civil Action No. 1:14-cv-00485-MRB) (collectively, the "Federal Actions"). The Federal Actions asserted a number of claims, all of which sought relief, like this action, under various state and federal laws.[1] Boucher Decl., ¶ 15.

---

[1] The class actions noted above had been represented by the following law firms: Cafferty Clobes Meriwether & Sprengel LLP represented the putative class in *Curran v. BMW of North America, LLC*; Ahdoot and Wolfson APC and Morgan and Morgan Complex Litigation Group represented the putative class in *Brown v. BMW of North America, LLC* and *Quinlan v. BMW of North America, LLC*; Ahdoot & Wolfson, P.C. and the Law Offices of Paul C. Whalen, P.C. represented the putative class in *Kahn v. BMW of North America*.

**C.**     **Defendants' Motion to Dismiss, Discovery, and Plaintiffs' Continuing Investigation**

On April 23, 2013, Defendants filed a Motion to Dismiss the first-filed complaint on various grounds. (ECF No. 5).  In response, the parties agreed to the filing of the First Amended Complaint, which named five Plaintiffs from three states.  (ECF Nos. 12, 13).  On July 23, 2013, Defendants moved to dismiss the FAC.  (ECF No. 15).  Plaintiffs opposed the motion (ECF No. 28) and, by Order and Opinion dated January 24, 2014 (ECF Nos. 37, 38), this Court denied in part and granted in part Defendants' motion.

On May 2, 2014, a Second Amended Complaint ("SAC") was filed on behalf of 21 plaintiffs from 12 states pleading the following counts: (1) Breach of Express Warranty; (2) Breach of Implied Warranty; (3) Violation of N.J.S.A. 56:81, *et seq.*; (4) Violation of 15 U.S.C. § 2301, *et seq.*; (5) Violation of Ga. Code Ann. §§ 10-1-390, *et seq.*; (6) Violation of 815 Ill. Comp. Stat. 505/1, *et seq.*; (7) Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; (8) Violation of Cal. Civil Code § 1750, *et seq.*; (9) Violation of Minnesota Unlawful Trade Practices Act (Minn. Stat. § 325D.13); (10) Violation of Minnesota False Statements in Advertising Act (Minn. Stat. § 325F.67); (11) Violation of Minnesota Consumer Protection Act (Minn. Stat. § 325F.69); (12) Violation of Arizona Consumer Fraud Act (Ariz. Rev. Stat. § 44-1521, *et seq.*); (13) Violation of Florida Deceptive and Unfair Trade Practices Act (FDUTPA)(Fla. Stat. §§ 501.201, *et seq.*); (14) Violation of the Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code §§ 17.41, *et. seq.*); (15) Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (16) Violation of Tennessee Consumer Protection Act (Tenn. Code § 47-18-101, *et seq.*); Violation of Arkansas Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*): and (18) Violation of New York Consumer Protection Act (NYCPA)(N.Y. Gen. Bus. Law § 349).   (ECF No. 52).  Defendants ultimately filed an Answer to the SAC.  (ECF No. 58).

The parties exchanged initial disclosures, engaged in extensive written discovery including exchanging interrogatories and requests for production, and noticed various depositions. Plaintiffs continued to investigate the timing chain failures being reported to them from consumers across the country. This included not only conversations with many dozens of consumers but also, in many instances, obtaining and examining their service, and other, records relating to their vehicles. Boucher Decl., ¶ 18.

### D.     The Repair Letter and Service Bulletin

In October 2013, approximately seven months after the initial complaint was filed, Defendants wrote a letter regarding the faulty timing chain tensioner which was sent by Defendants to owners of the subject vehicles known to them. The letter stated, in pertinent part, as follows:

> As part of ongoing quality analysis at MINI USA, it was determined that your vehicle may have been fitted with a faulty chain tensioner which may lead to an insufficiently tightened timing chain. To ensure that your vehicle is operating as designed, the chain tensioner and timing chain must be checked for wear and replaced, if necessary.
>
> To have this service performed, please contact your authorized MINI dealer at your earliest convenience to arrange an appointment. The repair will be done at no cost to you… (Boucher Decl., ¶¶ 19, 20, Exh. 1)

Thereafter, in January 2014, Defendants issued a technical service bulletin (the "Bulletin") to MINI dealers addressing the N14 engine timing chain tensioner and timing chain and recognizing a defect in the spring force of the tensioner. Specifically, the Bulletin states, in pertinent part, as follows:

> **Situation**
> The timing chain tensioner applies pre-tension to the timing chain guide rail mechanism. In some cases, the tensioner spring force may be too low. Depending upon the severity of the wear, it may lead to a rattling noise when starting the engine cold or when the engine is idling.
>
> **Cause**
> The timing chain tensioner internal tolerances are not consistent.

8

The Bulletin described the affected vehicles as "certain MINI models equipped with the N14 engine, produced from 11/2006-5/2009." The Bulletin set forth a required procedure to be followed by dealers to inspect and possibly replace the timing chain tensioner and/or other related parts before customer delivery or the next time the covered vehicle was brought in for maintenance or repairs.  Boucher Decl., ¶¶ 21, 22, Exh. 2.  Stated differently, every time a customer with a covered vehicle brought in his or her vehicle for any kind of service or repair, the dealer was directed to follow certain procedures, including possible repair of the tensioner or repair and/or replacement of other components or parts, as outlined in the Bulletin.  Importantly, the repair covered in the Bulletin is covered under warranty *regardless of time or mileage*. Boucher Decl., ¶ 22, Exh. 2.

### E.   The Settlement Negotiations

The Settlement was the culmination of lengthy negotiations among the parties, which involved a full-day mediation with the Honorable Theodore Katz (Ret.) on February 14, 2014, in New York, New York, followed by a settlement conference with the Honorable Cathy L. Waldor on February 20, 2015, as well as multiple in-person, telephonic, and written communications between the parties.  Such negotiations, which occurred over the span of more than one year, did not take place until after the above-referenced dispositive motion was filed and ruled upon.  Over one year after the first mediation, a Settlement was finally reached and settlement documents were fully executed in November 2015.  Boucher Decl., ¶ 23.  Preliminary approval of the Settlement was granted on January 6, 2016.  (ECF Nos. 71, 72).

### III.   THE SETTLEMENT

The specifics of each component of the Settlement are as follows.

### A.   Reimbursement of Out of Pocket Expenses for Repair and/or Replacement of Timing-Chain/Timing-Chain Tensioner Before Effective Date of Settlement

All Class Members who repaired or replaced a Timing Chain or Timing-Chain Tensioner before the Effective Date of the Settlement and who submit a valid Claim (as set forth below) are entitled to be reimbursed as follows:

**Timing-Chain Tensioner Repair/Replacement:**

(a)   If the timing-chain tensioner was repaired or replaced at an Authorized MINI Dealer: 100% of the Dealer invoice amount for the Covered Part(s) and labor limited to one repair per Class Member/Vehicle Identification Number.

(b)   If the timing-chain tensioner was repaired or replaced at a third-party service center other than an Authorized MINI Dealer: 100% of the invoice for Covered Part(s) and labor, but no more than $120 (the equivalent cost as if performed at an Authorized MINI Dealer).

**Timing-Chain Repair/Replacement:**

(a)   If the timing chain was repaired or replaced at an Authorized MINI Dealer: 100% of the Dealer invoice amount for the Covered Part(s) and labor limited to one repair per Class Member/Vehicle Identification Number.

(b)   If the timing chain was repaired or replaced at a third-party service center other than an Authorized MINI Dealer: 100% of the invoice for Covered Part(s), but no more than $850 (the equivalent cost as if performed at an Authorized MINI Dealer).

(c)   Where the timing chain is replaced, "Covered Parts" includes oil change, oil filter, and cleaning of oil pan.

**Limitations on Reimbursement:**

(a)     Any reimbursement will be reduced by the amount of any goodwill payments/credits or other concession paid by MINI or any other entity (including insurers and providers of extended warranties), up to the full amount of any reimbursement if Class Member received free replacement or repair.

(b)     Defendants will only pay for labor and parts for one initial repair per Class Member/Vehicle Identification Number by a third-party service center; Defendants will not be responsible for, and will not warrant, repair/replacement work performed at a third-party service center. *Subsequent Failure*: If any replacement Covered Part(s), purchased by the customer or a third-party service center from an Authorized MINI Dealer, fails within two (2) years of installation in a Class Vehicle, Defendants will provide a free replacement of Covered Part(s) only.

*See* Settlement Agreement ¶ III.B.

### B.     Reimbursement for Out-of-Pocket Expenses to Repair or Replace Failed Engine Due to Timing-Chain Tensioner and/or Timing-Chain Failure Before Effective Date of Settlement

All Class Members whose Class Vehicle suffered a failed engine due to the failure of the Timing-Chain or Timing Chain Tensioner in their Class Vehicle and who submit a valid Claim (as set forth below) are entitled to be reimbursed for out-of-pocket expenses as follows:

**Reimbursement Parameters**

(a)     If the engine was repaired or replaced at an Authorized MINI Dealer, a refund of the invoice amount subject to time/mileage parameters set out in Table 1.

(b)     If the engine was replaced at a third-party service center other than an Authorized MINI Dealer, a refund of the invoice amount up to a maximum of $5,400.00, subject to the time/mileage parameters set out in Table 1.

**TABLE 1:**   REIMBURSEMENT FOR OUT-OF-POCKET EXPENSES FOR FAILED ENGINE
DUE TO TIMING-CHAIN TENSIONER/TIMING-CHAIN FAILURE

| Time from in-service date | Less than 50,000 Miles | 50,001 to 62,500 Miles | 62,501 to 75,000 Miles | 75,001 to 87,500 Miles | 87,501 to 100,000 Miles | 100,001 to 112,500 Miles |
|---|---|---|---|---|---|---|
| 4 years | 100% (under original warranty) | 85% | 70% | 60% | 40% | 25% |
| 4-5 years | 85% | 75% | 60% | 40% | 30% | 15% |
| 5-6 years | 75% | 60% | 50% | 30% | 20% | 10% |
| 6-7 years | 50% | 30% | 30% | 15% | 10% | 0% |
| 7-10 years | 25% | 10% | 10% | 5% | 0% | 0% |
| 10+ years | 0% | 0% | 0% | 0% | 0% | 0% |

For illustration purposes, if a Class Member had the repair or replacement performed at an Authorized MINI Dealer when the Class Vehicle was 4½ years old and had been driven for 70,000 miles, the Class Member will be entitled to a 60% return of the documented out-of-pocket expenses if a valid claim is submitted. The same limitations on reimbursement apply to the repair or replacement of the timing chain/timing-chain tensioner as set out above. *See* Settlement Agreement ¶ III.C.

**C.   Compensation for Sale of Class Vehicle at a Loss Due to Unrepaired Damaged or Failed Engine as a Result of Failed Timing-Chain/Timing-Chain Tensioner Before Effective Date of Settlement**

All Class Members whose Class Vehicles were sold at a loss due to an unrepaired failed or damaged engine caused by a failed Timing Chain or Timing-Chain Tensioner, and who submit a valid Claim (as set forth below), are entitled to compensation as follows:

TABLE 2:   COMPENSATION FOR SALE OF CLASS VEHICLE AT LOSS DUE TO UNREPAIRED DAMAGED OR FAILED ENGINE AS A RESULT OF FAILED TIMING-CHAIN/TIMING-CHAIN TENSIONER

| Time from in-service date | Less than 50,000 Miles | 50,001 to 62,500 Miles | 62,501 to 75,000 Miles | 75,001 to 87,500 Miles | 87,501 to 100,000 Miles | 100,001 to 112,500 Miles |
|---|---|---|---|---|---|---|
| 4 years | $0 because 100% covered under original warranty | $2,250 | $1,500 | $1,300 | $1,000 | $500 |
| 4-5 years | $2,250 | $1,500 | $1,200 | $1,000 | $600 | $0 |
| 5-6 years | $1,500 | $1,200 | $900 | $600 | $450 | $0 |
| 6-7 years | $1,000 | $750 | $600 | $450 | $300 | $0 |
| 7-10 years | $750 | $500 | $0 | $0 | $0 | $0 |
| 10+ years | $0 | $0 | $0 | $0 | $0 | $0 |

*See* Settlement Agreement ¶ III.D.

### D.   Warranty Extension for Covered Parts

The Warranty Extension augments and in other instances is duplicative of the extended warranty set forth in the January 2014 Service Bulletin. As noted above, the repair described in the service bulletin "is covered under warranty regardless of time or mileage," but is limited to vehicles with the N14 engine produced from November 2006 through 2009, whereas the warranty under the Settlement applies to All Class Vehicles which includes all model year 2007 through 2009 MINI Cooper "S" Hardtop (R56), model year 2008 through 2009 MINI Cooper "S" Clubman (R55), or model year 2009 through 2010 MINI Cooper "S" Convertible (R57) vehicles equipped with an N14 engine, from start of production in November 2006 through July 2010. Owners of Class Vehicles will receive a warranty extension for the following parts all of

which are part of the timing chain and its components: timing-chain tensioner; sealing ring; timing chain; guide rail; tensioner rail; sliding rail; sprocket on the crankshaft; bearing bolts for the tensioner and guide rails ("Covered Parts"). All Class Vehicles were originally covered by the MINI New Vehicle Limited Warranty for a period of 4 years or 50,000 miles from the date the vehicle was first placed into service, whichever comes first. The Settlement extends the warranty period for Covered Parts to 7 years or 100,000 miles from the vehicle's original in-service date, whichever comes first, and will otherwise be subject to the terms and conditions of the standard MINI New Vehicle Limited Warranty. This extension is in addition to any other warranties applicable to the Class Vehicles. *See* Settlement Agreement ¶ III.A.

### E.     Payment of Plaintiffs' Attorneys' Fees and Expenses

Only after the parties came to agreement regarding the relief to the Class did they begin to negotiate attorneys' fees. Unable to agree, the parties retained Judge Joel A. Pisano (Ret.) and mediated the issue in person in Newark, New Jersey, after written submissions. Boucher Decl., ¶ 25. Class Counsel and Defendants have agreed that Class Counsel may apply to the Court for an award of Class Counsel fees and expenses and that Defendants may object to or oppose that application, although Defendants will not object to Class Counsel's application for an award of fees and expenses up to $1,820,000.00 and Class Counsel may apply for an award of fees and expenses not to exceed $2,320,000.00. The payment of Class Counsel fees and expenses will be paid by Defendants in addition to, and will not reduce in any way, the Settlement benefit to Class Members. *See* Settlement Agreement ¶ VIII.A-B; Boucher Decl., ¶ 25.

**F.**     **Payment Of Class Representatives' Service Awards**

Defendant has agreed to pay $4,000.00 as a service award to each of the eighteen (18) Class Representatives.  The payment of service awards will be paid by Defendants in addition to, and will not reduce in any way, the Settlement benefit to Class Members. *See* Settlement Agreement ¶ VIII.C.

IV.  **THE AMOUNT OF ATTORNEYS' FEES, REIMBURSABLE EXPENSES AND CLASS REPRESENTATIVES' SERVICE AWARDS REQUESTED BY CLASS COUNSEL IS FAIR AND REASONABLE**

A.  **The Lodestar Method Is the Appropriate Method for Evaluating the Reasonableness of the Mediated Fee Agreement in this Case**

By way of this Motion, Class Counsel seeks an award of attorneys' fees and costs in the total amount of $2,320,000.00, which is the maximum amount Class Counsel can seek pursuant to the parties' Settlement Agreement.  Fed. R. Civ. P. 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees that are authorized by law or by the parties' agreement."  "The amount of the award of attorneys' fees and expenses is controlled by the Court and is within its sound discretion."  *In re GM Trucks Litig.*, 55 F.3d 768, 783, 821 (3d Cir. 1995), citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976).  "Determining an appropriate award is not an exact science.  The facts of each individual case drive the amount of any award."  *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002), citing, *In re Computron Software, Inc.*, 6 F.Supp.2d 313, 321 (D.N.J. 1998)

Third Circuit case law establishes two methods for evaluating the award of attorneys' fees – the lodestar approach and the percentage-of-recovery approach – and each method has attributes suited to different types of cases.  *In re GM Trucks Litig.*, 55 F.3d 768, 820-21 (3d Cir. 1995) (citing *Report of the Third Circuit Task Force on Court Awarded Attorney Fees*, 108 F.R.D. 237, 250-53 (1985) (hereafter, "*Report re Attorney Fees*"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. at 128.  A court, when approving a fee award, must first categorize the action it is adjudicating and then "primarily rely on the corresponding method of awarding fees."  *In re GM Trucks Litig.*, 55 F.3d at 821.

"The lodestar method, which multiplies the number of hours by an hourly rate appropriate for the region and lawyer's experience, is the proper method in statutory fee-shifting cases." *AmerisSoft* at 128 *citing, In re G.M. Trucks Litig.*, 55 F.3d at 821. The Task Force appointed by the Third Circuit to evaluate the effect of the lodestar method in awarding attorneys' fees recommended continued use of the lodestar technique in statutory fee-shifting cases. *Report re Attorney Fees*, 108 F.R.D. at 255. Though the parties to a case brought under a fee-shifting statute are free to provide for either method in their settlement agreement, if they do not request a common fund approach, the lodestar approach ordinarily will apply. *Yeagley v. Wells Fargo & Co.*, 365 F.App'x. 886, 887 (9th Cir. 2010). The lodestar method is also preferable where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." *In re G.M. Trucks Litig.,* 55 F.3d at 821. The lodestar method is "designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Prudential*, 148 F.3d at 333.

In light of the foregoing, fee analysis pursuant to the lodestar method is appropriate. The SAC pleads a cause of action under 15 U.S.C. § 2301, *et seq*. (the Magnuson-Moss Warranty Act), on behalf of a National class, which provides for statutory fee-shifting. Specifically, Section 2301(d)(2) provides:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

Here, the Settlement does not involve a common fund, and the parties did not negotiate the range of possible fees until the benefits to the Class were agreed upon. Boucher Decl., ¶ 25. Further,

the parties did not request that the Court utilize a common fund or percentage-of-recovery method in the Settlement Agreement, and therefore, the law defaults to the lodestar method. The individual monetary claims at issue relating to the defect are relatively small (although the collective Class benefit is substantial), with a maximum value payout to any Class Member of approximately $5,400.00 (the maximum reimbursement for a replaced engine). It is impossible to place an exact monetary value on the Settlement because the Settlement involves the non-monetary component of an extension of the warranty period. Further, as set forth above, only after this action was filed did Defendants send the Repair Letter to Class Members and issue a Service Bulletin correcting problems with or caused by the defective timing chain tensioner in vehicles presented to the dealer. Class Counsel do not now have sufficient information to quantify this benefit which they believe resulted from this litigation. The percentage-of-recovery method would not consider these non-monetary benefits and therefore would not provide fair compensation to Class Counsel.

In addition, arguments against using the lodestar method are not applicable here. To be sure, the lodestar method has "'come under attack' because it may encourage attorneys to delay settlement to maximize fees and places strain on the judicial system by mandating that the courts scrutinize the propriety of thousands of billable hours." *AmerisSoft* at 129 (citing, *In re Prudential*, 148 F.3d at 333). Here, however, Class Counsel has not delayed settlement in an effort to maximize fees. Instead, settlement negotiations for the Class relief began shortly after Plaintiffs defeated Defendant's Motion to Dismiss and after the case had been pending for less than one year. Class Counsel did not engage in protracted litigation in an effort to increase lodestar. Further, Class Counsel has alleviated any potential burden to the Court in analyzing their billable hours by submitting summaries by category of all tasks performed, and by

submitting the declaration of Gerald Knapton, Esq., an expert on attorneys' fees issues as described in more detail below, to opine on the reasonableness of the fees.

**B.     The Amount of Attorneys' Fees Sought Is Reasonable**

Plaintiffs' attorneys have incurred a total lodestar of $3,387,328.75 in fees and $133,358.39 in expenses among the nine firms.  Class Counsel seek a court order awarding $2,320,000.00 in fees and expenses, which represents the maximum payment that they may seek pursuant to the Settlement Agreement.

To examine the lodestar factor effectively, "a Court should make explicit findings about how much time counsel reasonably devoted to a given matter, and what a reasonable hourly rate would be for such services." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199-200 (3d Cir. 2000).  "Time expended is considered 'reasonable' if the work performed was 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *In re Schering-Plough/Merck Merger Litig.* 2010 U.S. Dist. LEXIS 29121 at *54, 2010 WL 1257722 at *17 (D.N.J. Mar. 26, 2010) (citations omitted).  The lodestar method is designed to represent how much revenue the attorneys would have collected had the attorneys billed the clients on an hourly basis. *In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009).  The lodestar figure is presumptively reasonable when it is calculated using a reasonable hourly rate and a reasonable number of hours. *Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 265 n.5 (3d Cir. 2002) (citations omitted).

Class Counsel's hourly rates and time devoted to this case are reasonable.  Concurrently herewith, each Class Counsel firm has submitted a declaration and time summary report setting forth the number of hours worked, itemized by eleven (11) task categories, and the rates charged for that work. As set forth in the Declaration of Raymond P. Boucher, the time reports were carefully reviewed by lawyers at Boucher, LLP prior to submission for errors and removal of

certain time entries in their discretion.  Class Counsel attests that they believe all work performed was reasonable and necessary, and that Class Counsel took steps to avoid duplication of labor. Class Counsel also attests that the hourly rates charged are commensurate with prevailing market rates for attorneys handling complex litigation and that the rates requested have been previously approved by courts in similarly complex cases.  Boucher Decl., ¶¶ 34, 47-48; Markun Decl., ¶ 4, 10, 12-14; Yanchunis Decl., ¶¶ 14, 16, 19, 20; Koncius Decl., ¶¶ 4, 6, 9, 10; Pinilis Decl., ¶¶ 4, 6, 9, 10; Clobes Decl., ¶¶ 4, 6, 8-10; Wolfson Decl., ¶¶ 4, 6, 8-10.

Class Counsel's fees are particularly reasonable due to the nature and complexity of this litigation.  At the outset, Class Counsel, even though experienced in automotive cases, had to familiarize themselves with the part at issue, the functionality of the engine at issue, and retain and consult with metallurgical and automotive experts.  Additionally, and among other things, in its Opinion regarding Defendant's Motion to Dismiss, the Court ruled that it would not apply New Jersey law to a nationwide class, but instead determined that it would apply the laws of each Plaintiff's home state to each Plaintiff's respective claims.  As such, Plaintiffs amended the complaint to add sixteen (16) additional Plaintiffs from nine (9) additional states.  In doing so, Class Counsel needed to familiarize themselves with the consumer fraud laws and remedies in twelve (12) states.  The settlement negotiations were also complex.  Among other considerations, they involved discussions regarding monetary and non-monetary relief for Class Members with various categories of damages, from non-monetary consideration for those who had suffered no ascertainable monetary damages, but required a warranty extension to cover them in the event a problem occurred with the timing chain tensioner, to substantial monetary compensation for those Class Members who suffered total engine failure.

Further, each of the Class Counsel firms handled this case on a contingency basis and accepted the potential risk of non-payment. Boucher Decl., ¶ 33; Markun Decl., ¶ 3; Yanchunis

Decl., ¶ 13; Koncius Decl., ¶ 3; Pinilis Decl., ¶ 3; Clobes Decl., ¶¶ 3; Wolfson Decl., ¶ 3. Courts recognize that the risk of non-payment in complex cases such as this one is "very real and is heightened when Plaintiffs' Counsel press to achieve the very best result for their clients." *In re AremisSoft*, 210 F.R.D. at 134.  In addition, there was substantial uncertainty regarding whether Plaintiffs could obtain certification in this case because the Court had determined that it would not apply New Jersey law to a national class, but would instead apply the laws of each Plaintiff's home state to each Plaintiff's particular claims.

To further assist the Court in the lodestar analysis, Plaintiffs have submitted the declaration of expert Gerald Knapton, Esq. who, for over 20 years and in connection with hundreds of litigation matters, has opined as an expert on the reasonableness and necessity of attorneys' fees.  Knapton Decl., ¶ 2.  Mr. Knapton  has personally reviewed thousands of invoices for legal work, including numerous matters based in New York, New Jersey, California, Florida, Pennsylvania and Delaware, totaling far in excess of $4.0 billion in fees.  *Id.*   Mr. Knapton's Declaration supports Class Counsel's position that the amount of time spent by Class Counsel is reasonable, and the hourly rates charged by each firm and attorney are within the reasonable range of cases of similar complexity and subject matter.  *See, In re Merck & Co. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 U.S. Dist. LEXIS 12344 at *45, 2010 WL 547613 (D.N.J. Feb. 9, 2010)(approving rates between $250 and $850 per hour).

Further, it is customary in class actions for class counsel to seek a multiplier of the lodestar.  "A court may...multiply the lodestar calculation to reflect 'the risks of nonrecovery, to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *AremisSoft* at 134, (*citing, In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp.2d 72, 102 D.N.J. Sept. 27, 2001)(citations omitted); *see also In re Prudential*, 148 F.3d at 340-41 ("multiples ranging from one to four are frequently awarded in common fund cases when the

lodestar method is applied") (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03, at 14-5 (3d ed. 1992)); *In re Cendent PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (surveying cases to determine that lodestar multiples range from 1.35 to 2.99); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 at *50, 2004 W.L. 1221350 at *16 (E.D. Pa. June 2, 2004) ("The Court also notes that during 2001-2003, the average multiplier approved in common fund class actions was 4.35 and during 30 year period from 1973-2003, average multiplier approved in common fund class actions was 3.89."). Here, however, Class Counsel is not seeking a multiplier of the lodestar but is instead accepting a *reduction* in fees incurred for work performed. The reduction from the lodestar of $3,387,328.75 down to $2,230,000.00 represents a discount in fees in the amount of $1,067,328.75 (or approximately 31.5%). There is no basis for a further reduction to $1,820,000.00 as sought by Defendants. "[D]istrict courts, in awarding attorneys' fees, may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion. If the court believes that a fee reduction…is indicated, it must analyze the circumstances requiring the reduction and its relation to the fee, and it must make specific findings to support its action." *Gunter,* 223 F.3d at 196 (citing *Report re Attorneys' Fees* at 253).

A review of similar cases in this Circuit demonstrates that the fee request is reasonable. *See, e.g., Henderson v. Volvo Cars of N. Am., LLC,* No. 09-cv-04146, 2013 U.S. Dist. LEXIS 46291 at *40-58, 2013 WL 1192479 at *13 (D.N.J. Mar. 22, 2013) (approving award of $3,000,000 in attorneys' fees in class action providing for reimbursements and warranty extensions in connection with alleged defects in automobiles' transmission systems); *O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 304 (E.D. Pa. 2003) (approving award of $4,896,783.00 in attorneys' fees in class action involving allegedly defective rear lift-gate latch);

*McGee v. Cont'l Tire N. Am.*, No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199, 2009 WL 539893 (D.N.J. Mar. 4, 2009) (approving award of $2,274,983.70 in attorneys' fees and expenses in a consumer class action utilizing a lodestar multiplier of 2.6).

Finally, the fact that the requested fees and costs in the amount of $2,320,000.00 are reasonable and appropriate is supported by the fact that approximately 180,000 notices of the proposed Settlement have been mailed and/or emailed to Class Members at their last known address advising them that the Parties agreed that Class Counsel would be awarded fees and costs in an amount between $1,820,000.00 and $2,320,000.00, and not a single member of the Class has objected to this proposed payment.  This is a significant indicator of class members' approval of the fees requested.  *See, e.g.*, *In re Lucent Technologies, Inc. Sec. Litig.*, 327 F. Supp.2d 426, 431 (D.N.J. 2004).

C.      **The Expenses Incurred Were Reasonable and Necessary**

Class Counsel "is entitled to reimbursement for expenses adequately documented and reasonably and appropriately incurred in the prosecution of the class action."  *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995); *AremisSoft*, 210 F.R.D. at 135.  Courts in this Circuit have held that photocopying expenses, telephone and facsimile charges, postage, messenger and express mail charges, witness fees, filing fees, computer-assisted research such as LEXIS and WESTLAW, and costs associated with expert witnesses and consultants are reasonably incurred in connection with complex litigation.  *Abrams*, 50 F.3d at 1225; *AremisSoft*, 210 F.R.D. at 135; *In re Safety Components Int'l*, 166 F. Supp.2d 72, 108 (D.N.J. 2001); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 151 (E.D. Pa. 2000).  The reasonable costs and expenses incurred by Class Counsel are identified in the declarations of those counsel, and have included, among other things, expert consultant fees, copying costs, travel-related costs for mediations, court appearances, and meetings, court reporter's fees, and mediators' fees.

Since the commencement of this case in March 2013, Class Counsel have advanced the cost of all expenses. Boucher Decl., ¶ 33; Markun Decl., ¶ 3; Yanchunis Decl., ¶ 13; Koncius Decl., ¶ 3; Pinilis Decl., ¶ 3; Clobes Decl., ¶¶ 3; Wolfson Decl., ¶ 3.  These costs and expenses advanced by counsel were reasonable and necessary to the prosecution of the case, and should be reimbursed.  Class Counsel will make no separate application for recovery of these expenses, however, because the mediated fee amount was agreed to cover both attorneys' fees and expenses.

### D.     The Requested Service Awards Are Reasonable

The Settlement Agreement provides that Defendant agrees to pay service awards in the amount of $4,000.00 to each of the Class representatives.  These service awards will be paid separate and apart from any relief provided to the Class pursuant to the Settlement.  Such an award is intended to recognize the critical role the Class Representatives played in this case and the time and effort undertaken.  Here, Class Representatives provided Class Counsel with detailed information and documents regarding their experiences with their BMW MINIs, reviewed the complaint and other filings, and stayed informed about the lawsuit.  *See Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining and Manufacturing Co.)*, 513 F.Supp.2d 322, 343 (E.D. Pa. 2007) (observing "[i]t is particularly appropriate to compensate named representative plaintiffs with incentive awards when they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of the class."). Indeed, "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Bradburn* at 342-43 (approving service award of $75,000.00); *see also McCoy v. Health Net, Inc.*, 569 F.Supp.2d 448 (D.N.J. 2008) (approving $60,000.00 service award to each of the Class Representatives). As

these proposed modest service awards support the participation of the Class Representatives, the

requested incentive awards of $4,000.00 to each Class Representative should be approved.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully requests that the Court award its attorneys' fees and costs in the total amount of $2,320,000.00, and to award service awards to the Class Representatives in the amount of $4,000.00 each.

DATED: May 19, 2016

By: _____
William Pinilis, Esq.
PINILIS HALPERN LLP
160 Morris Street
Morristown, NJ 07960
Tel.: (973) 401-1111
Fax: (973) 401-1114
*Plaintiffs' Interim Liaison Counsel*

Raymond P. Boucher, Esq.
Shehnaz M. Bhujwala, Esq.
Maria L. Weitz, Esq.
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Tel: (818) 340-5400
Fax: (818) 340-5401
*Plaintiffs' Interim Co-Lead Class Counsel*

David Markun, Esq.
Daria Dub Carlson, Esq.
MARKUN ZUSMAN COMPTON LLP
17383 West Sunset Boulevard, Suite A380
Pacific Palisades, CA 90272
Tel: (310) 454-5900
Fax: (310) 454-5970
*Plaintiffs' Interim Co-Lead Class Counsel*

Bryan L. Clobes, Esq.
Kelly L. Tucker, Esq.
CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP
1101 Market St., Suite 2650
Philadelphia, PA 19107
Tel: (215) 864-2800
Fax: (215) 864-2810
*Plaintiffs' Interim Co-Lead Class Counsel*


Jeffrey A. Koncius, Esq.
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel: (310) 854-4444
Fax: (310) 854-0812
*Additional Counsel for Plaintiffs*

Tina Wolfson, Esq.
Robert Ahdoot, Esq.
Theodore W. Maya, Esq.
Bradley K. King, Esq.
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, CA 90069
Tel: (310) 474-9111
Fax: (310) 474-8585
*Additional Counsel for Plaintiffs*

John A. Yanchunis, Esq.
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
Fax: (813) 223-5402
*Additional Counsel for Plaintiffs*