NOT FOR PUBLICATION                                                      CLOSE

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSHUA SKEEN and LAURIE FREEMAN, on behalf of themselves and all others similarly situated, | : : : : | **OPINION** |
| Plaintiffs, | : : | Civ. No. 2:13-cv-1531-WHW-CLW |
| v. | : : : | |
| BMW OF NORTH AMERICA, LLC, a Delaware limited liability company; BMW (U.S.) HOLDING CORP., a Delaware corporation; and BAYERISCHE MOTORENWERK AKTIENGESELLSCHAFT, a foreign corporation, | : : : : : : : | |
| Defendants. | : : | |

### Walls, Senior District Judge

In this class action arising from alleged defects in the MINI Cooper, a line of vehicles produced by Defendants BMW of North America, LLC, BMW (U.S.) Holding Corp., and Bayerische Motorenwerk Aktiengesellschaft, Plaintiffs move for final approval of the settlement between Defendants and a nationwide class of vehicle owners and an award of attorneys' fees and expenses. Defendants do not oppose the motion for final settlement approval but oppose, in part, the motion for attorneys' fees. After conducting a fairness hearing on July 14, 2016, the Court grants final certification of the settlement class, approves the settlement, and grants in part Plaintiffs' motion for attorneys' fees and expenses.

# FACTUAL AND PROCEDURAL HISTORY

## I.    The second amended complaint

A full factual and procedural background of this case is detailed in this Court's January 6,

2016 opinion and order granting preliminary approval of the settlement and is incorporated here.

ECF No. 71. This case arises from claims regarding the MINI Cooper, a line of vehicles

produced by Defendants. Plaintiffs are owners or lessees of MINI Coopers who allege that, at the

time of purchase, their vehicles contained a latent defect in a part of the engine known as the

"timing chain tensioner" which causes the part to fail prematurely, eventually requiring

replacement of that part or even the entire engine. Second Amended Complaint, ECF No. 53

¶¶ 6-7, 61. The cars at issue are "second generation" MINI Coopers with an N12 or N14 engine:

the MINI Cooper R56 (Cooper Hardtop), 2007-2010 model years; the MINI Cooper R55 (MINI

Clubman), 2008-2010 model years; and the MINI Cooper R57 (MINI Cooper Convertible),

2009-2010 model years. *Id*. at 2, ¶¶ 51-52. Plaintiffs allege that Defendants made various

misrepresentations and omissions in relation to the sales and marketing of the vehicles. *Id*. ¶¶ 49-

50, 57, 64-66.

Named Plaintiffs in this case include individuals from Georgia, Illinois, New Jersey,

Minnesota, Arizona, Pennsylvania, Florida, New York, Texas, Tennessee, and Arkansas who

purchased their vehicles between June 2007 and December 2011. *Id*. ¶¶ 15-41. In the second

amended complaint, filed after this action was consolidated with another case dealing with

similar subject matter, *Curran v. BMW of North America, LLC*, 2:13-cv-4625, *see* Order of

Consolidation, ECF No. 36; and after the Court dismissed several federal and state law claims,

*see* ECF No. 9; the named Plaintiffs bring claims on behalf of themselves and a nationwide class

of individuals who leased or purchased the cars at issue. ECF No. 53 at 1. Alternatively, the

Plaintiffs bring claims on behalf of themselves and twelve statewide classes of individuals who leased or purchased the cars at issue in Arizona, Arkansas, California, Florida, Georgia, Illinois, Minnesota, New Jersey, New York, Pennsylvania, Texas, and Tennessee. *Id.* Plaintiffs bring a total of eighteen causes of action, including claims for breach of express warranty, *id.* ¶¶ 98-105, breach of implied warranty, *id.* ¶¶ 106-119, and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., *id.* ¶¶ 132-38, on behalf of themselves and the entire nationwide class. Plaintiffs also bring state law claims on behalf of the twelve statewide classes. *Id.* ¶¶ 120-337.

On April 17, 2014, Plaintiff Richard Kahn filed a putative class action against Defendants in the United States District Court for the Eastern District of New York dealing with similar subject matter. *Kahn v. BMW of North America, LLC*, 2:14-cv-02463-ADS-ARL. Plaintiff Kahn's action has not yet been consolidated with this one.

## II. The N14 Class settlement agreement

On November 30, 2015, Plaintiffs filed an unopposed motion for preliminary approval of class settlement with respect to owners and lessees of vehicles with an N14 engine *only* (the "N14 Class"). ECF No. 70. On January 6, 2016, the Court granted preliminary approval, certifying the settling Class for purposes of settlement only and issuing instructions to begin notifying Class members. ECF No. 72. On July 14, 2016, the Court presided over a fairness hearing as required by Federal Rule of Civil Procedure 23(e). In the interim, 5,310 Class members submitted claims under the settlement, 23 class members objected to the settlement, and 123 opted out. P. Mot. Final Approval Settlement Agreement, Supp. Decl. Matthew J. McDermott in Support Supp. Mot. Approve Settlement ("Supp. McDermott Decl."), ECF No. 107-1 ¶¶ 13-18. No objections were raised at the fairness hearing.

### A. The N14 Class

The settlement agreement defines the "N14 Class" and "N14 Vehicles" as:

> [a]ll persons or entities in the United States, the District of Columbia, and Puerto Rico who currently own or lease, or previously owned or leased, a model-year 2007 through 2009 MINI Cooper 'S' Hardtop (R56), a model-year 2008 through 2009 MINI Cooper 'S' Clubman (R55), or a model-year 2009 through 2010 MINI Cooper 'S' Convertible (R57) vehicle, manufactured at any time from start of production in November 2006 through July 2010.

Declaration Raymond P. Boucher, ECF No. 69-3 Ex. 1, Settlement Agreement and Release at 4

(the "N14 Class Vehicles" and the "N14 Class"). Named Plaintiffs who purchased only vehicles

containing N12 engines are *not* included in the N14 Class. *Id.* at 2 n.1. Also excluded from the

N14 Class are:

> Defendants, as well as Defendants' affiliates, employees, officers and directors, attorneys, agents, insurers, their-party providers of extended warranty/service contracts, franchised dealers, independent repair/service facilities, fleet owners and operators, rental companies and vehicles, the attorneys representing Defendants in this case, the Judges and Mediator to whom this case is assigned and their immediate family members, all persons who request exclusion from (opt-out of) the Settlement, vehicles deemed a total loss (other than vehicles whose engines failed or were damaged due to timing-chain tensioner and/or timing chain failure), vehicles whose true mileage is unknown, all persons who previously released any claims encompassed in this Settlement, and vehicles transported outside the United States.

*Id.* at 4-5.

### B. The settlement terms

#### 1. Relief for N14 Class members

If the Court grants final approval to the settlement agreement, Defendants agree to

dismiss this action with prejudice with respect to *all* Plaintiffs, and N14 Class members "will be

forever barred and enjoined from pursuing any claims" resolved by the settlement. *Id*. at 16, 31-33.

In consideration, Defendants have agreed to provide N14 Class members with four primary types of relief. First, N14 Class Vehicles will receive a warranty extension for the timing-chain tensioner and timing chain for seven years or 100,000 miles from the date when the vehicle was first placed into service, whichever comes first, subject to certain exceptions. *Id*. Second, N14 Class members who submit claims by the relevant deadlines are entitled to reimbursement for out-of-pocket expenses incurred before the effective settlement date for repair and/or replacement of the timing chain and/or timing-chain tensioner, subject to certain limitations. *Id*. at 17-18. Class members are entitled to 100% of costs incurred at authorized MINI dealers and up to $120 for timing-chain tensioners and $850 for timing chains repaired or replaced at independent service centers. *Id*. Third, N14 Class members who submit timely claims are entitled to reimbursement for up to $4,500 in out-of-pocket expenses incurred before the effective settlement date for repair and/or replacement of an engine because of timing-chain tensioner and/or timing chain failure, subject to discounts based on mileage and the amount of time since their vehicle was first placed into service, as well as certain other limitations. *Id*. at 19-20. Finally, N14 Class members who submit timely claims are entitled to compensation of up to $2,250 if they had to sell their vehicle at a loss before the effective settlement date due to an unrepaired damaged or failed engine caused by timing-chain tensioner and/or timing chain failure, again subject to discounts based on mileage and the time since their vehicle was first placed into service, as well as certain other limitations. *Id*. at 21-22.

The settlement requires N14 Class members to complete and submit a claim form, either online or by mailing a hard copy, providing information and documentation about their N14

Vehicle(s), routine maintenance, repairs, and sale. P. Mot. Final Approval Settlement Agreement, ECF No. 92 at 15; *see also* Notice and Claim Form, Decl. Matthew J. McDermott in Support Mot. Approve Settlement ("McDermott Declaration"), ECF No. 92-4 Ex. A. If the Court grants final approval to the settlement agreement, the Settlement Administrator will review each timely claim and initially decide whether to grant or deny each claim. ECF No. 92 at 15; ECF No. 92-4 Ex. A § K. Granted claims will be submitted to Defendants for final approval. ECF No. 92 at 15-16; Settlement Agreement and Release, ECF No. 69-3 Ex. 1 ¶ III.E.2. The Settlement Administrator will notify each Class member whose claim is denied, in whole or in part, of the reason for the denial and the steps the Class member may take to cure any deficiencies in his or her claim. ECF No. 92 at 15; ECF No. 69-3 Ex. 1 ¶ III.E.1. Class members who cannot cure the deficiencies may notify Class Counsel of their wish to appeal the denial, eventually submitting any dispute to an agreed-upon Special Master for a binding determination. ECF No. 92 at 16; ECF No. 69-3 Ex. 1 ¶ III.E.3.

### 2.   Attorneys' fees and expenses

The Parties agreed that, if the Court grants final approval of the settlement agreement, Class Counsel may seek an award of up to $2,320,000 in fees and expenses. ECF No. 69-3 Ex. 1 ¶ VIII.B. Defendants will not object to an award of up to $1,820,000. *Id*. Class Counsel may also move for service awards of up to $4,000 for each of the Named Plaintiffs in the Class without objection from Defendants. *Id*. ¶ VIII.C. All attorneys' fees and expenses, service awards, and expenses incurred administering the settlement agreement shall be paid by Defendants in addition to, and will not reduce, any relief paid to Class members who submit valid claims. *Id*. ¶ VIII.A.

### C. Notice to N14 Class members

In its order granting preliminary approval of the settlement agreement, this Court directed the parties to serve notice of the settlement on all N14 Class members by February 20, 2016, 45 days after the order, and set a deadline of June 20, 2016 for Class members to submit claims, request exclusion from the Class, or object to the settlement. ECF No. 72 at 2.

The Parties selected Class Action Administration LLC ("CAA") as the Claims Administrator for this settlement. ECF No. 92-4 ¶ 1; ECF No. 107-1 ¶ 1. CAA located records for 186,031 N14 Class members representing 80,224 N14 Class Vehicles. ECF No. 92-4 ¶ 4. Of these, 185,582 records had mailing addresses, and 111,893 had email addresses. *Id.*

CAA emailed notices of the settlement to addresses associated with 111,843 Class Vehicles on February 19, 2016 and 50 Class Vehicles on May 2, 2016. *Id.* ¶ 8. Delivery failed for 631 of these addresses, resulting in a success rate of over 94 percent. ECF No. 107-1 ¶ 4. Before February 19, 2016, CAA also established a website, www.TimingChainTensionerSettlement.com, containing information about the settlement and blank copies of the claim form for N14 Class members, ECF No. 92-4 ¶ 10, and a toll-free telephone number for Class members to seek information about the settlement. *Id.* ¶ 12. Telephone operators took 3,992 calls from Class members and other individuals between February 19, 2016 and July 6, 2016, and the website had 116,591 document downloads and page views during the same period. ECF No. 107-1 ¶¶ 6-9.

Because of a "communication error" between the Parties and CAA and delays obtaining Class member contact information from several state motor vehicle agencies, *see* Letter Request for Supplemental Notice Program, ECF No. 88 at 1, CAA mailed notices and claim forms to only 80,000 N14 Class members on February 19, 2016. ECF No. 92-4 ¶ 6. CAA mailed an

additional 92,201 notice packets to Class members on February 26, 2016, 11,366 notice packets

on March 23, 2016, 1,221 notice packets on May 2, 2016, and 794 notice packets on May 19,

2016, for a total of 185,582 notice packets mailed to Class members. *Id*. After multiple attempts,

delivery failed for 6,581 of these addresses, resulting in a success rate of over 96 percent. ECF

No. 107-1 ¶ 7.

      At the request of the Parties, this Court extended the deadline for N14 Class members to

submit claims to July 21, 2016 for Class members from Kansas, New Hampshire, Oklahoma, and

Pennsylvania; ECF No. 89 at 1-2; August 29, 2016 for Class members from Hawaii, *id*. at 2; and

July 1, 2016 for all other Class members, *id*. at 2; and extended the deadline for all Class

members to opt out of or object to the settlement to July 1, 2016. *Id*. at 1. CAA updated the

settlement website to reflect the extended deadlines before June 20, 2016. ECF No. 107-1 ¶ 11.

On June 20, 2016, CAA mailed supplemental notice postcards to a total of 13,141 Class

members in Kansas, Oklahoma, New Hampshire, Pennsylvania, and Hawaii, and emailed a

supplemental notice to all 111,893 email addresses on file. *Id*. ¶ 12.

### D. N14 Class member claims, requests for exclusion, and objections

      According to Plaintiffs, as of July 6, 2006, a total of 5,310 N14 Class members have

submitted claims under the settlement agreement, and 2,064 claims have been approved. The

remaining claims are under review or are awaiting supplemental documentation from Class

members. *Id*. ¶¶ 17-18. One hundred and twenty three Class members have opted out of the

settlement, and 23 Class members have submitted objections to the settlement on various

grounds. *Id.* at ¶¶ 13-16; *see* ECF Nos. 75, 77-85, 96-98, 100-01, 103-04, 106. The Court will address each of these objections individually in this opinion.

### E. Motions for final approval of settlement and attorneys' fees

On May 19, 2016, Plaintiffs moved for an award of $2,320,000 in attorneys' fees and expenses for Class Counsel. ECF No. 86. Defendants filed a brief in opposition on June 16, 2016, arguing that the Court should award Class Counsel only $1,820,000 in attorneys' fees and expenses. ECF No. 90.

On June 20, 2016, Plaintiffs filed an unopposed motion seeking an order granting final certification of the N14 Class for settlement purposes, final approval of the settlement, and relief for N14 Class members under the terms of the settlement agreement. ECF No. 92. Plaintiffs filed a supplemental motion on July 7, 2016 containing updated information about Class member responses and discussing objections filed after June 20, 2016. ECF No. 107.

The Court held a fairness hearing regarding both issues as required by Federal Rule of Civil Procedure 23(e) on July 14, 2016.

### DISCUSSION

Before granting approval of the settlement agreement, the Court must consider: (1) whether the N14 Class can be certified under Federal Rule of Civil Procedure 23; (2) whether notice to the Class was adequate; (3) whether the settlement is fair, reasonable, and adequate; and (4) whether Plaintiffs' proposed provision for attorneys' fees and costs is reasonable.

### I.      Final Class certification is appropriate

The Court earlier granted conditional N14 Class certification, and now "final settlement depends on the finding that the class met all the requisites of Rule 23." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig. ("GM Truck Prods.")*, 55 F.3d 768, 797 (3d Cir.

1995). Under Rule 23(a), the Court must find that (1) the Class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the Class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and (4) the representative parties will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a). Rule 23(b)(3), under which Plaintiffs seek class certification, additionally requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs bear the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the Court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008).

### 1. Numerosity

Rule 23(a)(1) requires that it be impracticable to join all class members, but there is "no minimum number of members needed for a suit to proceed as a class action." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). Though Rule 23(a)(1) "requires examination of the specific facts of each case," the numerosity requirement is generally met "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Id.* (citations omitted). Here CAA identified 186,031 N14 Class members representing 80,224 N14 Class Vehicles. ECF No. 92-4. ¶ 4. The Court finds that the numerosity requirement is satisfied.

### 2. Commonality

Under Rule 23(a)(2), the Named Plaintiffs must "share at least one question of law or fact with the grievances of the prospective class." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir.

2001) (citations omitted). Class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality requirement is met here. Because, as Plaintiffs represented when seeking preliminary approval of the settlement, "[a]ll Class Vehicles had the allegedly defective timing chain tensioner installed," P. Mot. Preliminary Approval, ECF No. 70 at 21, "the claims of the Class Representatives and the Settlement Class are predicated on the core common issue as to whether Defendants are liable for the damages suffered" by Class members as a result of the defective part. *Id.*

### 3.  Typicality

Under Rule 23(a)(3), the Named Plaintiffs' claims must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typical inquiry is intended to assess . . . whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Meal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994). "This investigation properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597-98 (3d Cir. 2009).

Plaintiffs' claims, "for settlement purposes only," are identical to the N14 Class claims. ECF No. 70 at 22. Plaintiffs represent that "[a]ll Class Members assert that Defendants knowingly placed Class Vehicles containing the alleged defect into the stream of commerce and refused to honor its warranty obligations" and that "all Class Members assert the same or similar

legal theories of liability against Defendants." *Id.* The Court finds that the typicality requirement is satisfied.

### 4.   Adequacy of representation

The Court must determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court considers whether the Named Plaintiffs have "the ability and the incentive to represent the claims of the class vigorously, that [they have] obtained adequate counsel, and that there is no conflict between the [Named Plaintiffs'] claims and those asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988). In this case, counsel is adequate. Plaintiffs claim that counsel are "exceedingly experienced and competent in complex litigation and have an established track record in litigating complex class action suits." ECF No. 70 at 22. As discussed, Plaintiffs' claims are also representative of those of all N14 Class members, and Plaintiffs "have no interests antagonistic to the class." *Id.* at 23. Though the Named Plaintiffs stand to recover payments of $4,000 each above the other consideration provided in the proposed settlement, thereby out-recovering other Class members, "this amount accords with the effort Plaintiff[s have] taken to purse the class' claims." *Weissman v. Gutworth*, 2015 WL 333465 at *4 (D.N.J. May 26, 2015) (Walls, J.). The Court finds that the adequacy requirement of Rule 23(a)(4) is satisfied.

### 5.   Rule 23(b)(3)

Rule 23(b)(3) includes two requirements: that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance" requirement demands that

NOT FOR PUBLICATION                                                    CLOSE

"proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem v. Windsor*, 521 U.S. 591, 624 (1997). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011).

As explained, Plaintiffs alleged in their motion for preliminary approval that Defendants installed the defective timing chain tensioner in *all* N14 Class Vehicles. ECF No. 70 at 21. Because the claims of each N14 Class member – under federal and/or state law – proceed from this common factual nucleus, all of the claims uniformly turn on "(a) whether Defendants knew or should have known that the Class Vehicles contained the alleged defect when it placed them into the stream of commerce; (b) whether Defendants have a duty to honor its warranty on the Class Vehicles; and, (c) whether Defendants, in refusing to honor the Class Vehicles' warranty, violated applicable federal and state consumer protection laws." *Id.* at 24. The Court finds that these common questions of law or fact predominate over any questions affecting only individual class members.

The Rule 23(b)(3) superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig. ("Warfarin Sodium")*, 391 F.3d 516, 533-34 (3d Cir. 2004) (citations and quotations omitted). The Court looks at "(1) the interest of individual members of the classes in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149-50 (3d Cir. 2008).

Considering these factors, the again Court finds that a class action is the superior method of adjudicating N14 Class members' claims. The class action "offers prompt relief to the class members and averts the undue costs they would incur in prosecuting their claims individually." *Weissman*, 2015 WL 333465 at *5. Out of the nearly 200,000 members of the N14 Class, over 5,000 submitted claims after receiving notice of the settlement. ECF No. 92 at 2. It is far more desirable to allow these Class members to obtain relief under the terms of the settlement in this district than to require them to file an additional 5,310 actions in courts across the country. And although Defendants admit that they faced some initial difficulties obtaining motor vehicle records and notifying Class members of the settlement, *see* ECF No. 88, the Court has no reason to doubt that "management difficulties" will prevent Defendants from processing Class members' claims.

Because the Court has found that the proposed class action satisfies the requirements of Rules 23(a) and (b), the Court will certify the Class defined in the parties' settlement agreement.

## II. Class notice was proper

Members of a class certified under Rule 23(b)(3) must be provided with "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 435 (3d Cir. 2016) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that

14

a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The notice provided to N14 Class members met those requirements. It described the proposed settlement, its terms, and the nature of the claim filed on behalf of the Class. *See* 92-4 Ex. A. It also described Class members' right to be excluded from the settlement, to object, and to be heard at the final fairness hearing. *Id.* at 1, 6, 7. The notice also advised Class members of the binding effect the settlement would have on individuals who did not opt out of the Class. *Id.* at 6. Though the hearing was rescheduled from its original date, *see* ECF No. 76, the notice informed Class members that "the date and time of the hearing are likely to change" and directed them to visit the settlement website or call the toll-free number for updated information. *Id.* at 7. Class members were also provided with email notice of the change in hearing date and claim submission deadlines. *See* ECF No. 107-1 ¶ 12.

Notice forms were emailed to 111,893 individuals and delivery failed for 631, for a 94 percent email success rate. ECF No. 107-1 ¶¶ 4-5. Notice forms were also mailed to 185,582 individuals, and 6,581 were returned as undeliverable, for a 96 percent success rate. *Id.* ¶¶ 3-3. The Court finds that the notice met the requirements of Fed. R. Civ. P. 23(c)(2)(B). *See*, e.g., *Weissman*, 2015 WL 3384592, at *4 (Class notice was proper where Defendants mailed notice forms with 86 percent success rate).

CLOSE

### III. The settlement is fair, reasonable, and adequate

#### A.  Legal standard

District courts must review settlement terms in a class action and, "if the proposal would

bind class members, the court may approve it only after a hearing and on finding that it is fair,

reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court "acts as a fiduciary, guarding the

claims and rights of the absent class members." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593

(3d Cir. 2010). The Third Circuit Court of Appeals identified nine factors that bear on this

analysis in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975):

> (1) the complexity and duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining a class action;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement in light of the best recovery; and
>
> (9) the range of reasonableness of the settlement in light of all the attendant risks of

litigation.

*GM Truck Prods.*, 55 F.3d at 785-86 (citing *Girsh*, 521 F.3d at 157).

In addition to the *Girsh* factors, the Third Circuit encourages district courts to consider

additional factors, such as the probable outcome of a trial on the merits, the probable outcome of

claims by other classes, and the reasonability of any provisions for attorneys' fees. *In re*

*Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions ("Prudential")*, 148 F.3d 283, 323 (3d

NOT FOR PUBLICATION                                                    CLOSE

Cir. 1998). The "*Prudential* considerations are just that, prudential." *In re Baby Products*

*Antitrust Litig. ("Baby Products")*, 708 F.3d 163, 174 (3d Cir. 2013). Finally, the Third Circuit

has guided that an important consideration is "the degree of direct benefit provided to the class,"

including "the size of the individual awards compared to claimants' estimated damages." *Id.*

      Though a district court must vigorously protect the interests of absent class members, it

also owes deference to a settlement as the negotiated agreement of private parties. As the Third

Circuit explained, "[s]ettlements are private contracts reflecting negotiated compromises. The

role of a district court is not to determine whether the settlement is the fairest possible resolution

[but only whether] the compromises reflected in the settlement . . . are fair, reasonable and

adequate when considered from the perspective of the class as a whole." *Id.* at 173-74 (citation

omitted).

**B. Analysis**

      The Court finds that the *Girsh* factors and *Prudential* considerations weigh in favor of

approving the settlement.

**1. *Girsh* factor one: Complexity and duration of litigation**

      The first *Girsh* factor considers the complexity and likely duration of litigation without

settlement. *GM Truck Prods.*, 55 F.3d at 785. This factor favors approving a settlement when

resolution of the claims by trial would require "additional discovery, extensive pretrial motions

addressing complex factual and legal questions, and ultimately a complicated, lengthy trial."

*Warfarin Sodium*, 391 F.3d at 536. The action here, which has been pending for over three years,

would require the analysis of records from "hundreds of consumers," expert opinions on

complex mechanical issues, and the resolution of claims under federal law and the laws of

NOT FOR PUBLICATION                                                    CLOSE

several different states. ECF No. 92 at 20-21. The first *Girsh* factor favors final approval of the settlement.

### 2.  *Girsh* factor two: reaction of the Class

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential*, 148 F.3d at 318. Although the Third Circuit has warned that district courts should be "cautious about inferring support from a small number of objectors in a sophisticated settlement," *Warfarin Sodium*, 391 F.3d at 536 (quoting *GM Truck Prods.*, 55 F.3d at 812), courts typically "analyze this factor by counting the number of objectors and weighing the vociferousness of their objections," as well as by counting the number of Class members who submit claims. *Martina v. L.A. Fitness Intern., LLC*, 2013 WL 5567157, at *5 (D.N.J. Oct. 8, 2013) (Walls, J.) (citing *Prudential*, 148 F.3d at 318; *GM Truck Prods.*, 55 F.3d at 812).

Of the 186,031 N14 Class members, 5,310 submitted claims, 123 opted out, and 23 submitted objections.[1] ECF No. 107-1 ¶¶ 13-18. The percentage of Class members who submitted a claim is small, a factor that this Court has previously held may "cancel[ ] out" a low objection rate. *Martina*, 2013 WL 5567157, at *5-6. As Plaintiffs point out, however, the low response rate in this case is perhaps expected: according to Defendants, the defect rate in Class Vehicles is "in the single digits," so the vast majority of Class members did not suffer harm and may have no

---

[1] Plaintiffs reference 20 total objections, excluding the objections of Richard Ellenbogen, ECF No. 78, Timothy Fitzgerald, ECF No. 92-5 Ex. 11, and Donald Mann, ECF No. 104, for lack of standing because the three opted out of the N14 Class; the objection of Shirley M. Stipe-Zendle, ECF No. 102, because objection is actually an erroneously filed claim; and the objection of Marika Hamilton, ECF No. 107-2 Ex. 11 for unknown reasons; and including objections from Gerald Maloney and Sarah H. Beeby that have not been filed on ECF or otherwise provided to the Court. ECF No. 107-1 Ex. B. The Court considers the 23 objections that have been filed with or otherwise provided to the Court.

reason to seek repair or replacement of their timing chains or timing chain tensioners. *Id.* at 21 n.9.

Twenty-three Class members, or approximately 0.01 percent of Class, objected to the settlement. Most of the objectors argue either that (a) the settlement's warranty extension is inadequate because it does not cover their vehicles, or (b) the requirement that Class members provide documentation of their vehicles' service history to receive repair reimbursements is unduly burdensome The Court considers the 23 Class member objections individually:

### a.   Objection of Kunal A. Mirchandani

Class member Kunal A. Mirchandani submitted an objection on February 29, 2016, arguing that the settlement agreement puts an unreasonable burden on Class members to provide documentation of the service histories of their Class Vehicles. ECF No. 75. Mr. Mirchandani claims that the requirement that Class members document their Vehicles' maintenance and repair history to receive reimbursement is unfair to the owners of used vehicles, who may not have the previous owners' service records, as well as to individuals who "may simply have discarded the records." *Id.* at 2-3. Although Mr. Mirchandani acknowledges that Class members may submit an affidavit of service from a mechanic in lieu of other documentation, he argues that mechanics are unlikely to remember servicing vehicles and that requiring Class members to obtain multiple affidavits if multiple mechanics have serviced a Vehicle is unreasonable. *Id.* at 3-4.

The Court agrees with Plaintiffs that the settlement's documentation requirement is not unreasonable. Plaintiffs claim that, even if individual mechanics do not recall servicing individual vehicles, "most, if not all, mechanics have access to a database . . . which would allow them to quickly and easily search the maintenance history of any given car that had service performed at that shop." ECF No. 92 at 22. The claims of 2,064 Class members have already

been approved, demonstrating that the burden is not unduly onerous. ECF No. 107-1 ¶¶ 17-18.

Finally, despite Mr. Mirchandani's claim that "Defendant is in a better position [than Class

members] to research and review service records through its own dealership network," ECF No.

75 at 2, Plaintiffs claim that Defendants are *not* in a better position because they "do not have a

central registry of dealer records or access to them." ECF No. 92 at 22.

### b.   Objection of Jody Williams

Class member Jody Williams filed an objection to the settlement agreement on March 10,

2016, arguing that the warranty extension provided by the settlement is too short and will not

protect her 2007 MINI Cooper S hard top if it begins to "show signs of the timing chain problem

in a year or two." ECF No. 77. Ms. Williams also states that she contacted her local MINI

dealership to have her vehicle inspected, but that the dealership "won't even look at my vehicle

unless it shows symptoms of the timing chain problem." *Id.* at 1.

Plaintiffs do not deny that the warranty on Ms. Williams's vehicle, the very first model

year in the Class, has already expired even under the extended terms of the settlement. ECF No.

92 at 22-23. The Court agrees with Plaintiffs, however, that the Court's job is "not to determine

whether the settlement is the *fairest possible* resolution." *Baby Products*, 708 F.3d at 173

(emphasis added). With regard to the amount of relief offered under the settlement and the Class

members receiving that relief, "lines must be drawn somewhere." ECF No. 92 at 23 (quoting

*Alin v. Honda Motor Co., Ltd.*, 2012 8751045, at *12 (D.N.J. Apr. 13, 2012) (finding that class

settlement with auto manufacturer was reasonable where the "largest category of objections

comes from customers whose cars were too old, or had too many miles to be eligible for

recovery according to the lines drawn in the agreement)).

NOT FOR PUBLICATION                                            CLOSE

Ms. Williams does not convince the Court that the seven-year warranty provided by the settlement, though perhaps not the fairest possible resolution, is unreasonable. The limited warranty extension reflects the reality that cars decline in value over time. *See*, e.g, *In re Dispirito*, 371 B.R. 695, 701 n.6 (Bankr. D.N.J. 2007) ("Whether a vehicle is driven 30,000 miles a year, or only on Sundays by an elderly parent to go back and forth to church, there can be no dispute that a vehicle's value is likely to decrease daily."). A warranty extension need not be indefinite to be reasonable.

In any event, the settlement provides Ms. Williams with other forms of relief: as Plaintiffs point out, the settlement allows Class members to receive reimbursement for repairs and replacements on their timing chains and timing chain tensioners regardless of the age or mileage of the Class Vehicle, along with a graduated reimbursement for engine replacements. ECF No. 92 at 22. According to Plaintiffs, Ms. Williams and other Class members had notice of the alleged defects in their vehicles and were encouraged to seek free inspections and repairs long before the beginning of the claims period: Defendants instructed Class members to seek inspections of their vehicles in October 2013, informing them that any necessary timing chain and tensioner repairs would be done "at no cost" to the Class members, and MINI mechanics were instructed to provide inspections and repairs of the timing chain and timing chain tensioner free of charge. *Id*. at 22-23; *see also* Decl. Raymond P. Boucher in Support P. Mot. Attorneys' Fees, ECF No. 86-6 Ex. 1 (sample letter informing Class member that "your vehicle may have been fitted with a faulty chain tensioner which may lead to an insufficiently tightened timing chain," instructing Class member to "contact your authorized MINI dealer at your earliest convenience to arrange an appointment," and informing Class member that "the repair will be done at no cost to you"). That Ms. Williams's dealership allegedly refused to inspect her vehicle

NOT FOR PUBLICATION                                                     CLOSE

is troubling and may indicate non-compliance with the terms of the settlement agreement, but this does not affect the fairness, reasonability, or adequacy of the settlement itself.

### c.  Objection of Richard I. Ellenbogen

Richard I. Ellenbogen filed an objection on March 11, 2016, arguing that the settlement is unreasonable because the extended warranty does not cover vehicles, like his, that fall outside the time limit but have low mileage and may display defects in the future. ECF No. 78. Mr. Ellenbogen seeks either an extension of the warranty to 75,000 miles without regard to the number of years or a complete recall repair of all Class Vehicles. *Id.* Plaintiffs note that Mr. Ellenbogen submitted a written request for exclusion on June 22, 2016. *See* ECF No. 107-1 Ex. C (opt-out list identifying Mr. Ellenbogen). Because Mr. Ellenbogen has requested exclusion from the N14 Class, he no longer has standing to object to the settlement. *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 110 (D.N.J. 2012) ("The case law does not suggest that a class member requesting exclusion from a settlement may nonetheless object to that settlement.")

### d.  Objection of Jerry D. Phillips

Jerry D. Phillips filed an objection to the settlement on March 11, 2016, arguing that the service record documentation requirement is "particularly onerous" for the same reasons mentioned by Mr. Mirchandani, that MINI should turn over any service records it possesses to Class Members, and that the warranty extension is insufficient for the same reasons mentioned by Ms. Williams and Mr. Ellenbogen. ECF No. 79. For the reasons discussed, none of these arguments renders the settlement unfair, unreasonable, or inadequate.[2]

---

[2] Mr. Phillips also claims that "MINI sold their customers an engine containing parts that were 100% guaranteed to fail; the only thing uncertain was *when* it would fail." ECF No. 79 at 1 (emphasis in original). The Court's fairness analysis might be different if the failure of each Class Vehicle were guaranteed. As discussed, however, Plaintiffs acknowledge that the defect

### e.  Objection of Thomas Brischler

Thomas Brischler filed an objection on March 23, 2016, arguing again that the warranty extension is too short. ECF No. 80. Mr. Brischler acknowledges that, even though his vehicle does not fall under the extended warranty, he is eligible for reimbursement for timing chain and timing chain tensioner repairs or reimbursements, but states that he has not sought repairs because he will not be entitled to reimbursement if this Court rejects the settlement agreement. *Id*. at 1-2. Mr. Brischler seeks a warranty extension and an extension of the claims period after the effective settlement date. *Id*. at 2. Mr. Brischler is correct that the finality of the settlement depends on the Court's approval, but this is not reason for the Court to withhold its approval.

### f.  Objection of Anthony Mazzarella

Anthony Mazzarella filed an objection on April 8, 2016, arguing that his 2007 Base/Standard MINI Cooper, which is not a Class Vehicle, should be included in the N14 Class. ECF No. 81. As Plaintiffs argue, Mr. Mazzarella has no standing to make an objection on the basis of this vehicle because it is not a Class Vehicle. ECF No. 92 at 24.

### g.  Objection of Jenean C. Cordon

Jenean C. Cordon filed an objection on April 12, 2016, arguing that the warranty should be extended to ten years after the in-service date. ECF No. 82. For the reasons discussed, the Court finds that this does not demonstrate the settlement agreement is unreasonable, unfair, or inadequate.

---

rate of the Class Vehicles is merely "in the single digits," so the engines in most Class Vehicles will *not* fail because of the defect at issue. ECF No. 92 at 21.

NOT FOR PUBLICATION                                                                              CLOSE

### h. Objection of Oona Robinson

Oona Robinson filed an objection on April 15, 2015, arguing that the settlement should

"compensate people fully for the financial impact incurred" as a result of the alleged defects.

ECF No. 83. Ms. Robinson seeks a payment of $49,500, representing approximately $4,500 in

repairs for her Class Vehicle over five years of ownership and $45,000 that she spent on a new

car to replace her Class Vehicle. To repeat, Ms. Robinson is entitled, with limitations, to

reimbursement for repairs and replacement of the timing chain, tensioner, and engine. *See* ECF

No. 92. As to Ms. Robinson's request that Defendants be required to compensate Class members

in full for the purchase of "replacement" vehicles, the Court finds that this would be

unreasonable: not only, as Plaintiffs argue, does this argument "not take into account the nature

of a settlement," which generally involves some sort of compromise, ECF No. 92 at 25, but it

would provide a windfall to Class members whose replacement vehicles were more expensive

than their Class Vehicles. This requirement would also ignore that, because vehicles decline in

value with time and mileage, individuals are *always* likely to spend some amount of money when

purchasing a new vehicle to replace an old one, even if the old vehicle is free of defects.

### i. Objection of Gary Kaufman

Gary Kaufman filed an objection on April 11, 2016, arguing that the warranty extension

is inadequate because it does not cover his vehicle. ECF No. 84. It is unclear whether, at the time

he filed the objection, Mr. Kaufman had taken his vehicle in for repairs or whether he had

declined to repair it, believing that he would have to pay for engine repairs himself. *Id.* at 1. In

any event, the Court repeats that Mr. Kaufman, like all Class Members, is eligible for

reimbursement for part repairs and replacements made before the effective date of the settlement.

*See* ECF No. 92 at 25.

24

NOT FOR PUBLICATION                                                    CLOSE

### j.   Objection of LaTonya Curtis

LaTonya Curtis filed an objection on May 16, 2016, arguing that the general terms of the settlement are insufficient. ECF No. 85. Ms. Curtis is the owner of a 2010 MINI Cooper Clubman S, which is not an N14 Class Vehicle. Ms. Curtis lacks standing to challenge the settlement.

### k.   Objection of Timothy Fitzgerald

Timothy Fitzgerald submitted an objection to Defendants on June 3, 2016, arguing, for reasons already discussed, that the warranty extension is not long enough. ECF No. 92-5 Ex. 11. In the event the Court does not extend the warranty, Mr. Fitzgerald requests to be excluded from the N14 Class. *Id.* at 1. The Court grants this request.

### l.   Objection of James. M. Ward

On June 13, 2016, James M. Ward filed an objection to the settlement, arguing that the settlement should include compensation for Class members who sold their Class Vehicles at a loss *after* repairing the engine. ECF No. 97. Mr. Ward seeks compensation for "all or part of the $18,559.43" price at which he bought his Class Vehicle. *Id.* at 1. Again, this objection ignores the reality that even non-defective cars decline in value after their purchase. As discussed, Mr. Ward is also entitled to reimbursement for repairs and replacements made on his Class Vehicle.

### m.   Objection of Jamye C. Brown

On June 20, 2016, Jamye C. Brown filed an objection to the settlement agreement, arguing again that the extended warranty is too short and does not cover her Class Vehicle and that the engine repair provision is unreasonable. ECF No. 96. Ms. Brown states that, in response to MINI's 2013 recall, she brought her vehicle to a "qualified Mini dealership," where the timing chain tensioner was repaired free of charge. *See id.* at 1, 5. Damage to the engine rendered the

NOT FOR PUBLICATION                                                    CLOSE

vehicle unusable, however, and Ms. Brown did not replace the engine because she would be

entitled to reimbursement for only ten percent of the cost. *See id.* at 4, 5 (2009 model, 57,125

miles); ECF No. 92 at 13 (engine repair or replacement schedule).

      Again, the Court agrees with Plaintiffs that the reimbursement schedule and warranty

limitation reflect a need to "draw the line" somewhere and the reality that vehicles decline in

value over time.

### n.  Objection of Gregory Munro

      On June 20, 2016, Gregory Munro filed an objection to the settlement. ECF No. 98. Mr.

Munro, a law professor, argues that (a) the warranty extension is not long enough to provide

relief to owners of old or high mileage Class Vehicles under the Magnuson-Moss Warranty Act,

15 U.S.C. § 2301 *et seq.*, (b) there has been "inadequate discovery into the conduct of

defendants" regarding the alleged defects and defendants' knowledge of the defects, and (c) the

settlement does not include reimbursement for other expenses, including towing charges, travel

expenses, and the cost of substitute vehicles, that might be available as "consequential damages"

in a tort action. *Id.* at 1. Mr. Munro also argues that the settlement agreement "does not address"

an allegedly defective oil system in the Class Vehicles "that may have been a substantial factor

in the timing chain failures." *Id.* at 4-5.

      Mr. Munro is correct that the owners of Class Vehicles who repaired or replaced failed

engines or who sold their vehicles at a loss when the vehicles had certain combinations of

mileage and age, *see* ECF No. 92 at 13, 14, are not entitled to compensation for the engine

repairs or sales under the terms of the settlement. ECF No. 98 at 2, 4. Mr. Munro claims this is

unreasonable because the Magnuson-Moss Warranty Act "does not place mileage restrictions on

the remedies for damages," so the settlement does not provide owners of high-mileage or older

vehicles with the maximum award that they could collect under the statute. *Id.* at 2. Mr. Munro also argues that the settlement does not allow Class members to collect the "myriad consequential damages," such as towing and travel charges, that are sometimes available as tort remedies. *Id.* at 1. The Court repeats, however, that settlements need not provide maximum relief to be reasonable and fair. "Settlements are private contracts reflecting negotiated compromises," including the elimination of risk for both parties associated with litigation, and they need not be the "fairest possible resolution." *Baby Products*, 708 F.3d at 173. As the Court will explain, the eighth and ninth *Girsh* factors require the Court to weigh the "range of reasonableness of the settlement in light of the best recovery," against the "the range of reasonableness of the settlement in light of all the attendant risks of litigation." *GM Truck Prods.*, 55 F.3d at 785. The Court analyzes the fairness of the settlement in light of these factors, not simply by looking at the "best recovery" alone.

Mr. Munro also suggests that the settlement is unreasonable because the Parties did not engage in sufficient factual discovery. ECF No. 98 at 4. Mr. Munro claims that he submitted information about his vehicle to Class Counsel and was told that counsel would be "unable to provide any assistance." *Id.* As a result, he is "dubious about whether enough outreach" was performed "to allow any kind of a statistical analysis of the extent of the problem to advise the settlement." *Id.* The Court will not question the veracity of Plaintiffs' claim that "Plaintiffs' Counsel not only had the benefit of the input and service records from their approximately two dozen clients but also communicated with hundreds of consumers . . . who had experienced the defect." ECF No. 69-3 ¶ 11. In any event, even if Class Counsel did not select Mr. Munro as a Named Plaintiff, Class Counsel *did* communicate with Mr. Munro and did receive information from him about his vehicle.

Mr. Munro also speculates that because "defendants made no responses to the discovery propounded to them and no depositions were taken," Plaintiffs had little factual basis for their settlement. ECF No. 98 at 4. As the Court will discuss in its analysis of *Girsh* factor three, however, other courts have found this amount of discovery adequate to support a settlement agreement.

Finally, Mr. Munro objects to the settlement because it does not require Defendants to disclose that the Class Vehicles featured an allegedly defective oil system, including dip sticks that are "difficult if not impossible to read." ECF No. 98 at 4. Mr. Munro claims this oil system "may have been a substantial factor in the timing chain failures." *Id.* This allegation seems to stem entirely from Mr. Munro's own experience seeking service for his own vehicle. *Id.* at 3-4. Plaintiffs' second amended complaint does not allege that the oil systems in any of the Class Vehicles were defective, and Plaintiffs deny receiving any notice of allegedly defective oil systems from the mechanic they retained as an expert in this cast. ECF No. 53; ECF No. 107 at 6. The Court will not require Defendants to make admissions about subjects that are not at issue in the case.

### o. Objection of John Nemelka

John Nemelka filed an objection to the settlement date June 15, 2016, objecting to the caps on reimbursements for Class members whose timing chain or timing chain tensioners were repaired at independent service centers. ECF No. 100. Mr. Nemelka states that, in December 2015, he had his Class Vehicle repaired at an independent service center, rather than at his local BMW dealership, to "save money." *Id.* at 1. The repair cost $1,778.45. *Id.* Mr. Nemelka correctly states that, had the repair been done at the BMW dealership, he would be entitled to a

28

NOT FOR PUBLICATION                                                    CLOSE

full reimbursement under the settlement terms. Because the repair was conducted by a third

party, he is entitled to only $970.

To repeat, Defendants informed Class members of the alleged timing chain and tensioner

defect in October 2014 and instructed them to seek repairs, free of charge (and subject to a full

reimbursement), at authorized MINI service centers. *See* ECF No. 86-6 Ex. 1. Plaintiffs explain

that Defendants required a cap on reimbursements for repairs from third-party service centers

because they have no control over the prices charged at third-party centers. Particularly in light

of the early disclosure about repairs at authorized MINI service centers, the Court finds that the

cap on reimbursements for repairs at independent service centers is not unreasonable.

### p. Objection of James Jones

James Jones submitted an objection, dated June 19, 2016, that was filed in this Court on

June 29, 2016. ECF No. 101. Mr. Jones objects to the settlement on three grounds: first, that the

settlement does not provide relief for owners of Class Vehicles that have not yet displayed any

defects; second, that the documentation requirement for reimbursement is unduly burdensome,

especially for the owners of used Class Vehicles; and third, that the final approval hearing should

not be held until the deadline to submit objections has expired.

The Court disagrees with Mr. Jones's first and second objections for the reasons already

discussed; the settlement allows Class members to receive repairs and replacements of allegedly

defective parts even if their vehicles have not displayed damage, and Class members are in a

better position than Defendants to document their vehicles' histories. With regard to the third

objection, the fairness hearing was held on July 14, 2016, after the July 1, 2016 deadline for N14

Class members to submit objections under the Court's supplemental notice program. *See* ECF

No. 89.

### q. Objection of Shirley M. Stipe-Zendle

Docket number 102, filed as an objection to the settlement on June 29, 2016, appears instead to be a claim for reimbursement for timing chain tensioner/timing chain repair or replacement submitted by Class member Shirley M. Stipe-Zendle. ECF No. 102. The document contains no objection to the settlement. Plaintiffs state that they have provided the document to the Claims Administrator for processing as a claim. ECF No. 107 at 7.

### r. Objection of Julie A. Clifford

Julie Ann Clifford submitted an objection to the settlement that was filed on June 29, 2016. ECF No. 103. Ms. Clifford objects to the settlement on three grounds: (a) the documentation requirement for engine repair reimbursement unreasonably requires the servicing mechanic to acknowledge that the problems were caused by a defective timing chain, something that MINI has "every incentive not to confess," *id.* at 1; (b) the total reimbursement amounts are unreasonably low; and (c) the claims period is unreasonably short.

Although it is true that Defendants could theoretically avoid having to reimburse any Class members for repairs made at MINI servicing centers by instructing mechanics not to attribute engine failure to timing chain or tensioner defects, Defendants' voluntary October 2014 acknowledgment that Class vehicles "may" have these defects suggests that this is unlikely. *See* ECF No. 86-6 Ex. 1. In any event, Class members whose claims are denied by the Settlement Administrator for lack of documentation may appeal the decision to a Special Master, giving them some recourse for unreasonable denials. ECF No. 92 at 16; ECF No. 69-3 Ex. 1 ¶ III.E.3.

For reasons discussed, the Court finds that the reimbursement amounts included in the settlement are not unreasonably low. In any event, Ms. Clifford states that her total cost of repairs to date is actually lower than the amount she is entitled to be reimbursed. ECF No. 103 at

2. Though she will not be reimbursed for incidental expenses, Ms. Clifford may receive a full reimbursement for the repairs and replacements she has paid for.

The Court disagrees that the claims period is unreasonably short. Under 28 U.S.C. § 1715(d), the Court may grant final approval of a proposed settlement as early as 90 days after notice is given to the appropriate federal official and state officials of each state in which class members reside. 28 U.S.C. § 1715(d). Although Plaintiffs initially requested a claims period of 90 days, *see* ECF No. 69-2 ¶ 8, the Court extended this period to 120 days following the Court's preliminary approval of the settlement. *See* ECF No. 72 at 1-2.

### s.   Objection of Donald Mann

Donald Mann submitted a notice that was filed with this Court on June 29, 2016. ECF No. 104. Mr. Mann incorrectly appears to assume that the settlement "offers a reimbursement of $850 less a reduction for age and mileage" for timing chain repairs conducted at an authorized MINI service center and objects that the retail cost of a timing chain tensioner is less than the amount quoted to him by the service center to examine his Class Vehicle. *Id.* at 1. In any event, Mr. Mann states his intent to be excluded from the N14 Class for purposes of this settlement, so he has no standing to object to the settlement. *Id.*

### t.   Objection of Robin Mackey

Robin Mackey submitted an objection, dated July 1, 2016, that was filed in this Court on July 5, 2016. ECF No. 106. Mr. Mackey objects to the settlement's service history documentation requirement; arguing specifically that documentation of routine oil changes is irrelevant to the claims at issue. *Id.* The Court agrees with Plaintiffs and Defendants that documentation of the routine maintenance of Class Vehicles is relevant to claims of defects and

damage in those vehicles, *see* ECF No. 107 at 7-8, and repeats that this documentation requirement is not unduly burdensome.

### u.  Objection of Kimberly Winkler

Kimberly Winkler submitted an objection, dated June 28, 2016, that was filed in this Court on July 5, 2016. ECF No. 106-1. Mr. Winkler describes a litany of problems with his Class Vehicle, including timing chain malfunctions, and seeks an extension of his warranty and reimbursement for out-of-pocket expenses and other costs. *Id.* at 2. Mr. Winkler does not object to anything specific about the terms of the settlement, and Plaintiffs point out that because his extended warranty does not expire until 2017, Mr. Winkler is already entitled to reimbursement for all past repairs. ECF No. 107 at 8.

### v.  Objection of Marika Hamilton

Marika Hamilton mailed an objection to counsel for Defendants on March 14, 2016. ECF No. 107-2 Ex. 11. Ms. Hamilton alleges damage to her Class Vehicle's timing chain tensioner – a repair or replacement for which she is entitled to full reimbursement under the settlement – but does not otherwise object to the settlement.

### w.  Objection of Susan Von Struensee

Susan Von Struensee submitted an objection to counsel for Defendants on June 22, 2016. ECF No. 107-2 Ex. 12. Ms. Von Struensee objects to the settlement on the grounds that (a) she did not receive notice of the settlement and (b) Class members are unreasonably required to submit documentation that they changed the oil in their Class Vehicles at least once every 2,000 miles, even though dealers only advise owners to seek oil changes every 15,000 or 10,000 miles. *Id.* at 1. With regard to the first objection, the Court repeats that CAA provided notice by mail to over 96% of Class members and by email to over 94%. 107-1 ¶¶ 4, 7. Plaintiffs explain that they

NOT FOR PUBLICATION                                                    CLOSE

discussed Ms. Struensee's second objection with her by phone and clarified that Class members

seeking reimbursement are not required to submit documentation of oil changes every 2,000

miles. ECF No. 107 at 8; *see also* ECF No. 69-3 Ex. 1 Ex. B at 5 (Claim form, explaining that

Class members must provide evidence of "regular oil changes (within 2,000 miles of

recommended schedule)").

 The 23 objectors make arguments that raise several legitimate *Girsh* factor

considerations. Ultimately, however, because of the relatively small number of objections and

exclusions compared with the total number of Class members, the reaction of the N14 Class to

the settlement supports a finding of fairness.

   **3. *Girsh* factor three: State of proceedings and amount of discovery completed**

 The third *Girsh* factor "captures the degree of case development that class counsel had

accomplished prior to the settlement," so that the Court may "determine whether counsel had an

adequate appreciation of the merits of the case before negotiating." *Warfarin Sodium*, 391 F.3d

at 537.

 Here, according to Plaintiffs, the Parties reached their settlement after (a) the Court ruled

on a motion to dismiss the first amended complaint, *see* ECF No. 39; (b) Plaintiffs filed a second

amended complaint, ECF No. 53; (c) the Parties exchanged initial disclosures and discovery

requests; and (d) the Parties engaged in a full-day mediation with the Honorable Theodore Katz

(Ret.) and a settlement conference with Magistrate Judge Cathy L. Waldor. ECF No. 92 at 26.

The Court finds that all Parties have an "adequate appreciation of the merits of the case," so this

factors weighs in favor of settlement. *See Martina*, 2013 WL 5567157, at *6 (finding adequate

appreciation of merits when parties "exchanged initial disclosures and arrived at the Settlement

after negotiation before a retired federal judge.").

NOT FOR PUBLICATION                                                    CLOSE

### 4.   *Girsh* factors four and five: the risks of establishing liability and damages

The fourth and fifth *Girsh* factors require the Court to balance the Parties' relative

likelihood of success in establishing liability and damages against the immediate benefits derived

from a settlement. *See Prudential*, 148 F.3d at 319. The Court weighs these factors against the

best and worst possible outcomes for Plaintiffs. *In re Cendant Corp. Litig.*, 264 F.3d 201, 237-39

(3d Cir. 2001).

Although Plaintiffs survived an initial motion to dismiss, *see* ECF No. 39, the Court has

not yet ruled on the substantive issues underlying the litigation – namely, whether Defendants

caused defective timing chain tensioners to be installed in the Class Vehicles and whether they

are liable for damages. The Court lacks the factual record necessary to determine Plaintiffs'

likelihood of success on the merits, but Plaintiffs claim that "all parties," including Defendants,

"remain confident of their chance at prevailing at trial." ECF No. 92 at 26-27.

Plaintiffs state that their best possible outcome would likely involve "years of litigation,"

including an appeal to the Third Circuit after Plaintiffs received a favorable decision in this

Court. *Id*. at 27. This would require "a very substantial expenditure in attorneys' fees and costs

by both parties," but would likely "not result in an increased benefit to the Class." *Id*. Though it

is difficult to accurately estimate Plaintiffs' likelihood of success in establishing either liability

or damages, the Court finds that the fourth and fifth *Girsh* factors weigh in favor of approving

the settlement.

### 5.   *Girsh* factor six: the risks of maintaining a class action

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class

certification if the action were to proceed to trial. A district court retains the authority to

decertify or modify a class at any time during the litigation if it proves to be unmanageable."

*Warfarin Sodium*, 391 F.3d at 537 (citing *Prudential*, 148 F.3d at 321). Because of this, the

"specter of decertification makes settlement an appealing alternative." *O'Brien v. Brain*

*Research Labs, LLC*, 2012 WL 3242365, at *18 (D.N.J. Aug. 9, 2012).

Plaintiffs maintain – and the Court agrees, at this point – that this action could be

properly maintained as a class action. ECF No. 92 at 27. Although Plaintiffs speculate that there

are "myriad risks of maintaining class action status," including potential arguments Defendants

may raise involving individualized issues, *id.* at 28, the Court is not convinced that this factor

weighs in favor of approving the settlement.

### 6.  *Girsh* factor seven: the ability of Defendants to withstand a greater judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment

for an amount significantly greater than the [s]ettlement." *In re Cendant*, 264 F.3d at 240. Still,

the fact that a defendant "could afford to pay more does not mean that it is obligated to pay any

more than what . . . class members are entitled to under the theories of liability that existed at the

time the settlement was reached." *Warfarin Sodium*, 391 F.3d. at 538. Here, as Plaintiffs state,

"Defendants operate a successful, well-known, multi-national automobile business." ECF No.

28. Even if all 5,310 Class members who submitted claims were entitled to the maximum claim

amounts for each type of repair, replacement, or sale, the total amount of the settlement would

likely be insignificant when compared with Defendants' total revenues. This factor does not

favor approval of the settlement.

### 7.  *Girsh* factors eight and nine: the reasonableness of the settlement in light of the best recovery and all the attendant risks of litigation

The final two *Girsh* factors "test two sides of the same coin: reasonableness in light of the

best possible recovery and reasonableness in light of the risks the parties would face if the case

went to trial." *Warfarin Sodium*, 391 F.3d at 538 (citing *Prudential*, 148 F.3d at 322). The Court

determines "whether the settlement represents a good value for a weak case or a poor value for a

strong case." *Id*. In cases where plaintiffs seek primarily monetary relief, "the present value of

the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of

not prevailing, should be compared with the amount of the proposed settlement." *Id*. (quoting

*Prudential*, 148 F.3d at 322).

     In the second amended complaint, Plaintiffs seek, among other things, (a) an order

requiring Defendants to notify Class members of the alleged timing chain tensioner defect and to

repair the defect or reimburse Class members for the repairs; (b) an injunction requiring

Defendants to stop refusing to repair the defect, at no charge; (c) an award to Plaintiffs and Class

members of compensatory, exemplary, and/or statutory damages; and (d) an award of restitution.

ECF No. 53 ¶ 338.

     Although the settlement does not provide Class members with damages, it does provide

Class members with much of the relief they seek: (a) notice of the alleged defect, provided at the

expense of Defendants; (b) free repairs or full reimbursement for repairs of the timing chain and

timing chain tensioner; (c) full or partial payment for engine repairs for some, but not all, Class

Vehicles, as determined by vehicle mileage and age; (d) a warranty extension that provides an

extended period of coverage for some, but not all, Class Vehicles, as determined by vehicle

mileage and age; and (e) full or partial reimbursement for some, but not all, Class members who

sold their un-repaired Class Vehicles at a loss, as determined by vehicle mileage and age. *See*

ECF No. 69-3 Ex. A at 3-4.

     As the Court has discussed, several Class members object that the settlement provides

fewer benefits to the owners of high-mileage or older Class Vehicles than to the owners of new,

low-mileage vehicles. *See*, e.g., ECF Nos. 77-80, 82, 84, 92-5 Ex. 11, 96, 98. This is true, but the Court repeats that the line must be drawn somewhere. Because the value of vehicles decreases with age and mileage, *see Dispirito*, 371 B.R. at 701 n.6, the Court finds that the settlement is reasonable in light of Plaintiffs' original requests for relief and the not insubstantial chance that Plaintiffs would not prevail on all of their claims at trial. *Girsh* factors eight and nine weigh in favor of granting final approval to the settlement.

### 8. *Prudential* considerations

The *Prudential* considerations – the probable outcome of a trial on the merits, the probable outcome of claims by other classes, and the reasonability of any provisions for attorneys' fees – also weigh in favor of approving the settlement. 148 F.3d at 323. As discussed, the Court cannot estimate the probable outcome of a trial on the merits for the N14 Class or for the owners of N12 vehicles because it has not yet ruled on any dispositive issues, but both Parties represent that they "remain confident of their chance at prevailing at trial." ECF No. 92 at 26-27. As the Court will discuss, the attorneys' fees sought by Plaintiffs are reasonable. Most relevant for the *Prudential* consideration, Plaintiffs represent that the settlement is not limited by a fixed amount – the total amount Defendants pay will be determined by the claims submitted by Class members – and the fees and expenses awarded to Class Counsel, along with the incentive awards granted to the Named Plaintiffs, will not reduce the amount available for Class members. ECF No. 92 at 29.

The Court finds that the *Prudential* factors weigh in favor of approval of the settlement.

### 9. *Baby Prods.*: the degree of direct benefit provided to the class

The Court also considers the "degree of direct benefit provided to the class," including the "number of individual awards compared to both the number of claims and the estimated

number of class members, the size of the individual awards compared to claimants' estimated

damages, and the claims process used to determine individual awards." *Baby Prods.*, 708 F.3d at

174.

      The Court repeats that 5,310 of 186,031 Class members have submitted claims. Though

this is a relatively small percentage, but Plaintiffs and Defendants estimate that fewer than ten

percent of Class Vehicles have actually exhibited the alleged defects, potentially explaining why

many Class members did not submit claims. ECF No. 92 at 21. Of the 5,310 Class members who

have submitted claims, all who submit sufficient documentation and are eligible for awards

should receive rewards; the total amount paid by Defendants to Class members is not limited by

a fixed fund amount, nor will the attorneys' fees and costs or awards granted to the Named

Plaintiffs reduce the amount available to Class Members. ECF No. 92 at 29-30. This analysis

favors approval of the settlement.

      After considering all of the factors, the Court finds the proposed settlement fair,

reasonable, and accurate.

## IV.   Attorneys' fees

      In the settlement, Plaintiffs agree not to seek an award of attorneys' fees and expenses in

an amount greater than $2,320,000, and Defendants agree not to object to an award of up to

$1,820,000. ECF No 69-3 Ex. 1 ¶ VIII.B. The settlement also provides that Defendants will not

oppose service awards of $4,000 each to the Named Plaintiffs serving as N14 Class

Representatives. *Id.* VIII.C.

      Plaintiffs now seek service awards for eighteen Named Plaintiffs and $2,320,000 in

attorneys' fees and expenses. ECF No. 86. Defendants do not oppose the service awards but

argue that the Court should award Plaintiffs only $1,820,000 in attorneys' fees and expenses. ECF No. 90. The Court now determines whether Plaintiffs' request is reasonable.

### A. Legal standard

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). A "thorough judicial review of fee applications is required in all class action settlements." *GM Truck Prods.*, 55 F.3d at 819. "Determining an appropriate award is not an exact science," and the "facts of each individual case drive the amount of any award." *In re AremisSoft Corp. Sec. Litig. ("AremisSoft")*, 210 F.R.D. 109, 128 (D.N.J. 2002).

The Third Circuit has established two methods for evaluating an award of attorneys' fees: the percentage-of-recovery method, which involves giving attorneys a portion of the total damages awarded to plaintiffs, and the lodestar method, which involves multiplying the number of hours reasonably worked on a case by the reasonable billing rate for the services. *Prudential*, 148 F.3d at 333; *In re Ins. Brokerage Antitrust Litig. ("Ins. Brokerage")*, 579 F.3d 241, 280 (3d Cir. 2009) (citing *In re Rite Aid Corp. Sec. Litig. ("Rite Aid")*, 396 F.3d 294, 302 (3d Cir. 2005)). The percentage-of-recovery method is generally favored in cases involving a common fund, while the lodestar method "is more commonly applied in statutory fee-shifting cases." *Prudential*, 148 F.3d at 333. The lodestar method may also be applied "in cases where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method." *Id.* (citing *GM Truck Prods.*, 55 F.3d at 821). The court should perform a "cross-check" by comparing the fee award calculated under the chosen method with the award calculated under the alternative method. *Ins. Brokerage*, 579 F.3d at 280 (citing *Rite Aid*, 396 F.3d at 300).

NOT FOR PUBLICATION                                                      CLOSE

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "In a statutory fee case, the parting opposing the fee award then has the burden to challenge . . . the reasonableness of the requested fee." *Id.* (citing *Bell v. United Princeton Props., Inc.*, 884 F.2d 713 (3d Cir. 1989)).

### B. Analysis

#### 1. The Court applies the lodestar method of fee calculation

The Court agrees with all Parties that the lodestar method is the proper method of fee calculation for this matter. *See* ECF No. 86 at 17; ECF No. 90 at 1. Plaintiffs bring a cause of action on behalf of the entire N14 Class under the Magnuson-Moss Warranty Act, which provides for statutory fee-shifting. ECF No. 86 at 17 (citing 15 U.S.C. § 2301(d)(2) (allowing consumers to recover "a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have reasonably incurred by the plaintiff . . . ."). The lodestar method is also appropriate because the settlement award to N14 Class members also does not consist of a single, predetermined, common fund from which a percentage-of-recovery can be easily calculated. Instead, the settlement includes a "non-monetary" provision – the warranty extension – along with monetary awards that will not be calculated in the aggregate until all claim submission periods have ended and Defendants have processed the claims. ECF No. 86 at 18.

NOT FOR PUBLICATION                                                      CLOSE

    **2.  The lodestar calculation supports an award of between $1,917,673.40 and**

        **$2,320,000 in fees and expenses**

       Plaintiffs seek attorneys' fees and expenses in the total amount of $2,320,000, which is

31.5 percent less than their lodestar calculation of $3,387,328.75. ECF No. 86 at 22.[3] Defendants

do not argue that Class Counsel is entitled to less than the lodestar amount, but instead argue that

Plaintiffs' $3,387,328.75 lodestar calculation is itself incorrect, based on unreasonably high

billing rates and insufficient documentation of the hours reportedly billed by Class Counsel. ECF

No. 90 at 1.

       The Court calculates the lodestar amount by multiplying the number of hours "reasonably

worked" on a client's case by a "reasonable hourly billing rate for such services based on the

given geographical area, the nature of the services provided, and the experience of the

attorneys." *Ins. Brokerage*, 579 F.3d at 280 (quoting *Rite Aid*, 396 F.3d at 302). "To examine the

lodestar factor properly, a Court should make explicit findings about how much time counsel

reasonably devoted to a given matter, and what a reasonable hourly fee would be for such

services." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199-200 (3d Cir. 2000) (citations

omitted).

       With regard to the hours worked by class counsel, the court may exclude from its

calculation hours that are "not reasonably expended," such as hours attributable to over-staffing,

---

[3] In their reply brief in further support of their motion for attorneys' fees, Plaintiffs submit that
this sum has increased by an additional $113,606. ECF No. 105 at 1, 1 n.1 (citing *Norton v.
Wilshire Credit Corp.*, 36 F. Supp. 2d 216, 219 (D.N.J. 1999) ("Prevailing parties may also
collect reasonable attorney's fees for time spent preparing the fee petition.") (citing
*Institutionalized Juveniles v. Secretary of Pub. Welfare*, 758 F.2d 897, 924-25 (3d Cir. 1985)).
Because Defendants address the hours and billing rates reported in Plaintiffs' original motion,
and because this calculation adequately supports the award Plaintiffs seek, the Court performs its
analysis using the hours and billing rates reported in the original motion.

hours that appear excessive in light of the experience and skill of the lawyers, and hours that are redundant or otherwise unnecessary, as well as hours that are not "adequately documented." *Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 216, 219 (D.N.J. 1999) (Walls, J.) (citing *Hensley* at 433-34). Although a "fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates," *Rode*, 892 F.2d at 1190 (quoting *Lindy Bros. Builders, Inc. of Phila. v. American Radiatory & Standard Sanatory Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)), "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.*

To determine whether an attorney's billing rate is reasonable, a court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citations omitted).

Local Civil Rule 54.2, which governs attorneys' fee applications in "all actions in which a counsel fee is allowed by the Court or permitted by statute," requires counsel to submit affidavits or other documents along with their motion for attorneys' fees that set forth:

> (1) the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered;
> (2) a record of the dates of services rendered;
> (3) a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;
> (4) the time spent in the rendering of each of such services; and
> (5) the normal billing rate of said persons for the type of work performed.

NOT FOR PUBLICATION                                                        CLOSE

L.Civ. R. 54.2(a). Local Civil Rule 54.2(c) permits district courts to order that plaintiffs need not provide one or more of the items in L. Civ. R. 54.2(a) in order to receive attorneys' fees.

"After arriving at this lodestar figure, the district court may, in certain circumstances, adjust the award upward or downward to reflect the particular circumstances of a given case." *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 146 (D.N.J. 2004). "All of these calculations should be reduced to writing." *Id.* Courts frequently apply a "lodestar multiplier," which "attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work" by increasing the attorneys' fee awarded beyond the lodestar amount. *Ins. Brokerage*, 579 F.3d at 280 (quoting *Rite Aid*, 396 F.3d at 305-06). This multiplier "need not fall within any pre-defined range, provided that the District Court's analysis justifies the reward." *Id.* (quoting *Rite Aid*, 396 F.3d at 307).

### a. Class Counsel billable hour and rate submissions

Plaintiffs calculate a lodestar amount of $3,387,328.75 for 5,100.75 hours of time expended by attorneys and paralegals at nine Class Counsel law firms. ECF No. 86-6 ¶ 29. In support of this calculation, Plaintiffs submit signed declarations from supervising attorneys at each of the nine Class Counsel firms detailing (a) the billing rates for partners, associates, and paralegals at the firm; (b) the total hours billed by each individual; (c) the relevant experience of the firm and the billing attorneys; (d) a breakdown of the billable hours by each partner, associate, and paralegal into eleven general categories of work, and (e) a breakdown of expenses.[4] *See* ECF No. 86-6; Decl. Bryan L. Clobes in Support. P. Mot. Attorneys' Fees, ECF

---

[4] The firms break down their work into: (1) "Analysis/Strategy/Attorney Meetings," (2) "Case Management," (3) "Court Appearance," (4) "Discovery," (5) "Document Review," (6) "Experts – Work or Consult," (7) "Client Meeting," (8) "Research," (9) "Fact Investigation/Development," (10) "Pleadings/Motions," and (11) "Settlement." *See*, e.g., ECF No. 86-2 Ex. 1.

No. 86-2; Decl. David S. Markun in Support. P. Mot. Attorneys' Fees, ECF No. 86-3; Decl.

Jeffery A. Koncius in Support. P. Mot. Attorneys' Fees, ECF No. 86-4; Decl. John A. Yanchunis

in Support. P. Mot. Attorneys' Fees, ECF No. 86-5; Decl. Tina Wolfson in Support. P. Mot.

Attorneys' Fees, ECF No. 86-7; Decl. William J. Pinilis in Support. P. Mot. Attorneys' Fees,

ECF No. 86-8.

Cafferty Clobes Meriwether & Sprengel LLP reports a total of 509.6 billable hours from

eight attorneys and two paralegals with billing rates between $240 and $750 per hour, for a total

lodestar amount of $335,975.00. ECF No. 86-2 ¶ 7 (listing billing rates and hours billed of

individual attorneys and paralegals). The firm also reports litigation expenses of $9,626.66. *Id*. ¶

11. Markun Zusman Freniere & Compton, LLP reports a total of 976.50 billable hours from eight

attorneys and one paralegal with billing rates between $250 and $650 per hour, for a total

lodestar amount of $574,325.00. ECF No. 86-3 ¶ 7. The firm also reports litigation expenses of

$47,192.00. *Id*. ¶ 11. Kiesel Law LLP reports a total of 1,572.1 billable hours from ten attorneys

and six paralegals with billing rates between $150 and $1,100 per hour, for a total lodestar

amount of $756,859.50. ECF No. 86-4 ¶ 7. The firm also reports litigation expenses of

$30,568.95. *Id*. ¶ 11. Morgan & Morgan, PA reports a total of 38.3 billable hours from one

attorney with a billing rate of $900 per hour and 84.2 billable hours from one paralegal with a

billing rate of $150 per hour, for a total lodestar amount of $47,100.000. ECF No. 86-5 ¶ 17. The

firm also reports litigation expenses of $1,455.56. *Id*. Raymond Boucher, currently of the Law

Office of Raymond Boucher, APC and Boucher, LLP, and formerly of Khorrami Boucher

Sumner, LLP and Khorrami Boucher, LLP, reports (a) a total of 952.9 billable hours from one

attorney at the Law Office of Raymond Boucher, APC at billing rates between $925 and $1,100

per hour, for a total lodestar amount of $1,039,947.50, ECF No. 86-6 ¶ 36, along with expenses

of $7,100.12, *id.* ¶ 37; (b) a total of 147.8 billable hours from four attorneys, one law clerk, and

one paralegal at Boucher, LLP at billing rates between $185 and $750 per hour, for a total

lodestar amount of $92,792.50, *id.* ¶ 40, along with expenses of $16,601.82, *id.* ¶ 41; and (c) a

total of 269.2 billable hours from eight attorneys and one law clerk at Khorrami Boucher

Sumner, LLP and/or Khorrami Boucher, LLP at billing rates between $185 and $625 per hour,

for a total lodestar amount of $139,078.25, *id.* ¶ 44, along with expenses of $17,003.15. *Id.* ¶ 45.[5]

Ahdoot & Wolfson, PC reports a total of 349.2 billable hours from seven attorneys at billing

rates between $415 and $810 per hour, for a total lodestar amount of $235,408.50. ECF No. 86-7

¶ 7. The firm also reports litigation expenses of $3,303.86. *Id.* ¶ 11. PinilisHalpern, LLP reports a

total of 193.90 billable hours from one attorney at a billing rate of $625 per hour, for a lodestar

amount of $121,187.50. ECF No. 86-8 ¶ 7. The firm also reports litigation expenses of $516.27.

*Id.* ¶ 11. The attorneys represent that Boucher, LLP, lead Class Counsel, reviewed time records

from the other Class Counsel firms "for accuracy and removal or time that, although incurred,

the lawyers determined in their discretion should not be included in this fee application." ECF

No. 86-2 ¶ 6.

### b.  The Knapton Declaration

Plaintiffs also submit a declaration from Gerald G. Knapton of the law firm Ropers,

Majeski, Kohn & Bentley. Decl. Gerald G. Knapton in Support. P. Mot. Attorneys' Fees, ECF

No. 86-9. Mr. Knapton declares that he is an expert on "the reasonableness and necessity of

attorneys' fees," *id.* ¶ 2, states that he interviewed Class Counsel attorneys and reviewed their

---

[55] Due to a default judgment and court-appointed receivership in New York State Supreme Court against Khorrami Boucher Sumner Sanguinetti, LLP and/or Khorrami Boucher, LLP, Mr. Boucher seeks an award of only 68% of the lodestar amount for work performed by those firms. ECF No. 86-6 ¶ 46.

timekeeping records, *id.* ¶¶ 12, 16-23, and offers his expert opinion that both the combined Class

Counsel lodestar calculation of $3,387,328.75, and the combined Class Counsel expense

calculation of $133,358.39 are reasonable. *Id.* ¶ 11. Mr. Knapton claims that the total time of

5,100 hours "is similar to the range of hours [he has] seen in other class actions that are resolved

without trial." *Id.* ¶ 17. Mr. Knapton notes that the average billing rate for the Class Counsel

attorneys and paralegals is $664.15 per hour, which he states "appears to be in the range of what

New Jersey Courts have found to be reasonable in other class action matters." *Id.* ¶ 28 (citing

cases). Mr. Knapton also observes that Class Counsel's requested billing rates have been

approved in the Northern and Central District of California, the Southern District of Florida, and

California state courts. *Id.* ¶¶ 31-37.

Finally, Mr. Knapton compares the requested billing rates of Class Counsel attorneys

with the "2015 Real Rate Report Snapshot" rates of the third quartile[6] of attorneys in similar

positions at their firms (i.e., partner or associate), with similar levels of experience, in the same

metropolitan areas.[7] *Id.* ¶¶ 43-49. Mr. Knapton also opines that class action lawyers who bill on a

contingency basis are typically "awarded rates by courts at about 1.2 to 1.3 times the current,

prevailing non-contingent rates because of the risk of contingency."[8] *Id.* ¶ 39.

_____

[6] The third quartile is the quartile between the median billing rate and the highest 25 percent of
billing rates. ECF No. 86-9 ¶ 44.
[7] According to Mr. Knapton, the 2015 Real Rate Report Snapshot was created by
TyMetrix/LegalVIEW by compiling anonymized data on over $9.8 billion in legal fees billed
and paid between 2012 and 2014 and was published by the Wolters Kluwer Company. ECF No.
86-9 ¶ 43.
[8] Although Mr. Knapton builds this contingency multiplier into his lodestar calculation, *see* ECF
No. 86-9 ¶ 50, the "contingent nature or risk involved in a particular case" is a factor for the
Court to consider in assessing the reasonableness of a multiplier *after* calculating the lodestar
amount. *Ins. Brokerage*, 579 F.3d at 280.

Mr. Knapton reports that, of the 47 attorneys reporting billable hours in this matter, a total of 17 request billing rates higher than the relevant third-quartile 2015 Real Report Snapshot rates. *See id.* ¶ 48. Of the 17 billing at high rates, all but John Yanchunis of Morgan & Morgan ($900 per hour), Daniel Herrera of Cafferty Clobes Meriwether & Sprengel LLP ($600 per hour), and Kelly Tucker of Cafferty Clobes Meriwether & Sprengel LLP ($550 per hour) request billing rates lower than 1.3 times the relevant third-quartile 2015 Real Report Snapshot rates. *See id.*

Mr. Knapton gives his expert opinion that the "total reasonable & necessary lodestar is $3,387,328.75 based on 5,100.3 hours of time as reasonable and justified hourly rates," with a "reasonably expended and explained" number of hours that are "similar to what I have seen for other class action matters that settle before trial" and reported work that was "useful and of a type of ordinarily necessary to secure the final result obtained from the litigation." *Id.* ¶ 50.

### c.  The number of hours submitted by Plaintiffs is reasonable

The Court finds that Plaintiffs' submission of 5,100.75 billable hours is reasonable for a three year-old consumer class action involving claims under federal law and the laws of twelve separate states, though it accepts the number with hesitation. Plaintiffs' submissions meet the *Rode* standard, providing "fairly definite information as to the hours devoted to various general activities." *Rode*, 892 F.2d at 1190. As discussed, Plaintiffs provide a breakdown, by attorney and paralegal, of the hours spent engaging in eleven categories of legal work. *See*, e.g., ECF No. 86-2 Ex. 1. Plaintiffs also provide a chronological description of the work performed, collectively, by Class Counsel, including the investigation leading up to the drafting and filing of the first complaint, Plaintiffs' response to Defendants' motion to dismiss, the drafting of amended complaints, continued investigation and discovery, and the negotiations leading to this

NOT FOR PUBLICATION                                                    CLOSE

settlement. *See* ECF No. 86 at 7-10. However, Plaintiffs do not provide the specific dates of their

services rendered, as required by L. Civ. R. 54.2(a)(c).

 Defendants argue, generally, that Plaintiffs' application for fees is insufficient because

some courts within the Third Circuit have approved attorneys' fees based on more detailed

documentation than Plaintiffs submit here, including itemized, hourly billing records for each

attorney. ECF No. 90 at 3-4 (citing cases). Defendants argue specifically that the Court should

not accept Plaintiffs' aggregate submission of 1,225.5 hours of billable work for

"Analysis/Strategy/Meetings" without further documentation of the precise number of meetings,

dates, times, individuals present, and descriptions of "what was actually *done*" at the meetings.

ECF No. 90 at 6. The Court does not deny that Plaintiffs *could* submit further documentation,

and Plaintiffs have offered to submit detailed time records for the Court's *in camera* review if so

required. ECF No. 105 at 6. But "it is not necessary" for the Court to "know the exact number of

minutes spent nor the precise activity to which each hour was devoted nor the specific

attainments of each attorney" in order to determine whether the number of hours billed was

reasonable. *Rode*, 892 F.2d at 1190. In any event, as Plaintiffs suggest, "what was actually *done*"

at these meetings likely includes protected attorney work product. ECF No. 105 at 9. The Court

will not require Plaintiffs to submit further documentation of their meetings.

 Defendants also suggest that the 679.1 total hours of "Research" reported by Plaintiffs is

an unreasonable number because Class Counsel attorneys were already "presumably[ ]

intimately familiar" with the relevant issues in this matter, reducing their need to conduct

research. ECF No. 90 at 6-7. The Court agrees with Plaintiffs, however, that "[l]egal research is

part of the job." ECF No. 105 at 9. Particularly in a multi-state class action involving federal and

state law statutes, consolidated cases, a motion to dismiss, and an amended complaint, Class Counsel is expected to conduct a significant amount of legal research.

Given the lack of individual and task-based detail in Plaintiffs' billing summaries, the Court finds that Plaintiffs' submission of 5,100.75 billable hours is reasonable but accepts the number with some hesitation.

### d. The billing rates submitted by Plaintiffs are high for the relevant community

To repeat, the average requested billing rate for Class Counsel attorneys is $664.15 per hour, ECF No. 86-9 ¶ 28, with individual rates (including for paralegals) ranging from $150 to $1,100 per hour. *See id.* ¶ 30. Partners request a mean rate of $745 per hour, while associates request a mean rate of $423 per hour. ECF No. 90 at 9-10. The Court determines whether these fees are reasonable by assessing the "experience and skill of the prevailing party's attorneys" and comparing "their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1190.

Courts in this district have approved a wide range of billing rates as reasonable, and both Plaintiffs and Defendants cite cases where courts confirmed fee rates similar to the ones they seek. *See*, e.g., ECF No. 105 at 10 (citing *In re Merck & Co. Vytorin ERISA Litig.*, 2010 WL 547613 (D.N.J. Feb. 9, 2010) (approving rates up to $835 per hour)); ECF No. 90 at 10 (citing, e.g., *Port Drivers Federation 18, Inc. v. All Saints*, 2011 WL 3610100, at *4 (D.N.J. Aug. 16, 2011) (reducing partner's billing rate from $595 to $475 per hour and citing cases approving a range of $250 to $400 per hour)). *See also Saint v. BMW of North America, LLC*, 2015 WL 2448846, at *15 (D.N.J. May 21, 2015) (approving average rates of $421.73 and $540.31 in class action against BMW for failure to provide warranties).

NOT FOR PUBLICATION                                                    CLOSE

As discussed, Plaintiffs also argue, through the Knapton Declaration, that the requested billing rates for most Class Counsel attorneys are lower than the third-quartile rates in the geographic areas where the attorneys are located. *See* ECF No. 86-9 ¶ 48; ECF No. 86-9 Ex. 9 (Real Report Snapshot "High-Level Data Cuts" for U.S. cities). Under this analysis, the requested billing rates are reasonable.

Defendants, however, argue that a more appropriate comparison is between the requested billing rates and the 2015 Real Report Snapshot rates for partners and associates practicing "General Liability" law in New York and Philadelphia, the practice area and two cities that best correspond with the legal work in this matter and geographic location of this Court. ECF No. 90 at 8-9 (citing ECF No. 86-9 Ex. 7 (Real Report Snapshot "Practice Area Analysis: General Liability")). Defendants urge the Court to average the Real Report Snapshot rates for New York and Philadelphia partners and associates practicing "General Liability" law, arriving at mean and top-quartile partner rates of $425 and $609 per hour, respectively, and mean and top-quartile associate rates of $284 and $345 per hour, respectively. *Id*. at 10.

The Court agrees with Defendants that the average Class Counsel billing rate of $664.15 is higher than the average rate approved by many recent courts in this district. Defendants do not calculate the effect their proposed mean and top-quartile "General Liability" rate adjustments would have on the lodestar. Using the Knapton Declaration's fee schedule, ECF No. 86-9 Ex. 2,[9]

---

[9] There are several discrepancies between the hours reported in the Class Counsel affidavits and the hours used by Mr. Knapton to calculate Plaintiffs' lodestar of 3,387,328.75. Most notably, John A. Yanchunis of Morgan & Morgan reports that he billed 38.3 hours at a rate of $900 per hour and that Teresa Ponder, a paralegal, billed 84.2 hours at a rate of $150, for a firm lodestar of $47,100. ECF No. 86-5 ¶ 17; ECF No. 86-5 Ex. B (time report). The Knapton Declaration calculates Plaintiffs' proposed lodestar and billable hour totals based on 96.5 hours from Mr. Yanchunis at $900 per hour and 32.7 hours from Ms. Ponder at $150 per hour, for a firm lodestar of $91,755. *See* ECF No. 96-9 Ex. 2.

NOT FOR PUBLICATION                                                    CLOSE

the Court calculates that Class Counsel partners billed a total of 3,542.1 hours; that the "associate

class," including associates, law clerks, local counsel, and of-counsel attorneys, billed a total of

1,323.55 hours; and that paralegals billed a total of 234.7 hours. Adjusting all associate and

partner billing rates to the mean and top-quartile rates proposed by Defendants would result in

lodestars of $1,917,673.40 and $2,649,473.15, respectively. *Id.*

      As discussed, the Court may apply a multiplier to the lodestar "to account for the

contingent nature or risk involved in a particular case and the quality of the attorney's work."

*Rite Aid*, 396 F.3d at 306. The multiplier "need not fall within any pre-defined range, provided

that the District Court's analysis justifies the award," *id.*, but courts "routinely find in complex

class action cases that a lodestar multiplier between one and four is fair and reasonable." *Saint*,

2015 WL 244846, at *16 (approving multipliers of 1.09 and 1.13); *see also Boone v. City of

Philadelphia*, 668 F. Supp. 2d 693, 714-15 (E.D. Pa. 2009) (approving multiplier of 2.3); *McCoy

v. Health Net, Inc.*, 569 F. Supp. 2d 448, 479 (D.N.J. 2008) (approving multiplier of 2.3).

Because Plaintiffs report a total of $133,358.30 in expenses, ECF No. 86 at 2, the portion of the

total $2,320,000 award attributable to attorneys' fees alone is $2,186,641.70. The lodestar

multiplier for Defendants' proposed mean rate fee, obtained by dividing $2,186,641.70 by

$1,917,673.40, would be approximately 1.14. This multiplier falls well within the range

approved by courts in this Circuit for complex, multi-state cases such as this one.

      **3.   The percentage cross-check supports an award in the lodestar range**

      Having determined a range of attorneys' fees under a lodestar analysis, the Court now

cross-checks this analysis using the percentage-of-recovery method. *See Ins. Brokerage*, 579

F.3d at 280; *Saint*, 2015 WL 2448846, at *16 (performing percentage-of-recovery cross-check

after adopting lodestar method to award attorneys' fees).

NOT FOR PUBLICATION                                                      CLOSE

The Third Circuit has identified a non-exhaustive list of factors that a district court should

consider in its percentage-of-recovery analysis:

> (1) the size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the
> attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of
> nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and
> (7) the awards in similar cases.

*Rite Aid*, 396 F.3d at 301 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1

(3d Cir. 2000)). The Court need not apply the *Gunter* factors in a formulaic way and may afford

some factors more weight than the others. *Id*. at 302.

The Court finds the *Gunter* factor to be especially relevant in this case. As discussed, the

settlement agreement does not create a class fund of defined size, and the total benefit to N14

Class members will depend on the number and type of claims ultimately received and approved.

Additionally, as discussed, the settlement agreement provides some Class Members with non-

monetary benefits, including a warranty extension on their Class Vehicles. At the July 14, 2016

fairness hearing, Class Counsel stated that it could not give a precise value of the settlement, and

that even estimating an "approximate" value would be difficult. Counsel stated, however that a

value of between $10 and $30 million would be a reasonable estimate. The Third Circuit has

recognized that fee percentage-of-recovery fee awards commonly range from 19 percent to 45

percent of the settlement fund. *GM Truck Prods.*, 55 F.3d at 822. Using the rough $10-$30

million settlement estimate, a reasonable percentage-of-recovery fee in this case would be

between $1,900,000 and $13,500,000. The fee award sought by counsel and the lodestars

calculated under Defendants' proposed New York-Philadelphia mean and fourth-quartile billing

rates all fall within this range.

For the second factor, the Court incorporates its *Girsh* analysis of Class member objections and notes that no Class members have objected to the proposed Class Counsel award. This factor weighs in favor of fee approval. The Court also finds that the third and fourth, and sixth *Gunter* factors weigh in favor of approving a fee award within the ranges sought by Plaintiffs and Defendants. As discussed, Class Counsel spent 5,100 hours over three years litigating this case, survived a motion to dismiss, and obtained a fair and reasonable settlement in a complex, multi-state consumer class action involving uncertain legal issues. The fifth *Gunter* factor – risk of nonpayment – weighs in favor of approving the award sought by Plaintiffs because Class Counsel undertook this case on a contingency basis and accepted the potential risk of non-payment. ECF No. 86 at 20-21. Finally, with regard to the sixth *Gunter* factor, the $2,230,000 award sought by Plaintiffs and Defendants' proposed lodestar calculations are similar to awards approved in similar cases. *See*, e.g, *Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *13 (D.N.J. Mar. 22, 2013) (approving award of $3,000,000 in attorneys' fees in class action providing class members with reimbursements and warranty extensions in connection with alleged defects in automobile transmission systems); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 304 (E.D. Pa. 2003) (approving award of $4,896,783 in attorneys' fees in class action involving allegedly defective rear lift-gate hatch in automobiles).

### 4.  The expenses sought by Plaintiffs are reasonable

In further support of their petition for a $2,320,000 award, Plaintiffs submit that Class Counsel incurred a total of $133,358.30 in expenses. ECF No. 86 at 2.[10] "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably

---

[10] Again, Plaintiffs indicate that this amount has increased by $15,549.32 since the filing of their motion for attorneys' fees and costs, *see* ECF No. 105 at 1, but the Court will perform its analysis using the $133,358.30 number in the original motion.

and appropriately incurred in the prosecution of the class action." *In re Safety Components Int'l,*

*Inc.*, 166 F. Supp. 2d 72, 108 (3d Cir. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204,

1225 (3d Cir. 1995)). Courts have held that photocopying expenses, telephone and facsimile

charges, postage, and expert witness fees are all reasonably incurred in the prosecution of a large

litigation. *See id.* (citing cases).

Plaintiffs submit expense reports through the Class Counsel declarations, breaking

expenses down into categories such as "Filing/Misc. Fees," "Mediation Fees," "Postage,"

"Photocoyping," "Expert Fees," and "Transportation/Meals/Lodging." *See*, e.g., ECF No. 86-2 ¶

11, Ex. 2 (Cafferty Clobes Meriwether & Sprengel, LLP Expense Report through March 21,

2016). Some firms provide itemized lists of individual expenses. *See*, e.g, ECF No. 86-3 Ex. 2

(Markun Zusman Frenier & Compton, LLP "Pre-bill" for Tom Monreal). Although Defendants

challenge the level of detail provided by Plaintiffs and the necessity of some expenses, *see* ECF

No. 90 at 11 (questioning, as example, Markun Zusman Frenier & Compton, LLP's request for

reimbursement for travel, meals, and hotels for an "investigation" trip to Oregon because this

matter does not involve claims under Oregon law),[11] the Court finds that Class Counsel's

expenses are adequately documented, proper, and reasonable. The proposed expense amount

supports the award Plaintiffs seek.

### 5. The Court approves an award of fees and expenses in the amount of $2,100,000

As discussed, courts have approved a wide range of awards for attorneys' fees and

expenses in cases similar to this one. This Court will award Plaintiffs a total of $2,100,000 in

---

[11] The Court observes that Markun Zusman Freniere & Compton, LLP maintains an office in Portland, Oregon. *See* ECF No. 86-3 Ex. 3 (overview of firm).

NOT FOR PUBLICATION                                                    CLOSE

attorneys' fees and expenses. This award represents an attempt by the Court to reconcile

Plaintiffs' proposed fee submissions with Defendants' objections to the amount of detail in Class

Counsel's billing records, the high billing rates of Class Counsel attorneys relative to other

attorneys working on similar matters in this community, the potential application of a modest

lodestar multiplier, and the difficulty of estimating an accurate percentage-of-recovery

calculation against which to cross-check the Parties' proposed lodestar calculations.

**CONCLUSION**

The Court finds that the proposed settlement between Plaintiffs and Defendants is fair,

adequate, and reasonable. Plaintiffs' motion for final approval of the N14 Class settlement, final

approval of Class Counsel, and certification of the N14 Class is granted. Plaintiffs' motion for an

award of attorneys' fees and expenses is granted in part: Plaintiffs are awarded a total of

$2,100,000 in attorneys' fees and expenses and service awards of $4,000 each for the eighteen

Class Representatives is granted. An appropriate order follows.

DATE: 26 July 2016

_____
William H. Walls
Senior United States District Court Judge